UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| TOBY SCHECHNER, BARBARA BARNES, LAURA BLISS, KATHLEEN JORDAN, KATHRYN LIMPEDE, LOUISE MILJENOVIC, CANDACE OLIARNY, BEVERLY SIMMONS, RICHARD THOME and MARY ELLEN THOME, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) ) ) ) ) | Case No. 2:16-cv-12409-SJM-RSW  Hon. Stephen J. Murphy, III  DEMAND FOR JURY TRIAL |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| WHIRLPOOL CORPORATION, | ) ) | |
| Defendant. | ) ) | |
| ———————————————— | ) | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Toby Schechner, Barbara Barnes, Laura Bliss, Kathleen Jordan, Kathryn Limpede, Louise Miljenovic, Candace Oliarny, Beverly Simmons, Richard Thome, and Mary Ellen Thome, individually and on behalf of all others similarly situated, by and through their undersigned counsel (collectively, "Plaintiffs"), for their First Amended Class Action Complaint, bring this class action for damages and equitable relief against Defendant Whirlpool Corporation ("Defendant" or "Whirlpool"). Plaintiffs allege the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiffs, which are alleged upon personal knowledge:

## INTRODUCTION

1.     Whirlpool designs, manufactures, advertises, and sells a line of gas and electric stoves, ranges, and ovens featuring its proprietary "AquaLift® Self-Cleaning Technology" ("AquaLift"), a system that Defendant purports to, *inter alia*, "self-clean" the interior of a dirty oven in less than one hour using only water and low heat.[1] Whirlpool's marketing and advertising for its ovens containing AquaLift (the "AquaLift Ovens" or "Ovens") is false, deceptive, and misleading to reasonable consumers because AquaLift – a key product feature – does not perform as advertised or in accordance with Whirlpool's express and implied warranties. Hundreds, if not thousands, of consumers nationwide have complained, and Whirlpool and its authorized sellers have admitted that AquaLift ***does not work***.

2.     Whirlpool describes AquaLift as "***oven cleaning redefined,***" "***innovation nearly 50 years in the making***," and a "***first-of-its kind cleaning solution***."[2]  According to Whirlpool, AquaLift uses an "exclusive coating on the

---

[1]     A list of the known model numbers of Whirlpool appliances featuring the falsely advertised AquaLift system is attached hereto as Exhibit 1.

[2]     http://whirlpoolcorp.com/aqualift/faq_q1.html (last visited Aug. 15, 2016), attached hereto as Exhibit 2.

interior [that] activates with water and heat, allowing moisture to release soils from underneath so food and debris *easily wipe away*."[3]  Whirlpool emphasizes that consumers "can use AquaLift™ self-clean technology frequently to clean *tough baked-on soils*[,]"[4] and that the cleaning process takes only 40 to 50 minutes.  Further, Whirlpool represents that after a "self-clean" cycle is complete, users of the Ovens can simply "remove residual water and *loosened soils* with a *sponge or dry cloth*."[5]

3.      In its nationwide advertising and marketing campaign for the AquaLift, Whirlpool does not set forth *any* limitations to the performance of the Ovens' "self-cleaning" technology and does not inform consumers that AquaLift only works on certain parts of the Ovens.

4.      Contrary to Whirlpool's representations in its advertising and marketing, AquaLift does not "self-clean" the Ovens or otherwise perform as advertised to consumers.  Indeed, the Internet is teeming with consumer complaints that describe the extent of Whirlpool's defective AquaLift technology.[6]  Consumers complain, by way of example, that AquaLift "is *totally useless*" and "*doesn't work AT ALL*."  These putative class members have called AquaLift "*a waste of money*," "*worthless*," "*junk*," "*a joke*," "*the biggest ripoff*," and "*fraud plain and simple*," and these consumers have asked "how can the company get away with advertising [a] self-cleaning oven when it absolutely *does not clean one bit?!*"[7]

---

[3]      http://whirlpoolcorp.com/aqualift/faq_q2.html (last visited Aug. 15, 2016), attached hereto as Exhibit 3.

[4]      http://whirlpoolcorp.com/aqualift/faq_q7.html (last visited Aug. 15, 2016), attached hereto as Exhibit 4.

[5]      http://whirlpoolcorp.com/aqualift/faq_q3.html (last visited Aug. 15, 2016), attached hereto as Exhibit 5.

[6]      *See* infra ¶¶95-98.

[7]      *Id*.

5.     Whirlpool knew or should have known that its AquaLift feature was defectively designed and does not function as advertised.  Indeed, in some instances, dissatisfied consumers, including Plaintiffs, have voiced their complaints directly to Whirlpool.   In response, Plaintiffs were largely advised by representatives of Whirlpool or its agents that if the AquaLift feature does not work, ***consumers should purchase cleaning supplies to manually clean the oven.***  This advice controverts Whirlpool's advertising of AquaLift's ability "to clean tough baked-on soils" and the ability for a consumer to "remove residual water and loosened soils with a sponge or dry cloth" after the AquaLift feature is activated.  This advice is also contrary to the "AquaLift Quick Reference Guide" which instructs consumers to avoid using "commercial oven cleaners" to manually clean the Ovens because it will damage the oven's interior.[8]

6.     Plaintiffs and the Class members (defined below) did not receive any of the "self-cleaning" benefits of the AquaLift Ovens or observe the technology work as advertised.  Instead, Plaintiffs have been forced to endure futile and inconvenient service attempts to try to "repair" the AquaLift, an evidently unrepairable feature.

7.     What is more, Plaintiffs and members of the putative class have no choice but to manually clean virtually all surfaces of their ovens, due to the AquaLift's inability to "self-clean" and work as advertised, or tolerate a perpetually dirty oven cavity.

8.     At all times, the AquaLift has failed to work and operate as advertised for Plaintiffs and the members of the putative class resulting in damages including, but not limited to: (1) payment for a defective product; (2) overpayment for product advertised to include a self-cleaning function, but did not; (3) a decrease in value of

---

[8]     https://www.whirlpool.com/digitalassets/WEE730H0DS/Quick%20Reference%20Sheet_EN.pdf (last visited August 12, 2016), attached hereto as Exhibit 6.

their ovens due to the defect; and (4) out-of-pocket money spent in connection with servicing the AquaLift and/or manually cleaning the oven.

9.     Plaintiffs assert claims on behalf of a Nationwide Class (defined below) for violations of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq*., ("MMWA") as well as claims for breach of contract, breach of express and implied warranties, unjust enrichment, and the consumer protection statutes of Michigan, Florida, New Jersey, Arizona, New Mexico, and Idaho.

10.    Plaintiffs also assert claims on behalf of a Michigan Subclass, Florida Subclass, New Jersey Subclass, Arizona Subclass, New Mexico Subclass, and Idaho Subclass (all defined below), Michigan Consumer Protection Act, Mich. Comp. Laws Ann. §445.901, *et seq*., ("MCPA"), Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §501.201, *et. seq.* ("FDUTPA"), New Jersey Consumer Fraud Act, N.J. Stat. Ann. §56:8-2, *et seq.* ("NJCFA"), Arizona Consumer Fraud Act, A.R.S. §44-1552, *et seq.* ("ACFA"), New Mexico Unfair Trade Practices Act ("NMUPA"), N.M. Stat. Ann. §57-12-3, Idaho Consumer Protection Act, I.C. §48-601, *et seq.* ("ICPA"), and claims for breach of contract, breach of express and implied warranties, and unjust enrichment.

11.    As alleged herein, Plaintiffs and other reasonable consumers (the "Class members") purchased Ovens equipped with AquaLift, which were designed, manufactured, advertised, marketed, and sold by Whirlpool, its subsidiaries, and its authorized sellers.  Plaintiffs and the Class members purchased the Ovens after Whirlpool and its representatives and agents represented to them that AquaLift would "self-clean" their Ovens.

12.    Contrary to Whirlpool's advertising, marketing, and express and implied warranties, AquaLift does not and cannot "self-clean" the inside of an oven. Therefore, Plaintiffs and the Class members were damaged by Whirlpool's false, deceptive, and misleading advertising campaign.

- 4 -

13.    Plaintiffs and the Class members would not have purchased the Ovens had they known they would not self-clean as promised.  Plaintiffs and the Class members would not have purchased the Ovens – certainly not at the prices they paid – were it not for Whirlpool's false, deceptive, and misleading advertising and/or Whirlpool's failure to disclose the material fact that its AquaLift technology is defective and incapable of performing according to Whirlpool's advertising, marketing, and express and implied warranties.

## THE PARTIES

*Toby Schechner*

14.    Plaintiff Toby Schechner ("Ms. Schechner") is a citizen of Florida and, at all relevant times was, a resident of Boynton Beach, Florida.  On or around November 24, 2014, Ms. Schechner purchased a Whirlpool 6.2 Cu. Ft. Electric Range Oven equipped with AquaLift from a Lowe's store in Boynton Beach, Florida.

15.    Ms. Schechner purchased the oven in reliance on the advertising promise that AquaLift would "self-clean" tough baked-on soils from the oven interior in less than one hour using only water and heat.  Contrary to Whirlpool's promises that induced Ms. Schechner to purchase a Whirlpool oven with AquaLift, the AquaLift feature in Ms. Schechner's oven did not perform as advertised, and left debris, stains, and cooking grease on the bottom, sidewalls, and door of Ms. Schechner's oven.

16.    In accordance with the terms of Whirlpool's "One Year Limited Warranty," Ms. Schechner endured three futile service attempts to "repair" the defective AquaLift feature on her new oven.  During all three service attempts, the service providers informed Ms. Schechner that: (a) everyone complains about the AquaLift; (b) they receive calls all the time about AquaLift; and/or (c) AquaLift does not work.

17.    Ms. Schechner also repeatedly called Whirlpool Customer Service during September and October 2015 regarding the defective AquaLift system but was

ultimately informed by a Whirlpool representative that if the AquaLift feature does not work, *Ms. Schechner should purchase cleaning supplies and manually clean the purported "self-cleaning" Oven.*

18.     The AquaLift feature on Ms. Schechner's Whirlpool oven did not perform as advertised, marketed, and warranted, and never "self-cleaned" her oven.

**Barbara Barnes**

19.     Plaintiff Barbara Barnes ("Ms. Barnes") is a citizen of Florida and, at all relevant times was, a resident of Lakeland, Florida.  In or around June 2013, Ms. Barnes purchased a KitchenAid Electric Free Standing Range, equipped with AquaLift from a Lowe's store in Lakeland, Florida.

20.     Ms. Barnes purchased the oven after viewing the in-store advertising that AquaLift would effectively "self-clean" her oven with water and low heat.

21.     Despite closely following Whirlpool's instructions in the oven's user manual, the AquaLift feature of Ms. Barnes oven did not work after repeated attempts and as a result, *for several years*, Ms. Barnes has had to independently clean the oven's bottom, sides, and glass door.

22.     In or around June 2016, Ms. Barnes wrote to KitchenAid online customer service, through an online submission, to report the AquaLift's inability to "self-clean."  She has not, as of the filing of this Complaint, received a response.

23.     At all times since her purchase of the Oven, Ms. Barnes' oven has not performed as advertised and has not "self-cleaned" her oven.

**Kathryn Limpede**

24.     Plaintiff Kathryn Limpede ("Ms. Limpede") is a citizen of Idaho and, at all relevant times was, a resident of Kuna, Idaho.  On or around December 12, 2012, Ms. Limpede purchased a Maytag Gas Range, model number, MGR8674AW, equipped with AquaLift from a Home Depot store in Boise, Idaho.

25.     Ms. Limpede was aware of the marketed self-cleaning functionality and, specifically, of the Aqualift feature – including, for example, from a direct statement of a Maytag representative who touted the effectiveness of the AquaLift's "innovative" "self-cleaning" capability to Ms. Limpede.

26.     Yet, at no point since purchasing the oven has AquaLift performed as marketed and advertised, and AquaLift has failed to clean the bottom and sides of her oven at all, even though Ms. Limpede closely followed the user instructions and the suggestions of a Maytag representative.

27.     Because AquaLift was unable to "self-clean" Ms. Limpede's oven, in or around summer 2013, Ms. Limpede purchased a silicone liner to use in the oven in an effort to avoid or minimize further dirt to be added to the oven.

28.     Concomitant with the purchase of the silicon liner, Ms. Limpede relayed her negative experience with the AquaLift feature to a Maytag representative.  The representative told her that the AquaLift feature should be run after each use of the oven to be effective.  Ms. Limpede had not heard, or seen, that directive prior to that.

29.     At all times since the purchase of Ms. Limpede's oven, the AquaLift feature has not performed as advertised or marketed and has not "self-cleaned" her oven.

**Louise Miljenovic**

30.     Plaintiff Louise Miljenovic ("Ms. Miljenovic") is a citizen of New Jersey and, at all relevant times was, a resident of Bayville, New Jersey.  In or around December 2012, Ms. Miljenovic purchased a KitchenAid Gas Stove, model number, KGRS202BWH, equipped with AquaLift from the retailer Appliance Gallery in Bayville, New Jersey.

31.     Ms. Miljenovic purchased her oven after viewing the in-store advertising for the AquaLift and listening to a store representative explain the "innovative" benefits of the "new" AquaLift technology.

32.     After purchasing the oven, and to familiarize herself with the AquaLift product, Ms. Miljenovic read the instruction manual closely.

33.     Despite a concerted effort to educate herself about appropriate use of the product, the AquaLift feature failed to perform as advertised in-store, in the instructional manual, or on the videos Ms. Miljenovic watched online.  For example, Ms. Miljenovic first tried to use the AquaLift in or around March 2013 when ordinary use of the oven left stains of cooking grease on the sides, bottom, and back of the oven.   After activating the AquaLift "self-clean" cycle in accordance with the instructions provided in the user manual, and after waiting for the cycle to be completed, Ms. Miljenovic observed that there were still hardened stains on the sides, bottom and back of the oven.

34.     The AquaLift "self-cleaning" feature failed to work as advertised and as a result, in or around April 2013, Ms. Miljenovic emailed KitchenAid to report the AquaLift's inability to work.  As of the filing of this Complaint, she has not received a reply.

35.     Because of the inability of AquaLift to work as advertised, Ms. Miljenovic, *for several years,* has tried to hand-clean the stains on the side, bottom, and back of her oven.  But, the oven remains dirty.

36.     At all times since the purchase of Ms. Miljenovic's oven, the AquaLift feature has not performed as advertised and has not "self-cleaned" her oven.

*Kathleen Jordan*

37.     Plaintiff Kathleen Jordan ("Ms. Jordan") is a citizen of New Jersey and, at all relevant times was, a resident of Branchburg, New Jersey.  In or around March 2016, Ms. Jordan purchased a Whirlpool Electric Stove, model number WEE760H0DS0, equipped with AquaLift from a Rogers Appliance store in Flemington, New Jersey.

38.     Ms. Jordan purchased the oven after viewing Whirlpool's in-store advertising, which said that AquaLift was an effective "self-cleaning" technology.

39.     At no point since purchasing her oven has AquaLift effectively self-cleaned Ms. Jordan's oven or performed as advertised.  For instance, within a month after purchasing the oven, the AquaLift did not clean, or loosen cooking grease stains in Ms. Jordan's oven, even though she ran multiple "self-clean" cycles in accordance with Whirlpool's instructions set forth in the product user manual.

40.     Ms. Jordan now *is afraid to cook* certain items because of the inability of AquaLift to clear, remove, or wipe away ordinary stains and soils in her oven.

41.     At all times since the purchase of Ms. Jordan's oven, the AquaLift has not performed as advertised and has not "self-cleaned" her oven.

### Laura Bliss

42.     Plaintiff Laura Bliss ("Ms. Bliss") is a citizen of Michigan and, at all relevant times was a resident of Marshall, Michigan.  In or around May 2016, Ms. Bliss purchased a Whirlpool Electric Stove, model number WFE540H0ES, equipped with AquaLift from a Home Depot store in Jackson, Michigan.

43.     Ms. Bliss purchased the Whirlpool oven with AquaLift after viewing the in-store advertising that the AquaLift would "self-clean" tough baked-on soils from the inside of her oven in less than one hour without any cleaning products.

44.     Within one month of her purchase, after closely reading Whirlpool's instructions, Ms. Bliss tried to use the AquaLift to clean ordinary stains and soil on the bottom and door of her oven, but after the "self-cleaning" cycle was complete, Ms. Bliss was left with the same stains and soil on the bottom and door.

45.     Ms. Bliss notified Whirlpool of the AquaLift's failure to work in an email to Whirlpool Customer Service in or around July 2016.  As of the filing of this Complaint, Ms. Bliss has not received a response.

46.     At all times since the purchase of her oven, the AquaLift has not performed as advertised and has not "self-cleaned" her oven.

**Beverly Simmons**

47.     Plaintiff Beverly Simmons ("Ms. Simmons") is a citizen of New Mexico and at all times was a resident of Rio Rancho, New Mexico.

48.     On or around August 5, 2015, Ms. Simmons purchased a Whirlpool Gas Stove, model number WFG540H0ES, equipped with AquaLift from a Lowe's store in Albuquerque, New Mexico.

49.     Ms. Simmons purchased the oven after she was told by a Lowe's sales representative that the AquaLift self-cleaning was effective and simple to use, because of the ease of the "self-cleaning" feature.

50.     The AquaLift failed to perform as represented to Ms. Simmons.  Within a few weeks of purchase, Ms. Simmons activated the AquaLift and closely followed the user instructions in an attempt to use the feature as advertised.  Nonetheless, at the end of the "self-cleaning" cycle Ms. Simmons did not observe the removal of stains or cooking grease.  The dirt in her oven had not loosened so she could "easily wipe" it away even after Ms. Simmons ran multiple "self-clean" cycles.  In or around two months later, Ms. Simmons again closely followed the user instructions, but the AquaLift failed to "self-clean" as advertised.

51.     Ms. Simmons has been forced to manually clean the oven because of the AquaLift's inability to "self-clean" her oven.

52.     At all times, the AquaLift feature of Ms. Simmons' oven has not performed as advertised and has not "self-cleaned" her oven.

**Richard and Mary Ellen Thome**

53.     Plaintiffs Richard and Mary Ellen Thome ("Mr. and Mrs. Thome") are citizens of Arizona and at all times were residents of Big River, California.

54.     In or around March 2014, Mr. and Mrs. Thome purchased a Whirlpool Electric Range, model number WFE540H0AS, equipped with AquaLift from a Lowe's store in Lake Havasu City, Arizona.

55.     Mr. and Mrs. Thome made their purchase after viewing Whirlpool's advertising in-store and online, that the AquaLift would "self-clean" the inside of their oven without cleaning products in less than one hour.

56.     However, for more than two years, the AquaLift feature of Mr. and Mrs. Thome's oven failed to perform as advertised, despite the fact that Mr. and Mrs. Thome closely followed the user instructions Whirlpool provided for their oven.  The inability of the AquaLift to work as advertised has substantially interfered with Mr. and Mrs. Thome's ability to use the oven.  For example, Mr. and Mrs. Thome observed in or around April 2016 that the dirt in their oven accumulated on the door to the point where they are unable to monitor the progress of their cooking or view the food in the oven through the glass door.

57.     At all times since the purchase of Mr. & Mrs. Thome's oven, the AquaLift has not performed as advertised and has not "self-cleaned" their oven.

### Candace Oliarny

58.     Plaintiff Candace Oliarny ("Ms. Oliarny") is a citizen of Idaho and at all times was a resident of Boise, Idaho.  In or around November 13, 2015, Ms. Oliarny purchased a Whirlpool Gas Stove, model number WEG730H0DS, equipped with AquaLift from a CHF Home Furnishings store located in Boise, Idaho.

59.     Ms. Oliarny purchased the oven after viewing Whirlpool's AquaLift advertising in a CHF Home Furnishings store which claimed that the AquaLift would "self-clean" the inside of her oven and after a sales person described the supposed self-cleaning features of the product.

60.     In or around March 2016, despite running multiple cycles in accordance with the user manual, the AquaLift failed to remove the stains, grease, and debris from

the bottom and sides of her oven or allow for Ms. Oliarny to wipe away the stains, grease, and debris with a sponge, as Whirlpool advertised it would.

61.    In accordance with the terms of Whirlpool's "One Year Limited Warranty," in or around April 22, 2016, Ms. Oliarny tried to have the oven serviced by CHF Home Furnishings but during the service attempt was told that: (i) "the AquaLift does not work," (ii) "you have to manually clean the oven yourself," and (iii) the only cleaning products which would work to clean the oven were "Easy Off" or "Soft Scrub."

62.    Then, in or around August 9, 2016 another technician this time from the company, Capital Refrigeration, arrived to service Ms. Oliarny's oven.    The technician again could not fix the AquaLift, and relayed to Whirlpool his inability to fix the oven.  He told Ms. Oliarny there was nothing more he could tell her to do other than calling the Whirlpool "AquaLift Hotline."

63.    At all times since the purchase of her oven, the AquaLift has not performed as advertised and has not "self-cleaned" her oven.

***Whirlpool Corporation***

64.    Defendant Whirlpool is a Delaware corporation headquartered in Benton Harbor, Michigan.  Whirlpool describes itself as the world's leading manufacturer and marketer of household appliances.  Ovens equipped with the AquaLift Technology are sold and distributed under the Whirlpool brand name and its wholly owned subsidiaries including Maytag Corporation ("Maytag"), KitchenAid, Inc. ("KitchenAid"), and the Jenn-Air Products Company ("Jenn-Air") (collectively, the "Ovens").  At all relevant times, Whirlpool designed, manufactured, distributed, advertised, marketed, promoted, and sold the Ovens equipped with the defective AquaLift feature.

## JURISDICTION AND VENUE

65.     This Court has jurisdiction pursuant to 28 U.S.C. §1332, as amended by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a different state than Whirlpool, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

66.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because many of the acts and transactions giving rise to this action occurred in this District and because: (a) Whirlpool is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District through the promotion, marketing, distribution, and sale of its appliances with AquaLift; (b) Whirlpool conducts substantial business in this District; and (c) Whirlpool is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

### *Whirlpool Extensively Advertises Aqualift's Purported Ability To "Self-Clean" The Interior Of Its Ovens*

67.     Whirlpool describes itself as the world's leading manufacturer and marketer of household appliances.  Whirlpool sells household appliances, such as kitchen ovens, under various brand names, including, Whirlpool, Maytag, KitchenAid, and Jenn-Air.

68.     Whirlpool designed, manufactured, advertised, and sold throughout the United States at least 87 models of kitchen Ovens featuring AquaLift "self-cleaning" technology.  AquaLift is available on gas or electric Ovens of different sizes.

69.     Whirlpool advertises its AquaLift technology as a key feature to distinguish the Ovens from competitors.  Indeed, through its website, in-store point-of-sale displays, and product information labels on the appliances themselves, Whirlpool touts AquaLift as "*oven cleaning redefined*," "*innovation nearly 50 years*

*in the making*," and a "***first-of-its kind cleaning solution*** that is activated with heat and water to release ***tough baked-on soils*** from the oven interior in less than 1 hour."

70.    Whirlpool even dedicates an independent page of its website solely to showcase its AquaLift technology.[9]  On that page, under a large bold heading that reads, "***Cleaning your oven just got faster, cooler, and easier***," Whirlpool shares a video demonstration of the purported superiority of its AquaLift technology over traditional self-cleaning ovens:



71.    A voiceover in the video states that, "it's time for something new.  Time for AquaLift technology":

---

[9]    http://whirlpoolcorp.com/aqualift/index.html (last visited Aug. 15, 2016), attached hereto as Exhibit 7.

- 14 -



72.    "The baked on stains may be the same, but now you can have your oven back in less than one hour.  All with less heat and no odor.":



73.    "AquaLift technology, *an innovation* from Whirlpool Corporation. *Redefines oven cleaning*.":



74.    "Simply remove the oven racks . . .":



75.    ". . . and wipe out the excess soil.":



76.     "Pour two cups of water in the bottom of the oven, and ***let AquaLift technology do the work***.":



77.     "This ***innovative coating*** is activated by water and heat.":



78.    "It lifts tough baked-on soils from underneath, making oven cleaning a snap.":



79.    "In under an hour, the oven is ready for a final wipe down to remove the soil.":



80. "All done in less time, with no odor, and no extreme heat like traditional, high-temperature self-clean ovens. AquaLift technology is ***oven cleaning redefined***.":



81. On the AquaLift "frequently asked questions" ("FAQ") page, Whirlpool describes AquaLift as "a ***first-of-its kind cleaning solution*** that is activated with heat and water to release ***tough baked-on soils*** from the oven interior in less than 1 hour."[10]

---

[10] *See* Exhibit 2.

82.     Whirlpool's FAQs page represents that AquaLift works through an "exclusive coating on the interior [that] activates with water and heat, *allowing moisture to release soils from underneath so food and debris easily wipe away*."[11]

83.     Whirlpool also offers consumers an AquaLift "Quick Reference Guide" which describes AquaLift as an *"innovative cleaning solution"* that is "activated with heat and water to release baked-on spills from the oven interior in less than 1 hour."[12]

84.     The "Quick Reference Guide" sets forth five steps to make the AquaLift perform as advertised stressing that consumers should not attempt to manually clean the oven with "conventional" cleaners or any other cleansers, that the "residual water and loosened soils" can be removed by a sponge or dry cloth *immediately after the cycle is complete*, that the "cleaning on action loosens baked-on residue *from the oven bottom*" and that consumers must "clean the oven walls and door" themselves to *avoid baked on soil.*"[13]

85.     The "Quick Reference Guide" also has a "Helpful Tips" section.  This section states in pertinent part that "*heavily soiled ovens may require a second cleaning cycle*."[14]  While this language implies that the AquaLift, if at least used multiple times, will remove heavy soil from all parts of the oven cavity, Whirlpool fails to mention that the AquaLift cannot clean the oven walls and the oven door.

---

[11]     *See* Exhibit 3.

[12]     *See* Exhibit 6.

[13]     *Id*.

[14]     *Id*.

## AquaLift technology — Oven Cleaning Quick Reference Guide

AquaLift™ Technology is an innovative cleaning solution that is activated with heat and water to release baked-on spills from the oven interior in less than 1 hour. This new cleaning technology is a low-heat, odor-free alternative to traditional self-cleaning options.

**STEP**  **REMOVE** all racks and accessories from the oven cavity and wipe excess soil.

Use the scraper to remove additional easily-removed soils.

**STEP**  **POUR** 2 cups (16 oz) of distilled or filtered water onto the bottom of the empty oven and close the oven door.

**IMPORTANT:** Do not use cleansers, chemicals or other additives with the water.

**STEP**  **PRESS** CLEAN then press START.

Cleaning action loosens baked-on residue from the oven bottom.

Allow 40 minutes for cleaning and cool down. Some condensation will form on the window. When the cleaning cycle is complete, a beep will sound. Press CANCEL to end.

**STEP** 4 **REMOVE** the residual water and loosened soils with a sponge or soft dry cloth immediately after the cycle is complete.

Remove remaining soils with a non-scratch scrubbing sponge or plastic scraper.

Additional cleaning cycles may be run to help remove stubborn soils.

**STEP** 5 **CLEAN** the oven door and walls to avoid baked-on soil. Refer to the User Instructions for additional information.

**IMPORTANT:** The use of chemicals, including abrasives and commercial oven cleaners, or metal scouring pads may damage the oven interior.

    

### Use regularly to clean oven spills

For additional information, refer to the User Instructions.
For assistance with AquaLift™ Technology, call **1-877-258-0808**, or visit our website at http://whr.pl/aqualift.

W10400064A

W10400064A
©2011. All rights reserved.          AQUALIFT and AQUALIFT Design are trademarks of Whirlpool, U.S.A.          7/11
Printed in U.S.A.

---

## Helpful Tips

### Cleaning Your Ceramic Glass Cooktop
Clean your cooktop after each use with ceramic glass cooktop cleaner and apply with approved cooktop cleaning pads. Scrape off sugary spills while the cooktop is still warm. You may want to wear oven mitts while cleaning the cooktop.

Remove stubborn stains with Cooktop Cleaner, Scraper and Cleaning Pads available in the Cooktop Care Kit (not included).

Do not allow spills and stains to remain on the cooktop over night. Do not clean with steel wool, abrasive powder cleaners, chlorine bleach, rust remover, or ammonia as they will damage the glass. Razor scraper edges will not scratch the glass when used properly at a 45 degree angle to the surface.

### Cooktop Glass
The surface cooking area will glow red when an element is on. It may cycle on and off to maintain the selected heat level. Portions of the element may cycle on and off at different times on some elements. This is normal.

The Warm Zone element area will not glow red when cycling on.

### Oven Odor
There may be some odors the first few times you use your range. This will go away after the oven is used a few times. To eliminate these odors, it is recommended that you run the Bake cycle at 400°F (204°C) for 30 minutes prior to cooking for the first time.

### Oven Preheat Time
The standard time necessary to preheat your oven to 350° (177°C) is 10 to 15 minutes. Factors that have an impact on preheat times are: room temperature, starting oven temperature, and the number of oven racks. Unused oven racks can be removed prior to preheating your oven to reduce the preheat time.

### Convection
During convection cooking, the bake, broil and convection elements cycle on and off in intervals to maintain the oven temperature, while the fan circulates the hot air.

If the oven door is opened during convection cooking, the fan will turn off immediately. It will come back on when the oven door is closed.

### AquaLift™ Technology Cleaning
Some condensation will form on the oven window during the cleaning cycle. This condensation will evaporate within 30 minutes.



During the AquaLift™ Technology cleaning cycle, some steam will come out of the bottom of the console. This is normal and part of the cleaning cycle.

Make sure that the oven is level to ensure water is evenly distributed on the bottom of the oven cavity. Adjust the leveling feet as instructed in the Installation Instructions.

Remove heavy spills before starting the cleaning cycle. Heavily soiled ovens may require a second cleaning cycle.

For assistance with AquaLift™ Technology, call 1-877-258-0808, or visit our website at http://whr.pl/aqualift.

### For additional information, refer to the User Instructions.

W10400064A
©2011. All rights reserved.          AQUALIFT and AQUALIFT Design are trademarks of Whirlpool, U.S.A.          7/11
Printed in U.S.A.

86.     Whirlpool also represents the ease of use of AquaLift and that operation of the AquaLift feature "takes just a few steps".

87.     For example, its website states that:

"[a]fter removing all racks and accessories from the oven cavity and wiping excess soil up, simply:

Pour . . . water onto the bottom of an empty AquaLift[TM] self-clean technology enabled oven and close the door.

Press "Clean" then "Start" to begin the 40 minute cycle. . . .  When the cycle is complete, a beep will sound.  Press "Cancel" to end.

Immediately after the cycle is complete, remove residual water and loosened soils with a sponge or dry cloth.[15]

88.     Whirlpool further represents that AquaLift was "developed to directly address *consumer dissatisfaction with traditional high-temperature self-clean ovens* and to provide them an alternative cleaning solution."[16]

89.     According to Whirlpool, the "key benefits of using AquaLift[TM] self-clean technology" include that it "SAVES TIME: The cleaning process takes under one hour compared to the average 3-6 hours of traditional self-cleaning ovens" and "NO ODOR: Since AquaLift[TM] self-clean technology uses water to clean it avoids the traditional chemical odors associated with traditional oven cleaning."[17]

90.     Whirlpool further represents that AquaLift can be used "frequently to clean *tough baked-on soils*."[18]

---

[15]     *See* Exhibit 5.

[16]     http://whirlpoolcorp.com/aqualift/faq_q5.html (last visited Aug. 18, 2016), attached hereto as Exhibit 8.

[17]     http://whirlpoolcorp.com/aqualift/faq_q6.html (last visited Aug. 18, 2016), attached hereto as Exhibit 9.

[18]     *See* Exhibit 4.

91.     A "Glossary" section of the Whirlpool website contains the following entry for AquaLift: "AquaLift® Self-Clean Technology.  Get your oven clean in less than an hour with odor-free, low temperature AquaLift® technology.  This **exclusive coating** on the interior activates with water and heat, **allowing moisture to detach soils from underneath** so food and debris **easily wipe away**."[19]

92.     Whirlpool also advertises the AquaLift feature on individual product webpages.  For example, the webpage for Whirlpool's 6.4 Cu. Ft. Freestanding Electric Range model number, WFE540H0ES, with AquaLift® Self-Cleaning Technology, states that: "[a]t the end of the meal, this large oven's easy wipe ceramic glass cooktop offers hassle-free cleanup, while AquaLift® self-cleaning technology delivers **odor-free oven cleaning without chemicals in only 50 minutes**."[20]

93.     Similarly, the webpage for Whirlpool's 5.8 cu. ft. Front-Control Gas Stove with Fan Convection, model number WEG730H0DB states that: "[w]hen it's time for cleanup, AquaLift™ self-cleaning technology helps you **wipe away messes** in your slide-in gas stove without harsh chemicals or odors.[21]

94.     The webpages for Whirlpool's various other models of the Ovens include similar misrepresentations regarding AquaLift's purported ability to "self-clean[]" ovens in less than one hour.[22]

---

[19]     http://www.whirlpool.com/glossary/#A (last visited Aug. 15, 2016), attached hereto as Exhibit 10.

[20]     http://www.whirlpool.com/kitchen-1/cooking-2/ranges-3/-[WFE540H0ES]-1022746/WFE540H0ES/ (last visited Aug. 18, 2016), attached hereto as Exhibit 11.

[21]     http://www.whirlpool.com/-[WEG730H0DS]-1022391/WEG730H0DS/ (last visited Aug. 15, 2016), attached hereto as Exhibit 12.

[22]     *See, e.g.*, http://www.whirlpool.com/-[WEE730H0DS]-1022332/WEE730H0DS/ (last visited Aug. 15, 2016); http://www.whirlpool.com/-[WEC530H0DS]-1022331/WEC530H0DS/ (last visited Aug. 15, 2016); http://www.whirlpool.com/-[WFE745H0FS]-5764098/ WFE745H0FS/ (last visited Aug. 15, 2016); http://www.whirlpool.com/-[WFG715H0EH]-1022749/WFG715H0EH/ (last visited Aug. 15, 2016), attached hereto as Exhibit 13.

95.     Whirlpool echoes these misrepresentations directly on the product label of each Whirlpool oven equipped with AquaLift.

### Whirlpool's Nationwide Advertising Campaign For Aqualift Is False Deceptive And Misleading To Reasonable Consumers

96.     Whirlpool's entire advertising campaign for AquaLift – a key product feature – is false, deceptive, and misleading to reasonable consumers because, contrary to Whirlpool's representations, AquaLift does not "self-clean" the interior of the Ovens and, instead, requires consumers to manually clean their Ovens with cleaning products – *defeating the purpose of a "self-cleaning" oven*.

97.     To be sure, the Internet is teeming with consumer complaints regarding AquaLift's inability to "self-clean." For example, on February 8, 2013, one consumer posted the following complaint on Consumerist.com:

> I have a 30 day old Kitchen Aid convection gas range.  Love how it cooks.  HOWEVER, their *"Aqualift" cleaning technology is a rip AND entirely misleading*. . . .  So… every time you want to clean your cool new oven, *you'll be scrubbing it yourself!!!*[23]

98.     This dissatisfied consumer also posted the following photograph of the final results of Whirlpool's AquaLift "self-clean" technology:

---

[23]     https://consumerist.com/2013/02/08/my-advanced-new-self-cleaning-oven-needs-a-lot-of-help-to-clean-itself/ (last visited Aug. 15, 2016), attached hereto as Exhibit 14.



99.    In November 2015, another dissatisfied consumer posted a photograph of an Oven that had "self-cleaned" with AquaLift:[24]



---

[24]    https://www.consumeraffairs.com/homeowners/kit_stoves.html (last visited Aug. 15, 2016), attached hereto as Exhibit 15.

100.   Countless other complaints from putative Class members can be found on the Internet.  Online references and complaints regarding the Ovens mirror plaintiffs' experience, including the following sampling:

| Source | Comments |
|---|---|
| Consumer Affairs 4/18/16<br><br>https://www.consumeraffairs.com/homeowners/whirlpool_ranges.html[25] | Purchased the oven in summer 2015.  Very disappointed in the AquaLift Self-Cleaning oven.   Absolutely useless**.  *Does absolutely nothing and I end up cleaning the oven by hand.*** As a senior citizen, this is uncomfortable; I have injured my leg in the process and now feel I must wipe the oven down after each use.  I was so looking forward to having a nice clean oven at all times and it's not happening.  This is of no value to me. |
| Consumer Affairs 4/7/16<br><br>https://www.consumeraffairs.com/homeowners/whirlpool_ranges.html[26] | I HATE, HATE, HATE the aqua lift clean feature.  It's awful.  The bottom came somewhat clean but cook bacon and the sides and top are filthy and the aqua lift can't clean that.  I don't know how this ever made it past the thought process stage to become a "thing" but it needs to go away.  I'm quite cranky right now as ***I've just spent two hours scrubbing my oven while reaching past the oven door that doesn't come off because it's a "self-clean oven.*** This is what I have to look forward to for the next 10 years until it dies and I can get a new oven?  What a joke!! |
| Consumer Affairs 4/1/16<br><br>https://www.consumeraffairs.com/homeowners/whirlpool_ranges.html[27] | We bought a new stove from Lowe's in 2015 which is a Whirlpool with an AquaLift self-cleaning function.   ***This function is totally useless***.  We have tried it several times and it does not remove the grime from the oven.  We did not even have a very dirty oven.  It doesn't clean the sides at all and the bottom is still dirty.  I complained to the store and they told me the AquaLift function should be used every time the oven has been used.  They recommend that I use a spray for the oven (which is porcelain) and scrub off the dirt.  Give me back my old self-cleaning oven with the high heat.  This new technology doesn't work. |
| Consumer Affairs 3/4/16<br><br>https://www.consumeraffairs.com/homeowners/whirlpo | Whirlpool Gold Series gas oven with Aqua Lift.  Very unhappy with this oven. Cons: ***Aqua Lift technology doesn't work AT ALL*** (manual cleaning required); stove top hard to clean; 2 front gas burners are "super" burners which is fine for boiling water, but too hot for regular cooking.  Would be better to have one super burner in the middle or back but two upfront is way |

---

[25]    Attached hereto as Exhibit 16.

[26]    Attached hereto as Exhibit 17.

[27]    Attached hereto as Exhibit 18.

| Source | Comments |
|---|---|
| ol_ranges.html?page=2[28] | too hot for regular cooking, even on lowest setting.  Was going to use spray cleaner but cannot on convection ovens.  In a bind what to do except scrub with Brillo.  Anyone used Brillo? |
| Consumer Affairs 2/23/16 https://www.consumeraffairs.com/homeowners/whirlpool_ranges.html?page=2[29] | Whirlpool gas range Model#wfg10h0ah1 with aqua lift technology.  This is the biggest ripoff that was ever done to me.  It say self clean, not it cleans and then you clean.  **This is fraud plain and simple**.  I am handicapped and made it very clear to the salesperson that it had to be self cleaning.  4 times I did the clean cycle and I was in shock, I called repair, I thought the self clean was broken.  However this is the line they give you over and over, that it's not broken.  "This is working the way it was designed to work."  So they made a range that is self cleaning, but no it doesn't do that.  For 899.99, I did not deserve to get duped like this. |
| Consumer Affairs 9/24/15 https://www.consumeraffairs.com/homeowners/kit_stoves.html?page=2[30] | Like so many other reviewers I am totally dissatisfied with my KitchenAid Gas Range Model KGRS202BSS.  I second the reviews by Gary of Tonawanda, NY on May 20, 2015 (and others) that the AquaLift Self Clean is not effective and that the black stove top stains, but primarily I totally agree with his comment about how the heat vents out and heats up the handles.  This was also the comment of Sharyn of Pearl River, NY on July 2, 2015 (who I would like to thank for the tip about requesting the black knobs which I intend to do). |
| | **This range is TERRIBLE.  It becomes a literal sauna in my kitchen** when I try to cook using the stove top and/or the oven.  Everyone who comes to my home comments on it.  And this is despite the fact that I have a fan above the oven which is vented to the outside.  I take care of my 2 year old grandson, and I live in fear of him burning himself since the knobs are obviously within his reach.  He has definitely learned about the concept of HOT.  **I purchased this range from PC Richards, and they have sent 3 different servicemen out, only to tell me that's the way it is!**  Unbelievable.  I just visited my friend who has a kitchen much smaller than mine, and her new Maytag slide in gas range did not produce the sauna effect that my KitchenAid range does.  DON'T BUY KITCHENAID.  YOU'LL REGRET IT. |
| Consumerist 9/28/14 https://consumerist. | Whirlpool's Aqualift self-cleaning system seemed to be a technological advance comparable to see-through dishwashers, but she reports that her oven only cleans the bottom center, and not the sides or the corners.  You know, the parts that you want |

[28]      Attached hereto as Exhibit 19.

[29]      Attached hereto as Exhibit 20.

[30]      Attached hereto as Exhibit 21.

| Source | Comments |
|---|---|
| com/2013/02/08/my-advanced-new-self-cleaning-oven-needs-a-lot-of-help-to-clean-itself/[31] | your self-cleaning oven to take care of for you. |
| Houzz (GardenWeb)<br><br>9/19/2012<br><br>http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[32] | ***Get ready for rubber gloves and oven cleaner.  It does not work.***  Consumer reports says it doesn't work, but I bought before reading reviews.  I want to get rid of mine.  They are sending me a special oven cleaner for this piece of junk so what good is this self cleaning oven that needs a special oven cleaner?  I will never again buy American. |
| Houzz (GardenWeb)<br><br>1/29/13<br><br>http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[33] | I bought A Whirlpool range convection, self cleaning and I'm very furious too because the self cleaning, after several time of cleaning, which the last one ***I let it go for 4 hours, it didn't clean anything at all***.  My old GE of 30 years used to come out spotless.  It has been over a year already, twice the technician came out and there was nothing he could do.  We bought 5 years extended warranty and Sears told us there is nothing they can do.  I still have to try calling the manufacturer, hoping they'll give me some satisfaction.  It really sucks.  We should be more further ahead with technology.  Now I don't know who to trust anymore. |
| Houzz (GardenWeb)<br><br>2/11/2013<br><br>http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[34] | I, too, unfortunately purchased this awful oven.  ***It is uncleanable!***  I bake frequently, and any form of grease splatter is not removable from the sides and back.  Wrote to the company and all they did was tell me to follow the instructions that came with the range!  Do they think I'm stupid?  I am very angry.  Any advice that can be passed along regarding how I can clean it, or how to make the company responsible for this lousy oven, would be greatly appreciated. |
| Houzz (GardenWeb) | I was also dumb enough to buy this range.  I've had it one year.  Have written complaints to Maytag and Whirlpool.  I received |

---

[31]     Attached hereto as Exhibit 22.

[32]     Attached hereto as Exhibit 23.

[33]     Attached hereto as Exhibit 24.

[34]     Attached hereto as Exhibit 25.

| Source | Comments |
|---|---|
| 2/13/2013<br><br>http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[35] | phone calls from some underpaid know nothing who treated me as if I'd never cleaned an oven before.<br><br>***For Whirlpool/Maytag to call this "self-cleaning" is false advertising and they need to make it right with me or I will not purchase another product from them ever again!*** |
| Houzz (GardenWeb)<br><br>1/18/2014<br><br>http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[36] | I have this horrible range and it is a piece of garbage. It might as well not even have a self cleaning feature. It does not work. Cleaning the glass top of the stove is also very difficult. ***It was a total waste of money, Maytag doesn't care and won't do anything about it.*** DO NOT PURCHASE ONE. There is also little to no storage space in the drawer. There is not one good thing I can say about this stove. Not one. |
| Houzz (GardenWeb)<br><br>5/11/2015<br><br>http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[37] | I bought this range WYMER888BW the 25th Jan. 2014. ***What a waste of money, self clean not at all. Would never buy a Maytag or Whirlpool product again. Takes a lot of hard scrubbing & scraping not to mention time to do repeated steam clean cycles and trying to clean this trash.*** Biggest mistake in a purchase we have made in our 50 years of marriage. Would not recommend!!! |
| Houzz (GardenWeb)<br><br>9/13/2015<br><br>http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[38] | Does not work at all! My wife and I bought it 2 years ago from Lowes (on sale). We have tried the self cleaning feature multiple times, even have run it twice (simultaneously) to see if double the cleaning time would help. Each time, we end up using gloves and other cleaning products to scrape out the mess. I don't know how Maytag tested this before it was marketed, but it does not clean anything. |
| Houzz | i gave up fighting with maytag/whirlpool..after a year of |

---

[35]     Attached hereto as Exhibit 26.

[36]     Attached hereto as Exhibit 27.

[37]     Attached hereto as Exhibit 28.

[38]     Attached hereto as Exhibit 29.

| Source | Comments |
|---|---|
| (GardenWeb)<br>9/14/2015<br>http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[39] | owning the same oven, it was junk.  I sold it for 500$, (loss 200$)and bought a regular GE stove which has the old fashion kind of self cleaning oven cleaning feature...and i LOVE it.  Never will i purchase a whirlpool or Maytag product again.  They are throw away appliances in more ways than one.  Good luck on your junk.  Sell it , take the loss and get rid of your headache. |
| Houzz (GardenWeb)<br>11/27/2015<br>http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[40] | Whoever invented Aquaift to clean ovens obviously never cleaned an oven ever!!  Today, a day after Thanksgiving I spent all morning "cleaning" my oven only to have it look as bad as it did before I started.  *The AquaLift did nothing for the sides and the stains on the bottom after two cleaning cycles!!!*  Whatever can be done other than getting a new oven? |
| Houzz (GardenWeb)<br>12/16/2015<br>http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[41] | This is so frustrating.  I too do not read the reviews before purchasing.  I saw that it was self-cleaning that was all I thought I needed to know.  How can this be considered new technology and how can the company get away with advertising self-cleaning oven when it absolutely does not clean one bit?!  Very frustrated! |
| Houzz (GardenWeb)<br>12/30/2015<br>http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[42] | We had the Whirlpool recommended technician from Appliance Mechanics (425-212-9076) out on 12/29 and he verified that the Aqua-Lift is working as designed (meaning what??).  However that doesn't solve the problem with the promises that were made regarding how well this technology is supposed to work.  *It can't be cleaned with conventional cleaners and the bottom is stained from food that never came up after the cleaning and scrubbing per Whirlpool's instructions*.  I have sent 4 emails to Whirlpool customer service and never heard back.  What we are requesting is that since that Whirlpool is promoting this as the next best thing |

---

[39]    Attached hereto as Exhibit 30.

[40]    Attached hereto as Exhibit 31.

[41]    Attached hereto as Exhibit 32.

[42]    Attached hereto as Exhibit 33.

- 30 -

| Source | Comments |
|---|---|
|  | and not performing up to our (and anyone on the internet who has this technology) expectations, we are requesting that Whirlpool replace the oven with one comparably priced that has conventional cleaning capabilities |
|  | Follow-up: I finally got in touch with Whirlpool after 4 emails and posting on Facebook.  It seems that they respond when you post on social media.  I was requesting a replacement oven with conventional self cleaning and and after much back-and-forth I was informed that because the technician reported that the oven was functioning correctly that they could not give me a replacement.  Their reason being that a continually dirty oven had nothing to do with function but was a cosmetic issue.  The CS rep was "kind" enough to offer me a bottle of the Affresh cleaner.  Don't fall for the AquaLift hype. |
| Houzz (GardenWeb) 1/31/2016 http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[43] | Yes.  ***This oven aqua clean is a joke!***  I wish I could have my old oven than got VERY hot and stinky back.  Would rather clean up a little ash than scrub my fingers off! |
| Houzz (GardenWeb) 2/20/2016 http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[44] | I just tried the Aqualift feature and am on the thrid cycle now.  So far only the bottom part has gotten clean and the sides are still greasy.  Hate this feature.  ***Had I known how horrible it was I would have never bought it.  I am also not happy with the glass top as that too is difficult to keep clean.***This is the first time I have used the Aqualift feature and it was right after grease was spilled from a meatloaf pan.  If anyone is looking to buy a stove with this feature don't. |
| Houzz (GardenWeb) 3/18/2016 http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on- | The aqualift does not clean at all!  I finally go disgusted and used oven cleaner and it took the finish off the sides of oven, so now my oven is ruined.  Looks dirty all the time, so dissatisfied.  As I used the oven cleaner I know I will have no prayer with Whirlpool.  I bought this stove without reading reviews.  My mistake, never again!  ***With all these complaints and a product that obviously does not do it's job, there has to be a class action maybe?*** |

---

[43]    Attached hereto as Exhibit 34.

[44]    Attached hereto as Exhibit 35.

| Source | Comments |
|---|---|
| maytag-ranges-oven-cleaning)[45] | |
| Houzz (GardenWeb) 4/30/2016 http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[46] | Welcome to the crappy Aqualift club!  I finally put some foil on the bottom rack to help catch any drips.  This was suggested from the dealer who agrees it's worthless!!  Evidently our govt regulations at work!!  I also bought some Easy off with a blue top as it was suggested it works well.  I haven't used it yet but I will when needed!!  Good luck. |

### Plaintiffs' Experiences With Whirlpool's Deceptively Advertised Aqualift Feature

**Laura Bliss**

101.    On or around May 25, 2016, Ms. Bliss purchased a Whirlpool Electric Stove, model number WFE540H0ES, equipped with AquaLift from a Home Depot store located in Jackson, Michigan.

102.    Ms. Bliss purchased the Whirlpool Oven with AquaLift after viewing the in-store advertising that the AquaLift would "self-clean" tough baked-on soils from the inside of her oven in less than one hour without any cleaning products in addition to a Home Depot salesperson touting the "self-cleaning" benefits of the oven.

103.    Ms. Bliss used her oven in an ordinary manner that did not require cleaning the bottom, sides, and glass door of her oven until approximately one month after purchase when she used the AquaLift "self-clean" cycle according to Whirlpool's instructions to remove stains and soil from the bottom of her oven and the glass door of the oven.  At the end of the "self-cleaning" cycle, Ms. Bliss found that there was still stains and soil on the bottom and door of the oven.

---

[45]     Attached hereto as Exhibit 36.

[46]     Attached hereto as Exhibit 37.

104.    Then, approximately one month later, after ordinary use of the oven, Ms. Bliss again turned on the AquaLift "self-clean" cycle to remove accumulated stains and soil on the bottom and door of the oven.   After running two "self-clean" cycles, the AquaLift still failed to clear the stains and soil on the bottom and door of her oven, or allow Ms. Bliss to easily remove them with a sponge.

105.    At this point, Ms. Bliss notified Whirlpool of the AquaLift's failure to work in an email to Whirlpool Customer Service in or around July 2016.   She has not yet received a reply.

***Toby Schechner***

106.    On or around November 24, 2014, Ms. Schechner purchased a Whirlpool 6.2 Cu. Ft. Electric Range equipped with AquaLift from a Lowe's store in Boynton Beach, Florida.   Ms. Schechner was in the market for a new oven with "self-cleaning" capabilities, and she made that purchase in reliance on Whirlpool's promise that AquaLift would "self-clean" the inside of her oven without cleaning products in less than an hour.

107.    At the time of her purchase, the manager of the Lowe's store demonstrated the proper use and operation of AquaLift feature, which Ms. Schechner fully understood.

108.    Some time passed before Ms. Schechner used her oven in an ordinary manner that required cleaning.   Once the interior of her oven became soiled, Ms. Schechner activated the AquaLift feature according to the user manual and the instructions she received from the manager of the Lowe's store where she purchased her oven.   After the "self-clean" cycle was completed, Ms. Schechner was surprised to find hardened debris, stains, and cooking grease on the bottom, side walls, and glass door of her oven.   Ms. Schechner ran the AquaLift "self-clean" cycle another three times in an attempt to clean the oven, and each time, the AquaLift failed to work in

removing debris, stains, and cooking grease, or at a minimum, allow Ms. Schechner to "easily wipe" such stains away.

109.   Ms. Schechner contacted the manager of the Lowe's store where she purchased her oven, who unsuccessfully attempted to troubleshoot the defective AquaLift feature.

110.   Ms. Schechner then requested service on her oven in accordance with Whirlpool's "One Year Limited Warranty," through which Whirlpool promised to "correct defects in materials or workmanship that existed when [the oven] was purchased, or at its sole discretion replace the product."

111.   Three futile and inconvenient service attempts were made to "repair" the defective AquaLift feature on Ms. Schechner's new oven, all of which were unsuccessful.

112.   First, on or around September 2, 2015, a Whirlpool representative from "M&M Appliance" attempted to repair the AquaLift on Ms. Schechner's oven, but was unable to do so.

113.   Second, on or around, September 8, 2015, another Whirlpool representative from "Masco Appliance & Air" attempted to repair the AquaLift on Ms. Schechner's oven, but was unable to do so.

114.   Finally, on or around September 18, 2015, a third Whirlpool representative from "Flamingo Appliance Service" attempted to repair the AquaLift on Ms. Schechner's oven, but was unable to do so.  The Flamingo Appliance Service representative ultimately concluded that "she [Ms. Schechner] still has (sic) to clean it [the oven] out herself."

115.   Indeed, during all three service attempts, the Whirlpool service providers admitted to Ms. Schechner that: (a) everyone complains about the AquaLift; (b) they receive calls all the time about AquaLift; and/or (c) AquaLift does not work.

116.   Frustrated with the inability of the AquaLift system to work as advertised, and the Whirlpool service providers' inability to remedy the defect, Ms. Schechner contacted the Attorney General's Office and the Florida Division of Consumer Services in or around late September 2015.  She completed a claim form to the Attorney General's Office regarding Whirlpool's false advertising.

117.   Ms. Schechner also repeatedly called Whirlpool Customer Service during September and October 2015 regarding the continued inability of the AquaLift system to work as advertised and warranted.   During her first contact, a customer service representative told her there was nothing Whirlpool could do and that Ms. Schechner had to service her oven through Lowe's.  On a subsequent call, a representative from "Whirlpool Factory Certified Care" informed Ms. Schechner that if the AquaLift feature does not work, ***Ms. Schechner should purchase cleaning supplies and manually clean the Oven***.  This advice, of course, was inconsistent with Whirlpool's advertising of AquaLift's ability to "self-clean," which was the motivating factor in Ms. Schechner's purchase of her Whirlpool oven.

***Barbara Barnes***

118.   In or around June 2013, Ms. Barnes purchased a KitchenAid Electric Stove, equipped with AquaLift from a Lowe's store in Lakeland, Florida.

119.   Ms. Barnes was in the market for a new self-cleaning oven and purchased the KitchenAid Oven after viewing in-store advertising that the AquaLift would effectively "self-clean."

120.   After the purchase, Ms. Barnes used her oven in an ordinary manner that did not require cleaning the bottom, sides, and glass door of her oven until in or around November 2013, when she attempted to use the AquaLift "self-clean" cycle according to instructions set forth in Whirlpool's user manual.   Despite closely following these instructions, Ms. Barnes found that there was still hardened debris, stains, and cooking grease on the bottom, sides, and glass door of her oven at the end

of the "self-cleaning" cycle.  While Ms. Barnes applied a sponge to clean the dirty areas of the oven, the AquaLift did not effectively loosen the hardened debris, stains, and cooking grease or allow them to be "easily" wiped away.

121.   Then, approximately six months later, again following ordinary use of the oven, Ms. Barnes activated the AquaLift feature to clean built up hardened debris, stains, and soil on the bottom, sides and glass door of her oven.  Yet, once more, the "self-clean" cycle completed and Ms. Barnes was left with dirty grease, soil, and debris that was unable to be easily wiped away with a sponge.

122.   The build-up of grease, soil, and debris on the bottom and sides of the oven became so unmanageable in or around June 2016, that Ms. Barnes ran the AquaLift *"self-clean" cycle four times*, but was still unable to remove or loosen accumulated debris grease and stains.

123.   Frustrated with a dirty oven, now for over three years, Ms. Barnes contacted KitchenAid Customer Service in or around June 2016 to complain of the inoperability of the AquaLift.  KitchenAid has not responded to her inquiry.

### Kathleen Jordan

124.   In or around March 17, 2016, Ms. Jordan purchased a Whirlpool Electric Stove, model number WEE760H0ASO, equipped with AquaLift from a Rogers Appliance store located in Flemington, New Jersey.

125.   Ms. Jordan was looking to purchase a self-cleaning oven and purchased the oven after viewing Whirlpool's advertising in-store that that AquaLift would effectively "self-clean" the inside of her oven.

126.   However, at no point since purchasing the oven, has the AquaLift worked in "self-cleaning" Ms. Jordan's oven or performed as advertised.

127.   For example, within a month of her purchase, after Ms. Jordan's ordinary use of the oven, the AquaLift did not work in effectively clearing the sides of her oven.  Despite Ms. Jordan running multiple "self-cleaning" cycles in accordance with

- 36 -

the user manual, the AquaLift did not remove the stains and soil on the sides of the oven or at a minimum loosen the stains and soil so they could be easily wiped away.

128.   Approximately a week later, the bottom of Ms. Jordan's oven became stained and soiled during normal use and required cleaning.  Ms. Jordan again activated the AquaLift in accordance with the user manual to remove the stains and soils, but after repeated "self-clean" cycles, the AquaLift did not remove them or, at a minimum, allow Ms. Jordan to easily wipe away the debris and grease with a sponge.

129.   Then, in or around early July 2016, Ms. Jordan once again tried to activate the AquaLift because of heavy accumulation of debris, grease, and stains on the sides, bottom, and back of the Oven.  After *four attempted "self-cleaning" cycles,* in accordance with the user manual, the AquaLift did not clean the oven or allow Ms. Jordan to easily wipe away the debris and grease with a sponge.

130.   Ms. Jordan was at this point *afraid to use the oven* because it could not be cleaned.  She wrote to Whirlpool on or around July 12, 2016 indicating her frustration with the ineffectiveness of the AquaLift feature.  A representative of Whirlpool apologized for the AquaLift's inability to work but did not provide her with a means to fix the AquaLift.

131.   Approximately two days later, in an attempt to fix the AquaLift under Whirlpool's one-year warranty, Ms. Jordan contacted Rogers Appliance.  A representative from Rogers Appliance informed Ms. Jordan that *"there was nothing they could do"* to service the AquaLift and that there was nothing unusual about Ms. Jordan's negative experience with the oven.

### Louise Miljenovic

132.   In or around December 2012, Ms. Miljenovic purchased a KitchenAid Gas Stove, model number KGRS2028X40, equipped with AquaLift from the retailer Appliance Gallery located in Bayville, New Jersey.

- 37 -

133.    Ms. Miljenovic was looking to purchase a new oven with "self-cleaning" capabilities, and made the purchase after viewing the in-store advertising for the AquaLift and listening to a store representative tout the "innovative" benefits of the "new" AquaLift technology.

134.    After purchasing the oven and to familiarize herself with the AquaLift product, Ms. Miljenovic read the instruction manual closely.

135.    Ms. Miljenovic first tried to use the AquaLift in or around March 2013 after ordinary use of the oven left stains of cooking grease on the sides, bottom, and back of the oven.   However, after activating the AquaLift "self-clean" cycle in accordance with the instructions provided in the user manual, there were still hardened stains on the sides, bottom and back of the oven.

136.    Since the AquaLift did not work as advertised, in or around April 2013, Ms. Miljenovic reviewed the product's "self-clean" cycle instructions once again and additionally, watched product instructional videos online to ensure she was using the AquaLift in accordance with the product instructions.  Even so, in her second attempt to use the AquaLift feature of the oven, Ms. Miljenovic fared no better, as the stains on the side, bottom, and back of her oven were not cleaned or loosened so she could wipe them away with a sponge.

137.    After the AquaLift's inability to work a second time, Ms. Miljenovic wrote to KitchenAid customer service online to express her dissatisfaction with the product, and to this day has not received a response.

***Mr. and Mrs. Thome***

138.    In or around March 2014, Mr. and Mrs. Thome purchased a Whirlpool Electric Range, model number WFE540H0AS, equipped with AquaLift from a Lowe's store in Lake Havasu City, Arizona.

139.    Mr. and Mrs. Thome were looking to purchase a new oven with "self-cleaning" capabilities" and they made their purchase after viewing Whirlpool's

- 38 -

advertising in-store and online, that the AquaLift would "self-clean" the inside of their oven without cleaning products in less than one hour.

140.   After ordinary use of the oven, Mr. and Mrs. Thome activated the AquaLift on three separate occasions in or around November 2014, May 2015, and April 2016.   On each of these three separate uses the AquaLift did not work or perform as advertised as Mr. and Mrs. Thome's oven was left heavy stains, soils, and debris on the door, sides and back at the conclusion of all three "self-cleaning" cycles. For example, in November 2014 and May 2015, Mr. and Mrs. Thome tried to use the AquaLift to clear debris, soils, and stains from the bottom, glass door sides and back of the oven, but after turning on the "self-clean" cycle in accordance with the user manual's instructions, the AquaLift did not remove the debris or stains, nor did it allow them to be "easily" wiped away.

141.   Then, in or around April 2016, after another failed attempt to make the AquaLift work and perform as advertised, the oven had become so dirty because of the AquaLift's inoperability that Mr. and Mrs. Thome were unable to even look through the glass door of the oven to monitor the progress of their cooking.

142.   For all Plaintiffs, the AquaLift feature on the Ovens failed to perform as advertised and did not "self-clean" Plaintiffs' ovens.

143.   Plaintiffs purchased their Whirlpool Ovens with AquaLift in reliance on Whirlpool's and its representatives promises and representations that AquaLift would "self-clean" tough baked-on soils from the inside of their Ovens in less than one hour without any cleaning products.   Contrary to Whirlpool's advertising, AquaLift did not perform as advertised and, in fact, did not clean any of Plaintiffs' Ovens.   Had Plaintiffs known about the defects in Whirlpool's AquaLift and its failure to perform as advertised, Plaintiffs would not have purchased a Whirlpool Oven with AquaLift or would not have paid as much for it.

144. Plaintiffs have suffered damages including, but not limited to: (1) payment for a defective product; (2) overpayment for product advertised to include a self-cleaning function, but did not; (3) a decrease in value of their ovens due to the defect; and (4) out-of-pocket money spent in connection with addressing the AquaLift's inability to function as advertised.

**Kathryn Limpede**

145. In or around December 11, 2012, Ms. Limpede purchased a Maytag Gas Range, model number, MGR8674AW equipped with AquaLift from a Home Depot store in Boise, Idaho.

146. Ms. Limpede was aware of the marketed self-cleaning functionality and, specifically of the AquaLift feature—including, for example, from a direct statement of a Maytag representative who touted the effectiveness of the AquaLift's "innovative" "self-cleaning" capability to Ms. Limpede.

147. Ms. Limpede used her Maytag oven in an ordinary manner. Her use of the Maytag did not require cleaning the bottom, sides, and glass door of her oven until in or around the spring of 2013. At that time, she ran the AquaLift "self-clean" cycle per the instructions provided in the oven's user manual. Upon completion of the cycle, Ms. Limpede's oven remained dirty – with cooking grease, stains, and soil on the bottom and the sides.

148. In or around the summer of 2013, Ms. Limpede ran the AquaLift "self-cleaning" feature in an effort to clean the bottom and sides of her oven. She, again ran the cycle per the instructions that came with the Maytag oven. But, as before, the cooking grease, stains and soil on the bottom and sides did not clean.

149. Ms. Limpede utilized the "self-clean" cycle two or three additional times, in or around this same time frame. The AquaLift feature failed to clean the oven on each occasion.

150.   Because AquaLift was unable to "self-clean" the Maytag oven, in or around summer 2013, Ms. Limpede purchased a silicone liner to use in the oven in an effort to avoid, or minimize, additional dirt to the oven cavity.

151.   In or around summer 2013, Ms. Limpede relayed her negative experience with the AquaLift feature to a Maytag representative.  The representative told her that the AquaLift feature should be run after each use of the oven to be effective.  Ms. Limpede had not heard, or seen, that directive prior to hearing it from the Maytag representative on that day.

152.   The AquaLift feature of Ms. Limpede's oven has not performed as advertised or marketed since Ms. Limpede purchased the oven.  As a result, Ms. Limpede has been forced to manually clean the oven herself.

### Candace Oliarny

153.   In or around November 13, 2015, Plaintiff Candace Oliarny purchased a Whirlpool Gas Stove, model number WEG730H0DS, equipped with AquaLift from a CHF Home Furnishings store located in Boise, Idaho.

154.   Ms. Oliarny purchased the oven after viewing in-store advertising regarding Whirlpool's AquaLift, which claimed that the AquaLift would "self-clean" the inside of her oven.

155.   A sales person also described the supposed self-cleaning features of the product to her.

156.   In or around March 2016, Ms. Oliarny ran multiple cycles of the Aqualift cycle, and followed the user manual to do so.  The AquaLift failed to remove the stains, grease and debris from the bottom and sides of her oven.  The feature also did not allow Ms. Oliarny to wipe away the stains, grease, and debris with a sponge, as Whirlpool advertised it would.

157.   In accordance with the terms of Whirlpool's "One Year Limited Warranty," in or around April 22, 2016, Ms. Oliarny tried to have the oven serviced by CHF Home Furnishings.  During a service call, Ms. Oliarny was told by the service company representative or technician that: (i) "the AquaLift does not work," (ii) "you have to manually clean the oven yourself," and (iii) the only cleaning products which would work to clean the oven were "Easy Off" or "Soft Scrub."

158.   Then, on or around August 9, 2016, a service company called Capital Refrigeration paid a visit to Ms. Oliarny's home to address the inoperable Aqualift issue.  The service company representative or technician told Ms. Oliarny that he was not able to fix the AquaLift, and that there nothing more he could tell her to do other than calling the Whirlpool "AquaLift Hotline."

159.   At all times since the purchase of Ms. Oliarny's oven, the AquaLift has not performed as advertised and has not "self-cleaned" her oven.

### Beverly Simmons

160.   On or around August 5, 2015, Ms. Simmons purchased a Whirlpool Gas Stove, model number WFG540H0ES, equipped with AquaLift from a Lowe's store in Albuquerque, New Mexico.

161.   Ms. Simmons purchased the oven based on representations that the AquaLift self-cleaning was effective and simple to use, and the overall ease of the "self-cleaning" feature.

162.   She recalls being told that the AquaLift simply needs water to be put into the bottom of the oven and the dirt just lifts off.

163.   The AquaLift failed to perform as represented to Ms. Simmons.  Within a few weeks of purchase, Ms. Simmons activated the AquaLift and closely followed the user instructions.

164.   At the end of the "self-cleaning" cycle, Ms. Simmons did not observe the removal of stains or cooking grease.  The dirt on her oven cavity had not loosened so she could "easily wipe" it away.  This remained true even after Ms. Simmons ran multiple "self-clean" cycles.

165.   Approximately two months later, Ms. Simmons closely followed the user instructions to utilize the AquaLift, but, again, it failed to "self-clean" as advertised.

166.   Ms. Simmons has since manually cleaned the cavity of the oven..

### NOTICE AND DEMAND PROVIDED TO WHIRLPOOL

167.   On May 17, 2016, Plaintiffs' counsel wrote to Whirlpool to provide notice of Whirlpool's violation of the MMWA, Michigan Consumer Protection Act, Mich. Comp. Laws Ann. §445.901, *et seq*., ("MCPA"), Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §501.201, *et. seq.* ("FDUTPA"), additional common law claims and that it would act on Plaintiffs' behalf to represent a class of aggrieved persons, as well as to demand, *inter alia*, a cessation of Whirlpool's false and misleading advertising, compensatory damages, restitution, and disgorgement.  A true and correct copy of the demand letter is attached hereto as **Exhibit 38**.  Whirlpool failed to cure its violations of the MMWA, MCPA, FUDTPA and various common law claims within thirty days of Plaintiffs' counsel's demand letter.

### CLASS ACTION ALLEGATIONS

168.   Plaintiffs bring this action individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of the following proposed Nationwide Class:  ***All persons who purchased a Whirlpool, Maytag, KitchenAid, or Jenn-Air oven equipped with AquaLift in the United States.***

169.   Plaintiffs also seek certification of the following subclasses:

(i)   <u>Michigan Subclass</u>:  ***All persons who purchased a Whirlpool, Maytag, KitchenAid, or Jenn-Air oven equipped with AquaLift in the state of Michigan***.

- 43 -

(ii)    Florida Subclass: *All persons who purchased a Whirlpool, Maytag, KitchenAid, or Jenn-Air oven equipped with AquaLift in the state of Florida*.

(iii)    New Jersey Subclass: *All persons who purchased a Whirlpool, Maytag, KitchenAid, or Jenn-Air oven equipped with AquaLift in the state of New Jersey*.

(iv)    Arizona Subclass: *All persons who purchased a Whirlpool, Maytag, KitchenAid, or Jenn-Air oven equipped with AquaLift in the state of Arizona*.

(v)    Idaho Subclass: *All persons who purchased a Whirlpool, Maytag, KitchenAid, or Jenn-Air oven equipped with AquaLift in the state of Idaho*.

(vi)    New Mexico: *All persons who purchased a Whirlpool, Maytag, KitchenAid, or Jenn-Air oven equipped with AquaLift in the state of New Mexico*.

170.    Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Nationwide Class, the Michigan Subclass, the Florida Subclass, the New Jersey Subclass, the Arizona Subclass, the Idaho Subclass, and the New Mexico Subclass may be expanded or narrowed by amendment or amended complaint.

171.    Specifically excluded from the Classes are Whirlpool, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers or entities controlled by Whirlpool, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Whirlpool and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

172.    *Numerosity*.  The members of the Classes are so numerous that joinder of all members is impracticable.   Upon information and belief, the Classes include

thousands of members who are geographically dispersed across the country and the states of Michigan, Florida, New Jersey, Arizona, Idaho, and New Mexico. The precise number of Class members is unknown to Plaintiffs. The true number of Class members is known by Whirlpool, however, and thus can be ascertained through appropriate investigation and discovery and may be notified of the pendency of this action by first class mail, electronic mail, or published notice.

173. ***Existence and predominance of common questions of law and fact***. Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a)     Whether Whirlpool's advertising campaign for AquaLift was false, deceptive, or misleading to a reasonable consumer;

(b)     Whether Whirlpool knew or should have known that its AquaLift technology was defective and could not perform as advertised;

(c)     Whether Whirlpool had a duty to disclose the design flaw in AquaLift;

(d)     Whether the purported ability of AquaLift to "self-clean" tough baked-on soils from the interior of an oven in under one hour is a material fact to consumers;

(e)     Whether Whirlpool violated the MMWA;

(f)     Whether Whirlpool breached an express warranty made to Plaintiffs and the Class members;

(g)     Whether Whirlpool breached an implied warranty of merchantability;

(h)     Whether Whirlpool breached a contract with Plaintiffs and the Class members;

(i)      Whether Whirlpool represented that the Ovens with AquaLift have characteristics, uses, and benefits, that they do not have;

(j)      Whether Whirlpool advertised the Ovens with AquaLift with the intent not to sell them as advertised;

(k)      Whether Whirlpool failed to reveal a material fact regarding its AquaLift technology, the omission of which would tend to mislead or deceive consumers, and which fact could not reasonably be known by consumers;

(l)      Whether Whirlpool made a representation of fact or statement of fact material to its sale of Ovens equipped with AquaLift such that a person could reasonably believe the represented or suggested state of affairs to be other than it actually is;

(m)      Whether Whirlpool failed to reveal facts that were material to its sale of Ovens equipped with AquaLift in light of representations of fact made in a positive manner;

(n)      Whether Whirlpool violated the MCPA;

(o)      Whether Whirlpool violated the FDUTPA;

(p)      Whether Whirlpool violated the NJCFA;

(q)      Whether Whirlpool violated the ACFA;

(r)      Whether Whirlpool violated the ICPA;

(s)      Whether Whirlpool violated the NMUPA;

(t)      Whether Whirlpool was unjustly enriched;

(u)      Whether Whirlpool acted willfully and in wanton disregard of the consequences of its actions to consumers;

(v)      Whether Plaintiffs and the Class members are entitled to damages and the amount of such damages;

(w)      Whether Plaintiffs and the Class members are entitled to an award of punitive damages; and

- 46 -

(x)     Whether Plaintiffs and the Class members are entitled to equitable relief, including an injunction enjoining Whirlpool from engaging in the wrongful and unlawful conduct alleged herein and ordering Whirlpool to engage in a corrective advertising campaign.

174.   ***Typicality***.  Plaintiffs' claims are typical of the claims of the other Class members in that Plaintiffs and the Class members were injured by the same wrongful conduct and scheme of Whirlpool alleged herein.

175.   ***Adequacy of representation***.  Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs have retained counsel highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action.  Further, Plaintiffs have no interests that are antagonistic to those of the other Class members.

176.   ***Superiority***.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be involved in individual litigation of their claims against Whirlpool.  It would, thus, be virtually impossible for the Class members, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single United States District Court, and presents no unusual management difficulties under the circumstances presented in this case.

177.   In the alternative, the Class may also be certified because:

(a)     the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for Whirlpool;

(b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c)     Whirlpool has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and injunctive relief with respect to the members of the Class as a whole.

178.   Alternatively, certain issues relating to Whirlpool's liability may be certified pursuant to Fed. R. Civ. P. 23(c)(4).

## CAUSES OF ACTION

## COUNT I

### *Violations Of The Mmwa (Written Warranty)*
### *(On Behalf Of The Nationwide Class And The Subclasses)*

179.   Plaintiffs allege and incorporate by reference each allegation above as though fully set forth herein.

180.   Plaintiffs and the Class members are "consumers," Whirlpool is a "supplier" and "warrantor," and Whirlpool Ovens equipped with AquaLift are "consumer products" as defined by the MMWA.  15 U.S.C. §2301.

181.   Whirlpool's written affirmations of fact, promises, and/or descriptions relating to its Ovens equipped with AquaLift, as alleged herein, as well as its "One Year Limited Warranty," are each a "written warranty" as defined in the MMWA. *Id.*

182.   Despite those written warranties, Whirlpool delivered to Plaintiffs and the Class members Ovens equipped with AquaLift that did not conform to Whirlpool's written warranties.

183.   Specifically, as alleged herein, Whirlpool warranted that its Ovens could "self-clean" tough baked-on soils from the interior of an Oven in less than one hour, however, the Ovens that Whirlpool delivered to Plaintiffs and the Class members could not self-clean as promised.

184.   Moreover, pursuant to the "One Year Limited Warranty" on its Ovens, Whirlpool was obligated to "correct defects in materials or workmanship that existed when [each oven] was purchased, or at its sole discretion [to] replace the product." As alleged herein, Plaintiffs purchased Ovens with a defective AquaLift feature that was incapable of "self-cleaning" their ovens and performing as advertised.

185.   Through its failure to tender its Ovens equipped with AquaLift free of defects, as well as its failure to repair, acknowledge, or respond to Plaintiffs' requests to fix the inherent defects of the AquaLift within a reasonable time, Whirlpool breached its written warranties to Plaintiffs and the Class members, in violation of the MMWA.

186.   As a direct and proximate result of the acts and omissions of Whirlpool as set forth above, Plaintiffs and the Class members have been damaged.

## COUNT II

### *Violations of the Magnuson-Moss Warranty Act (Implied Warranty)*
### *(On Behalf of the Nationwide Class and the Subclasses)*

187.   Plaintiffs reallege and incorporate by reference the allegations in ¶¶1-178 as though fully set forth herein.

188.   Under the MMWA, an "implied warranty" is one that "arise[s] under State law . . . in connection with the sale by a supplier of a consumer product." 15 U.S.C. §2301.

- 49 -

189.   Plaintiffs and the Class members are "consumers," Whirlpool is a "supplier" and "warrantor," and Ovens with AquaLift are "consumer products" as defined by the MMWA.  15 U.S.C. §2301.

190.   Under state law, a warranty that goods shall be merchantable is implied in every contract for the sale of goods by a merchant that deals in such goods.

191.   Whirlpool is a merchant with respect to kitchen ovens.  As such, a warranty that its Ovens equipped with AquaLift were merchantable was implied in the contract of each sale, including to Plaintiffs and the Class members.

192.   In order to be merchantable, the Ovens with AquaLift, at a minimum, were required to: (a) pass without objection in the trade under the contract description; (b) be fit for the ordinary purposes for which such goods are used; and (c) conform to the promises or affirmations of fact made on the container.

193.   Whirlpool breached the implied warranty on its Ovens with AquaLift because, contrary to Whirlpool's representations, promises, and affirmations of fact, including on each product's label, AquaLift could not "self-clean" the interior of the Ovens.

194.   Indeed, the AquaLift feature on the Ovens was defective when such Ovens left the possession of Whirlpool and, as such, could not perform according to Whirlpool's affirmative representations that the system would "self-clean" heavy baked-on soils from the interior of an oven in under one hour.  Therefore, the Ovens with AquaLift were not reasonably fit for their intended, anticipated, or reasonably foreseeable use.

195.   Accordingly, the Ovens would not: (a) pass without objection in the trade under the contract description; (b) are not fit for the ordinary purposes for which such goods are used; and (c) do not conform to the promises or affirmations of fact made on the container.

196.   As a direct and proximate result of Whirlpool's breach of the implied warranty of merchantability, Plaintiffs and the Class members have been damaged.

## COUNT III

### *Breach of Contract*
### *(On Behalf of the Nationwide Class and the Subclasses)*

197.   Plaintiffs reallege and incorporate by reference the allegations in ¶¶1-178 as though fully set forth herein.

198.   Whirlpool offered to sell the Ovens with AquaLift technology that would "self-clean" heavy baked-on soils from the interior of an Oven in under one hour.

199.   Plaintiffs and the Class members accepted Whirlpool's offer by tendering the asking price for each Oven, thereby creating a valid and enforceable contract, supported by valuable consideration, for the sale of a Whirlpool Oven with AquaLift technology that would "self-clean" heavy baked-on soils from the interior of the Oven in under one hour.

200.   Whirlpool breached this contract with Plaintiffs and the Class members by delivering a Whirlpool oven equipped with AquaLift that, contrary to the terms of the contract between Whirlpool on the one hand and Plaintiffs and the Class members on the other, was incapable of "self-cleaning."

201.   As a result of Whirlpool's breach of contract, Plaintiffs and the Class members suffered damages.

## COUNT IV

### *Breach of Express Warranty*
### *(On Behalf of the Nationwide Class and the Subclasses)*

202.   Plaintiffs reallege and incorporate by reference the allegations in ¶¶1-178 as though fully set forth herein.

203.   Whirlpool designed, manufactured, advertised, distributed, and sold the Ovens equipped with AquaLift.

- 51 -

204.   In connection with each sale of a Whirlpool kitchen oven equipped with AquaLift, Whirlpool made certain affirmations of fact and promises relating to its Ovens specifically, that the AquaLift technology would "self-clean" heavy baked-on soils from the interior of the Oven in less than one hour.

205.   Whirlpool's affirmations of fact and promises relating to its Ovens became part of the basis of the bargain and created an express warranty that Whirlpool Ovens equipped with AquaLift would conform to Whirlpool's affirmations and promises.

206.   Whirlpool's express warranty regarding the benefits of AquaLift extends directly to consumers like Plaintiffs and the Class members, who are intended third-party beneficiaries of any contract between Whirlpool and the retailers where Ovens with AquaLift were sold.

207.   Whirlpool breached its express warranty by delivering Ovens with AquaLift that, contrary to the terms of the express warranty, could not "self-clean."

208.   Whirlpool's breach of its express warranty directly and proximately caused damages to Plaintiffs and the Class members.

209.   All conditions precedent to this claim, including notice, have been satisfied.

## COUNT V

### *Breach of Implied Warranty of Merchantability*
### *(On Behalf of the Nationwide Class and the Subclasses)*

210.   Plaintiffs reallege and incorporate by reference the allegations in ¶¶1-178 as though fully set forth herein.

211.   Whirlpool is a merchant with respect to kitchen ovens.  As such, a warranty that its Ovens with AquaLift were merchantable and was implied in the contract of each sale, including to Plaintiffs and the Class members.

- 52 -

212.  In order to be merchantable, Ovens with AquaLift, at a minimum, were required to: (a) pass without objection in the trade under the contract description; (b) be fit for the ordinary purposes for which such goods are used; and (c) conform to the promises or affirmations of fact made on the container.

213.  Whirlpool breached the implied warranty on its Ovens with AquaLift because, contrary to Whirlpool's representations, promises, and affirmations of fact, including on each product's label, AquaLift could not "self-clean" heavy baked-on soils from the interior of the Ovens.

214.  Indeed, the AquaLift technology in the Ovens was as defective when such Ovens left the possession of Whirlpool and, as such, could not perform according to Whirlpool's affirmative representations that the system would "self-clean" heavy baked-on soils from the interior of an oven in under one hour.  Therefore, the Ovens with AquaLift were not reasonably fit for their intended, anticipated, or reasonably foreseeable use.

215.  Accordingly, the Ovens with AquaLift would not: (a) pass without objection in the trade under the contract description; (b) are not fit for the ordinary purposes for which such goods are used; and (c) do not conform to the promises or affirmations of fact made on the container.

216.  Whirlpool's breach of its implied warranty directly and proximately caused damages to Plaintiffs and the Class members.

217.  Whirlpool's implied warranty regarding the benefits of AquaLift extends directly to consumers like Plaintiffs and the Class members, who are intended third-party beneficiaries of any contract between Whirlpool and the retailers where The Ovens with AquaLift are sold.

## COUNT VI

### *Unjust Enrichment*
### *(On Behalf of the Nationwide Class and the Subclasses)*

218.   Plaintiffs reallege and incorporate by reference the allegations in ¶¶1-178 as though fully set forth herein.

219.   This claim is pled in the alternative.

220.   In reliance on Whirlpool's false and misleading advertising campaign for the defective AquaLift technology, Plaintiffs and the Class members conferred a monetary benefit on Whirlpool.

221.   As such, Whirlpool has been unjustly enriched at the expense of Plaintiffs and the Class members.

222.   Specifically, through its false and misleading advertising campaign, as alleged more fully herein, Whirlpool has unlawfully received money and other benefits at the expense of Plaintiffs and the Class members.

223.   Whirlpool's receipt and retention of this financial benefit is unfair and improper under the circumstances.

224.   Therefore, Whirlpool should be ordered to disgorge its ill-gotten gains.

225.   Plaintiffs and the Class members have no adequate remedy at law.

## COUNT VII

### *Violation of the MCPA*
### *(On Behalf of the Michigan Subclass)*

226.   Plaintiff Bliss realleges and incorporates by reference the allegations in ¶¶1-178 as though fully set forth herein.

227.   Plaintiff Bliss and the Michigan Subclass are "persons" and Whirlpool's conduct complained of herein constitutes "trade or commerce" as defined by the MCPA.  M.C.L.A. §445.902.

228.   The MCPA provides that "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful[.]"

- 54 -

229.    Whirlpool's false and misleading advertising campaign, as described more fully herein, is an unfair, unconscionable, and/or deceptive method, act, or practice in the conduct of trade, which violates the MCPA in the following ways:

(a)    Representing that the Ovens with AquaLift have characteristics, uses, and benefits, that they do not have.  M.C.L.A. §445.903(1)(c);

(b)    Advertising the Ovens with AquaLift with the intent not to sell them as advertised.  M.C.L.A. §445.903(1)(g);

(c)    Failing to reveal a material fact – that AquaLift does not function as advertised – the omission of which tends to mislead or deceive consumers, and which fact could not reasonably be known by consumers.  M.C.L.A. §445.903(1)(s);

(d)    Making a representation of fact or statement of fact material to the transaction – *i.e.* that AquaLift has the capability to "self-clean" the inside of a Whirlpool oven in less than one hour – such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.  M.C.L.A. §445.903(1)(bb); and

(e)    Failing to reveal facts that are material to the transaction – *i.e.* that AquaLift does not perform as advertised – in light of representations of fact made in a positive manner.  M.C.L.A. §445.903(1)(cc).

230.    Plaintiff Bliss and the Michigan Subclass have been substantially injured by Whirlpool's unfair and deceptive practices in that they were exposed to and relied on Whirlpool's misrepresentations of material fact regarding the AquaLift feature, including that AquaLift would "self-clean" heavy baked-on soils from the inside of an oven in less than one hour.  Based on their reasonable reliance on Whirlpool's misrepresentation, Plaintiff Bliss and the Michigan Subclass members purchased the Ovens that did not possess the capabilities that Whirlpool represented.

231.    The damages suffered by Plaintiff Bliss and the Michigan Subclass were directly and proximately caused by the deceptive, misleading, and unfair practices of

Whirlpool, as more fully described herein.  Indeed, Plaintiff Bliss and the Michigan Subclass members would not have purchased the Ovens with AquaLift, or would not have paid as much as they did, but for Whirlpool's false and misleading advertising.

232.   Pursuant to M.C.L.A. §445.911(1) & (3), Plaintiff Bliss and the Michigan Subclass members seek damages and a declaratory judgment and Court Order enjoining the above-described wrongful acts and practices of Whirlpool and for restitution and disgorgement.

233.   Additionally, pursuant to M.C.L.A. §445.911(5), Plaintiff Bliss and the Michigan Subclass request that Whirlpool be ordered to bear the costs of Class notice.

## COUNT VIII

### *Violation of the FDUTPA*
### *(On Behalf of the Florida Subclass)*

234.   Plaintiffs Schechner and Barnes reallege and incorporate by reference the allegations in ¶¶1-178 though fully set forth herein.

235.   The stated purpose of the FDUTPA is to "protect the consuming public . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. §501.202(2).

236.   Plaintiffs Schechner and Barnes are each "consumers," the Ovens with AquaLift are "goods," and Whirlpool is engaged in "trade or commerce" within the meaning of the statute.  Fla. Stat. §501.203.

237. Fla. Stat. §501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts of practices in the conduct of any trade or commerce."  Fla. Stat. §501.204(2) provides that in construing the foregoing subsection, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [section] 5(a)(1) of the Federal Trade Commission Act."

238.     Whirlpool's advertising campaign for the defective AquaLift feature in its Ovens is an unfair and deceptive practice that is likely to mislead – and has misled – consumers acting reasonably under the circumstances and, thus, Whirlpool's advertising campaign offends public policies and is immoral, unethical, unscrupulous, and substantially injurious to consumers.

239.     Plaintiffs Schechner and Barnes and the Florida Subclass members have been substantially injured by Whirlpool's unfair and deceptive practices in that they were exposed to and relied on Whirlpool's misrepresentations of material fact regarding the AquaLift feature, including that AquaLift "self-cleans" heavy baked-on soils from the inside of an oven in less than one hour.  Based on their reasonable reliance on Whirlpool's misrepresentation, Plaintiffs Schechner and Barnes and the Florida Subclass members purchased the Ovens that did not possess the capabilities that Whirlpool represented.

240.     The damages suffered by Plaintiffs Schechner and Barnes and the Florida Subclass were directly and proximately caused by the deceptive, misleading, and unfair practices of Whirlpool, as more fully described herein.  Indeed, Plaintiffs Schechner and Barnes and the Florida Subclass members would not have purchased the Ovens with AquaLift, or would not have paid as much as they did, but for Whirlpool's false and misleading advertising.

241.     Pursuant to Fla. Stat. §501.211(1), Plaintiffs Schechner and Barnes and the Florida Subclass members seek a declaratory judgment and Court Order enjoining the above-described wrongful acts and practices of Whirlpool and for restitution and disgorgement.

242.     Additionally, pursuant to Fla. Stat. §§501.211(2) and 501.2105, Plaintiffs Schechner and Barnes and the Florida Subclass assert claims for damages, attorney fees, and costs.

## COUNT IX

### *Violation of the NJCFA*
### *(On Behalf of the New Jersey Subclass)*

243.    Plaintiffs Miljenovic and Jordan reallege and incorporate by reference the allegations in ¶¶1-178 though fully set forth herein.

244.    The NJCFA, pursuant to N.J.S.A. §56:8-2, declares unlawful "the act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise."

245.    Plaintiffs Miljenovic and Jordan and the New Jersey Subclass are consumers who purchased Ovens equipped with AquaLift for household use.

246.    Whirlpool's advertisement, promotion, distribution, and sale of the Ovens equipped with AquaLift is a "sale or advertisement" of "merchandise" as governed by the NJCFA.

247.    Whirlpool's advertising campaign for the defective AquaLift constitutes the use by Whirlpool of unconscionable commercial practices, deception, false promise, misrepresentation, and the knowing concealment of material fact with the intent that others rely, and thereby constitutes multiple, separate violations of the New Jersey Consumer Fraud Act, N.J.S.A., 56:8-1 *et seq.*

248.    Whirlpool's unlawful conduct has the capacity to mislead or deceive consumers, including Plaintiff and members of the New Jersey Subclass and in advertising the AquaLift feature, Whirlpool fundamentally misrepresents, conceals, and suppresses, the true "self-cleaning" capability of the technology and Plaintiffs Miljenovic and Jordan and the New Jersey Subclass reasonably believed and expected at the time of purchase that Whirlpool's advertising was a true representation of the

- 58 -

AquaLift functionality.  These false representations and affirmations by Whirlpool and its representatives regarding the AquaLift's self-cleaning capabilities are material facts that reasonable consumers would and did rely upon in their decision as to purchase Ovens with the AquaLift technology.

249.  Whirlpool had exclusive knowledge that the Ovens equipped with AquaLift did not have the "self-cleaning" capabilities it described in its advertising, and failed to inform Plaintiffs Miljenovic and Jordan and the New Jersey Subclass of any defects to the AquaLift.

250.  Had Plaintiffs Miljenovic and Jordan and the New Jersey Subclass known about the AquaLift's inability to "self-clean" the interior surfaces of their Ovens, they would not have purchased the ovens or, at a minimum, would have paid less than they did for them.

251.  Accordingly, as a direct and proximate result of Whirlpool's actions, Plaintiffs Miljenovic and Jordan and the New Jersey Subclass have suffered a calculable loss of money or property in that they paid for, but did not receive, the benefit of the bargain.  Plaintiffs Miljenovic and Jordan and the New Jersey Subclass paid for a "self-cleaning oven" but received something less than and different than what was promised and expected.

252.  Plaintiffs Miljenovic and Jordan and the New Jersey Subclass have been damaged as a result of Whirlpool's conduct.

253.  Pursuant to N.J.S.A. §56:8-1 *et seq*, Plaintiffs Miljenovic and Jordan and the New Jersey Subclass seek a declaratory judgment and Court Order enjoining the above-described wrongful acts and practices of Whirlpool and for restitution and disgorgement.

254.  Plaintiffs Miljenovic and Jordan and members of the New Jersey Subclass are entitled to an award of attorneys' fees and costs.

255.   A copy of this Complaint shall be mailed to the Attorney General in accordance with N.J.S.A. §56:8-20.

## COUNT X

### *Violation of the ACFA*
### *(On Behalf of the Arizona Subclass)*

256.   Plaintiffs Mr. and Mrs. Thome reallege and incorporate by reference the allegations in ¶¶1-178 though fully set forth herein.

257.   The ACFA, pursuant to Ariz. Rev. Stat. §44-1522, declares unlawful "any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby."

258.   Plaintiffs Mr. and Mrs. Thome and the Arizona Subclass are consumers who purchased Ovens equipped with AquaLift for household use.

259.   Whirlpool's false, misleading and deceptive acts or practices were, and are, made in connection with the advertisement, promotion, distribution, and sale of the Ovens equipped with AquaLift, as defined in section Ariz. Rev. Stat. §44-1522.

260.   Whirlpool's deceptive advertising campaign for the defective AquaLift fundamentally misrepresent the true "self-cleaning" capability of the AquaLift Ovens.

261.   Whirlpool conceals and suppresses the true "self-cleaning" capability of the AquaLift Ovens as Plaintiffs Mr. and Mrs. Thome and the Arizona Subclass reasonably believed and expected at the time of purchase that Whirlpool's advertising was a true representation of the AquaLift in that the feature would effectively "self-clean" their ovens.

262.   These false representations and affirmations by Whirlpool regarding the AquaLift's self-cleaning capabilities are material facts that reasonable consumers

would and did rely upon in deciding whether or not to purchase Ovens with the AquaLift technology.

263.   Whirlpool knew or should have known that AquaLift did not have the "self-cleaning" capabilities it described in its advertising, and thus, were in a superior position to learn of the defects and inoperability of the "self-cleaning" feature of the Ovens.  With this special knowledge, Whirlpool distributed the Ovens equipped with AquaLift and failed to inform Plaintiffs Mr. and Mrs. Thome and the Arizona Subclass of any defects to the AquaLift.

264.   Plaintiffs Mr. and Mrs Thome and the Arizona Subclass members purchased the Ovens equipped with AquaLift primarily because of the AquaLift "self-cleaning" feature.

265.   Plaintiffs Mr. and Mrs Thome and the Arizona Subclass read and relied upon the accuracy of the representations of Whirlpool's AquaLift advertising and marketing campaign and the representations of its authorized sellers and representations in deciding to purchase the Ovens with AquaLift.

266.   Had Plaintiffs Mr. and Mrs. Thome and the Arizona Subclass known about the AquaLift's inability to "self-clean" the interior surfaces of their Ovens, they would not have purchased the Ovens or would have paid less than they did for them.

267.   Accordingly, as a direct and proximate result of Whirlpool's actions, Plaintiffs Mr. and Mrs. Thome and the Arizona Subclass have suffered a calculable loss of money or property in that they paid for but did not receive the benefit of the bargain.  Plaintiffs Mr. and Mrs. Thome and the Arizona Subclass paid for a "self-cleaning oven" but received something less than and different than what was promised and expected.

268.   Plaintiffs Mr. and Mrs. Thome and members of the Arizona Subclass have been damaged as a result of Whirlpool's conduct.

269.    Pursuant to Ariz. Rev. Stat. §44-1532, Plaintiffs Mr. and Mrs. Thorne and the Arizona Subclass members seek a declaratory judgment and Court Order enjoining the above-described wrongful acts and practices of Whirlpool and for restitution and disgorgement.

270.    Plaintiffs Mr. and Mrs. Thorne and members of the Arizona Subclass are also entitled to an award of attorneys' fees and costs.

## COUNT XI

### *Violation of the ICFA*
### *(On Behalf of the Idaho Subclass)*

271.    Plaintiff Oliarny and Limpede reallege and incorporate by reference the allegations in ¶¶1-178 fully set forth herein.

272.    The ICFA, pursuant to Idaho Code §48-603 declares unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce" including:

(i)      "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have."  Idaho Code §48-603(5).

(ii)      "representing that the goods or services are of a particular standard, quality, or grade . . . if they are another."  Idaho Code §48-603(7).

(iii)      "engaging in any act or practice which is otherwise misleading false or deceptive to the consumer."  Idaho Code §48-603(17).

273.    Plaintiffs Oliarny and Limpede and the Idaho Subclass are consumers who purchased Ovens equipped with AquaLift for household use.

274.    Whirlpool's advertising campaign for the defective AquaLift constitutes the use by Whirlpool of deception, false promise, misrepresentation, and the knowing concealment of material fact with the intent that others rely upon representations pertaining to AquaLift's "self-cleaning" capability and thereby constitutes multiple, separate violations of the Idaho Consumer Fraud Act.  Idaho Code §48-603(5)(7)(17).

275.   Whirlpool's unlawful conduct has the capacity to mislead or deceive consumers, including Plaintiffs Oliarny and Limpede and members of the Idaho Subclass who reasonably believed and expected at the time of purchase that Whirlpool's advertising relating to the AquaLift was an accurate depiction of the "self-cleaning" capability of the Ovens.

276.   Whirlpool knew or should have known that the ovens equipped with AquaLift did not have the "self-cleaning" capabilities it described in its advertising , and omitted to inform Plaintiffs Oliarny and Limpede and members of the Idaho Subclass of any defects to the quality of the product.

277.   Had Plaintiffs Oliarny and Limpede and members of the Idaho Subclass known about the AquaLift's inability to "self-clean" the interior surfaces of their Ovens, they would not have purchased the ovens or would have paid less than they did for them.

278.   Accordingly, as a direct and proximate result of Whirlpool's actions, Plaintiffs Oliarny and Limpede and members of the Idaho Subclass have suffered a calculable loss of money or property in that they paid for but did not receive the benefit of the bargain.  Plaintiffs Oliarny and Limpede and members of the Idaho Subclass paid for a "self-cleaning oven" but received something less than and different than what was promised and expected.

279.   Plaintiffs Oliarny and Limpede and members of the Idaho Subclass have been damaged as a result of Whirlpool's conduct.

280.   Pursuant to Idaho Code §48-608, Plaintiffs Oliarny and Limpede and the Idaho Subclass seek damages against Whirlpool including attorney fees and a declaratory judgment and Court Order enjoining the above-described wrongful acts and practices of Whirlpool and for restitution and disgorgement.

## COUNT XII

### *Violation of the NMUPA*
### *(On Behalf of the New Mexico Subclass)*

281.   Plaintiff Simmons realleges and incorporates by reference the allegations in ¶¶1-178 though fully set forth herein.

282.   The NMUPA, pursuant to New Mexico Statute §57-12-3 declares unlawful "unfair, deceptive, and unconscionable trade practices in the conduct of any trade or commerce."

283.   The NMUPA defines "unfair or deceptive trade practice" as a "false or misleading oral or written statement of any kind . . . knowingly made in the connection with the sale of goods . . . that may, tends to or does deceive or mislead any person" including:

(i)   "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have."  New Mexico Statute §57-12-2(D)(5).

(ii)   "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another."  New Mexico Statute §57-12-2(D)(7).

(iii)   using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive."  New Mexico Statute §57-12-(D)(14).

284.   Under the NUMPA, "unconscionable trade practices" are acts or practices in connection with the sale of any goods that, to a person's detriment take advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree.  Included within "unconscionable trade practices" are also acts or practices in connection with the sale of goods that results in a gross disparity

between the value received by a person and the price paid." New Mexico Statute §57-12-3(E).

285.  Plaintiff Simmons and the New Mexico subclass are ordinary consumers who purchased ovens equipped with AquaLift for household use.

286.  Whirlpool's purposeful advertising campaign for the Ovens and the defective AquaLift violate the NUMPA by misrepresenting that the Ovens could effectively self-clean when they could not. Plaintiff Simmons and the New Mexico Subclass reasonably believed and expected at the time of purchase that Whirlpool's advertising was a true representation of the "self-cleaning" capability of the AquaLift.

287.  Through these false statements in its advertising campaign, Whirlpool exaggerated the capability of the Ovens "self-cleaning" feature and in the process deceived Plaintiff Simmons and the New Mexico Subclass in that they did not receive what they bargained for *e.g.*, a "self-cleaning" oven.

288.  Whirlpool's statements at minimum, had the tendency to deceive Plaintiff Simmons and the New Mexico Subclass, and the false statements about the Ovens "self-cleaning" capabilities are material facts that reasonable consumers would and did rely upon in deciding whether or not to purchase Ovens with the AquaLift technology.

289.  By advertising and selling the Ovens equipped with AquaLift to Plaintiff Simmons and members of the New Mexico Subclass, Whirlpool omitted to inform Plaintiffs and the New Mexico Subclass of any defects to the AquaLift despite its knowledge to the contrary.

290.  Whirlpool took advantage of Plaintiff Simmons and the New Mexico Subclass's lack of knowledge and inability to ascertain the AquaLif's inability to "self-clean" their Ovens. When Plaintiff Simmons and the New Mexico Subclass purchased the Ovens, they paid a price based upon the perceived value of a "self-cleaning" oven. Instead, Plaintiff Simmons and members of the New Mexico

- 65 -

Subclass received a defective product with a purported "self-cleaning" feature that did not work from the day it was first used.  The disparity in price paid for an oven *without* a self-cleaning function as compared to one *with* a working self-cleaning mechanism, renders the false representations made by Whirlpool regarding the Aqualift feature a violation of NUMPA as an unconscionable trade practice.

291.   Had Plaintiff Simmons and the New Mexico Subclass known about the AquaLift's inability to "self-clean" the interior surfaces of their ovens, they would not have purchased the Ovens or, at a minimum, would have paid less than they did for them.

292.   Accordingly, as a direct and proximate result of Whirlpool's actions, Plaintiff Simmons and the New Mexico Subclass have suffered a calculable loss of money or property in that they paid for but did not receive the benefit of the bargain. Plaintiff Simmons and members of the New Mexico Subclass paid for a "self-cleaning oven" but received something less than and different than what was promised and expected.

293.   Plaintiff Simmons and members of the New Mexico Subclass have been damaged as a result of Whirlpool's conduct.

294.   Therefore, pursuant to New Mexico Statutes §57-12-10, Plaintiff Simmons and the New Mexico Subclass seek damages against Whirlpool including attorney fees and a declaratory judgment and Court Order enjoining the above-described wrongful acts and practices of Whirlpool and for restitution and disgorgement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for a judgment in their favor and in favor of the Class and Subclasses as follows:

A.      Determining that this action is a proper class action, designating Plaintiffs as Lead Plaintiffs and certifying Plaintiffs as Class representatives under Rule 23 of

the Federal Rules of Civil Procedure and appointing Robbins Geller Rudman & Dowd LLP as Lead and Class counsel;

B.      Awarding temporary, preliminary, and permanent declaratory, injunctive, and other equitable relief, including, but not limited to, enjoining Whirlpool from continuing its false, deceptive, and misleading advertising campaign for AquaLift;

C.      Ordering Whirlpool to engage in a corrective advertising campaign;

D.      Awarding Plaintiffs and the Class damages, including statutory and punitive damages, and interest thereon;

E.      Awarding disgorgement of Whirlpool's revenues to Plaintiffs and the other Class members;

F.      Directing Whirlpool to identify, with this Court's supervision, victims of its conduct and to pay them restitution;

G.      Awarding Plaintiffs attorneys' fees and costs; and

H.      Providing any and all further legal and equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs respectfully demand trial by jury on all issues so triable.

DATED:  August 19, 2016       Respectfully submitted,

*/s/ E. Powell Miller*
E. POWELL MILLER (P39487)
SHARON S. ALMONRODE (P33938)
THE MILLER LAW FIRM, P.C.
950 West University Drive, Suite 300
Rochester, MI  48307
Telephone: 248/841-2200
248/652-2852 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
MARK S. REICH
JORDAN D. MAMORSKY
58 South Service Road, Suite 200
Melville, NY  11747
Telephone: 631/367-7100
631/367-1173 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
STUART A. DAVIDSON
CHRISTOPHER C. MARTINS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone: 561/750-3000
561/750-3364 (fax)

HARFORD P.C.
SCOTT A. HARFORD
299 Broadway, Suite 1310
New York, NY  10007
Telephone: 212/390-8983
646/895-6475 (fax)

*Attorneys for Plaintiffs and the Proposed*
*Class and Subclasses*

- 68 -

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| TOBY SCHECHNER, BARBARA BARNES, LAURA BLISS, KATHLEEN JORDAN, KATHRYN LIMPEDE, LOUISE MILJENOVIC, CANDACE OLIARNY, BEVERLY SIMMONS, RICHARD THOME and MARY ELLEN THOME, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> WHIRLPOOL CORPORATION, <br><br> Defendant. | Case No. 2:16-cv-12409-SJM-RSW <br><br> Hon. Stephen J. Murphy, III <br><br> <u>DEMAND FOR JURY TRIAL</u> |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 19, 2016, I electronically filed the foregoing documents using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings

**THE MILLER LAW FIRM, P.C.**

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawp.com