UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOBY SCHECHNER, et al.,

        Plaintiffs,                      Case No. 2:16-cv-12409

v.                                  HONORABLE STEPHEN J. MURPHY, III

WHIRLPOOL CORPORATION,

        Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART AND
## DENYING IN PART DEFENDANT'S MOTION TO DISMISS [11]

Plaintiffs filed a class-action complaint against Defendant Whirlpool Corporation. The Plaintiffs allege causes of action related to Whirlpool's "AquaLift" oven self-cleaning technology. Whirlpool moved to dismiss some of the counts for failure to state a claim. For the reasons stated below, the Court will grant the motion in part and deny it in part.

## BACKGROUND

Ten people from six states brought suit against Whirlpool: Toby Schechner and Barbara Barnes from Florida; Laura Bliss from Michigan; Kathleen Jordan (she has already voluntarily dismissed her case) and Louise Miljenovic from New Jersey; Kathryn Limpede and Candace Oliarny from Idaho; Beverly Simmons from New Mexico; and Richard Thome and Mary Ellen Thome from Arizona. They allege 12 causes of action related to Whirlpool's AquaLift  system, that arise under (1) Magnuson-Moss Warranty Act (MMWA) – Written Warranty, 15 U.S.C. § 2301; (2) MMWA – Implied Warranty, 15 U.S.C. § 2301; (3) Breach of Contract; (4) Breach of UCC Express Warranty; (5) Breach of UCC Implied Warranty of Merchantability; (6) Unjust Enrichment; (7) Michigan Consumer Protection Act (MCPA), M.C.L.A. § 445.902; (8) Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla.

Stat. § 501.204; (9) New Jersey's Consumer Fraud Act (NJCFA), N.J.S.A. § 56:8-1; (10) Arizona Consumer Fraud Act (ACFA), Ariz. Rev. Stat. § 44-1522; (11) Idaho Consumer Fraud Act (ICFA), Idaho Code § 48-603; and (12) New Mexico Unfair Trade Practices Act (NMUPA), New Mexico Statute § 57-12-3. Whirlpool's motion to dismiss followed.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint that fails to state a claim upon which relief can be granted. When evaluating a claim under Rule 12(b)(6), the Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pled factual assertions, and draws every reasonable inference in favor of the non-moving party. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court may only grant a 12(b)(6) motion to dismiss if the allegations are not "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true or not," then the Court must grant dismissal. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## DISCUSSION

I.   Breach of Contract Claim

At the outset, the Court must address a threshold question: whether privity of contract exists between the Plaintiffs and Whirlpool. A contract requires an "offer, acceptance,

consideration, and sufficient specification of essential terms." *See, e.g.*, *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004). Privity of contract exists between contracting parties and intended beneficiaries. *See Montgomery v. Kraft Foods Glob., Inc.*, No. 1:12-CV-00149, 2012 WL 6084167, at *13 (W.D. Mich. Dec. 6, 2012), *aff'd*, 822 F.3d 304 (6th Cir. 2016).

The intent of the contracting parties determines whether a third-party beneficiary is intended or incidental. *See, e.g.*, *Schmalfeldt v. N. Pointe Ins. Co.*, 670 N.W.2d 651, 655 (Mich. 2003). If the contracting parties "have undertaken to give or do something directly to or for" a third party, then the third party becomes an intended beneficiary. *Montgomery*, 2012 WL 6084167, at *18. And if the contracting parties have not done so, then the third party is an incidental beneficiary and lacks privity of contract. *Id.* "It is axiomatic in the law of contract that a person not in privity cannot sue on a contract." *DAFCO LLC v. Stewart Title Guar. Co.*, 331 P.3d 491, 496 (Idaho 2014). Thus, "only intended, rather than incidental, third-party beneficiaries may sue when a contractual promise in their favor has been breached." *Montgomery*, 2012 WL 6084167, at *18.

Here, the complaint alleges no facts to show that Whirlpool formed a contract with the Plaintiffs. Plaintiffs allege that they bought their ovens from third-party retailers, not directly from Whirlpool. Am. Compl. ¶¶ 14, 19, 24, 30, 37, 42, 48, 54, 58, ECF No. 5. Therefore "[n]o privity of contract exists between [Plaintiffs], who [bought] from a retailer, and [Whirlpool] who has not sold directly to the consumer." *See Montgomery*, 2012 WL 6084167, at *18.

Plaintiffs contend, however, that they are the intended beneficiaries of any contract between Whirlpool and its retailers. The argument fails. Plaintiffs do not plead facts to

3

identify the specific contract to which they claim privity. And Plaintiffs' allegations fail to show that Whirlpool and the retailers "intended in entering their contract to directly benefit" Plaintiffs. *See id.* at *13–14. Moreover, Plaintiffs muster no authority to support the proposition that an end-user consumer is an intended beneficiary to a contract between a remote manufacturer and a retailer.

Instead, Plaintiffs rely on a series of contradictory or inapposite cases. *See* Resp. 34–35, ECF No. 23. The most relevant case Plaintiffs cite to support their intended–beneficiary theory, *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028, 1030 (Fla. Dist. Ct. App. 1994), involves a consumer who purchased a yacht from a manufacturer. The purchaser sued the manufacturer and a company that had been hired to paint the yacht. *Id.* The purchaser alleged he was the intended beneficiary of the contract between the manufacturer and painting company. *Id.* The *Caretta* court held that the purchaser lacked privity of contract with the parties because the manufacturer and paint company had not "expressly intended their contract benefit Caretta directly." *Id.* Thus, the holding in *Caretta* stands for the exact opposite proposition asserted by Plaintiffs here.

Alternatively, Plaintiffs argue that a determination of privity is premature. Plaintiffs cite three cases in which courts declined to rule on privity in resolving motions to dismiss. But each case is distinguishable. In *Date*, an unresolved choice-of-law issue led to the court's decision not to address privity. *Date v. Sony Elecs., Inc.*, No. 07-CV-15474, 2010 WL 3702599, at *8 (E.D. Mich. Sept. 16, 2010). The *Date* court had not yet determined which state law governed—New York or California. If New York law applied, then a lack of privity would have been "fatal to Plaintiffs' express warranty claims." *Id.* Under those uncertain circumstances, the court declined to address privity.

4

In *Yvon*, the court declined to address privity because the complaint "[did] not state that either or both of defendants actually sold [a] boat to plaintiff." *Yvon v. Baja Marine Corp.*, 495 F. Supp. 2d 1179, 1183 (N.D. Fla. 2007). The *Yvon* court determined that "whether there was or was not privity is a factual question that cannot properly be resolved on the instant motion to dismiss." *Id.* Similarly, in *Azek*, the court declined to address privity because the plaintiffs had "alleged sufficient facts to raise a question of fact concerning whether Plaintiffs and Defendant [were] in privity." *In re AZEK Bldg. Prod., Inc., Mktg. & Sales Practices Litig.*, 82 F. Supp. 3d 608, 618 (D.N.J. 2015).

Here, though, unlike in *Date*, the Court faces no unresolved choice-of-law issues to hamper the analysis of privity. And no question of fact regarding privity exists. Each Plaintiff alleges they bought their oven from a third-party retailer, not from Whirlpool. Am. Compl. ¶¶ 14, 19, 24, 30, 37, 42, 48, 54, 58, ECF No. 5.  And no Plaintiff alleges a specific contract between Whirlpool and the retailers with the express intent to directly benefit Plaintiffs. Unlike in *Yvon* and *Azek*, Plaintiffs here have not alleged a factual question of privity; the Court may resolve the issue as a matter of law. Because the Plaintiffs have pleaded insufficient facts to establish privity of contract between Whirlpool and the Plaintiffs, the Court will dismiss with prejudice Plaintiffs' breach of contract claim.

II. Warranty Claims

Plaintiffs allege—and Whirlpool moves to dismiss—four warranty-based causes of action: breach of UCC express warranty, breach of UCC implied warranty, breach of MMWA written warranty, and breach of MMWA implied warranty.

A. UCC Warranty Claims

Whirlpool argues that the Court should dismiss the UCC express and implied warranty claims of Barnes, Simmons, Oliarny, and the Thomes for lack of pre-suit notice. State law governs Plaintiffs' express and implied warranty claims. *See In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Litig.*, No. MDL 1718, 2007 WL 2421480, at *6 (E.D. Mich. Aug. 24, 2007) ("[W]arranty claims asserted by the Florida, Texas and Illinois Plaintiffs are governed by those states' UCC statutes."); *see also Schultz v. Tecumseh Prod.*, 310 F.2d 426, 428 (6th Cir. 1962) (holding that under Michigan conflict-of-law rules, "the law of the place of the sale determines the extent and effect of the warranties which attend the sale"); UCC § 1-105 cmt. 2 (stating that the UCC "applies to any transaction which takes place in its entirety in a state which has enacted" the Code). As a result, the Court will apply the law of the state where each Plaintiff purchased her oven.

Under Florida, Arizona, Idaho, and New Mexico law, a buyer who seeks to assert a warranty claim "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Fla. Stat. § 672.607(3)(a); Ariz. Rev. Stat. § 47-2607(C)(1); Idaho Code § 28-2-607(3)(a); N.M. Stat. § 55-2-607(3). Legally sufficient notice "let[s] the seller know that the transaction is still troublesome and must be watched." *See* U.C.C. § 2-607, cmt. 4; *see, e.g.*, *Malkamaki v. Sea Ray Boats, Inc.*, 411 F. Supp. 2d 737, 742 (N.D. Ohio 2005).

Barnes alleges she bought her Whirlpool oven in June 2013 and first tried to use the self-clean feature on her appliance in November 2013. Am. Compl. ¶¶ 118, 120, ECF No. 5. She was dissatisfied with the results because "the AquaLift did not effectively loosen the hardened debris, stains and cooking grease[.]" *Id.* ¶ 120. Yet she did not submit an online complaint to Whirlpool until June 2016—two and a half years after she first noticed a

problem. *Id.* ¶ 123. The oven's written warranty provided that both the express and implied warranties expired one year from purchase. *See* Def. Exh. 2(B), ECF No. 11-3.

Florida courts generally require a buyer to provide notice of a product defect within 18 months of discovering the defect. *See In Re Vincent*, 10 B.R. 549, 553 (Bankr. M.D. Fla 1981). Barnes provided notice two and a half years after she noticed a problem and three years after she purchased the oven. After taking the facts Barnes asserts as true, her claim cannot succeed as a matter of law due to untimely notice. The Court will dismiss without prejudice Barnes's express and implied UCC warranty claims.

Simmons bought her oven on August 5, 2015,  Am. Compl. ¶ 160, ECF No. 5, and first noticed a problem with the self-cleaning technology "within a few weeks of purchase." *Id.* ¶ 163. Simmons does not allege she provided any individual notice to Whirlpool of the defect in the self-cleaning oven. *Id.* ¶¶ 160–66. Accordingly, the Court will dismiss without prejudice Simmons's express and implied UCC warranty claims.

Oliarny first noticed a problem with her oven's self-cleaning system "[i]n or around March 2016." *Id.* ¶ 156. She alleges that she "tried to have the oven serviced" in or around April 22, 2016, "[i]n accordance with the terms of Whirlpool's 'One Year Limited Warranty." *Id.* ¶ 157. And again in August, 2016, another service company "paid a visit to Ms. Oliarny's home to address the inoperable Aqualift issue." *Id.* ¶ 158.

Oliarny alleges that she sought warranty service, but appears to have contacted the retailer or another service company, not Whirlpool. She does not allege that she provided individual notice to Whirlpool or that she requested warranty service from Whirlpool. Plaintiffs' general assertion that "repair attempts by an authorized dealer fall within the realm of proper notice," *Mountain-Aire Refrigeration & Air Conditioning Co. v. Gen. Elec.*

7

*Co.*, 703 P.2d 577, 580 (Ariz. Ct. App. 1985), is unavailing because Oliarny does not allege that the service companies were Whirlpool's authorized agents and, in any event, Idaho law applies to Oliarny's claim, not Arizona law. As a result, the Court will dismiss without prejudice Oliarny's express and implied UCC warranty claims.

The Thomes first noticed a problem with the self-clean feature on their oven in November 2014. Am. Compl. ¶ 140, ECF No. 5. But the Thomes fail to allege that they provided any individual notice to Whirlpool that the product was troublesome. *See id.* ¶¶ 138–44. Although in Arizona filing a lawsuit can—by itself—serve as notice, the Thomes's suit provided insufficient notice because 18 months had elapsed from the time they discovered the defect to when they filed the suit. Under Arizona law, this is an unreasonable delay. *See Burge v. Freelife Int'l, Inc.*, No. CV09-1159-PHX-JAT, 2009 WL 3872343, at *6 (D. Ariz. Nov. 18, 2009) (dismissing buyer's warranty claim because plaintiff waited 17 months to provide notice after discovering defect because "such delays are unreasonable as a matter of law."). The Court will dismiss without prejudice the Thomes's express and implied UCC warranty claims.

Plaintiffs argue that—regardless of whether they provided individualized notice—Whirlpool had actual notice that the AquaLift system was troublesome. According to Plaintiffs, the demand letter sent to Whirlpool three months before filing suit served as notice for the entire class. Plaintiffs cite to *Seroyer v. Pfizer*, Inc., 991 F. Supp. 1308, 1314–15 (M.D. Ala 1997) to support their position. But *Seroyer* does not bear the weight of Plaintiffs' argument. The *Seroyer* court noted only that plaintiffs intended their demand letter to serve as pre-suit notice. *Id.* The court did not, however, address the question of whether plaintiffs' demand letter actually satisfied the legal requirement of notice, nor was

8

that question before the court. The notice requirement creates "individualized questions of fact" that cannot be met by a class-action demand letter. *Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 642 (S.D. Fla. 2008) ("The buyer must notify the seller that the goods are nonconforming in order to recover damages for breach of either an express or implied warranty."). Plaintiffs' pre-suit demand letter failed to provide individualized notice and thus failed to provide sufficient legal notice to Whirlpool.

Plaintiffs also argue that Whirlpool received notice from "countless dissatisfied consumers [who] complained directly to Whirlpool." Resp. 31, ECF No 23. The argument is without merit. The notice requirement is "a highly individualized factual determination" that cannot be established by pointing to complaints from other customers. *See, e.g.*, *Cohen*, 259 F.R.D. at 642 (holding that, to meet the notice requirement, "each putative class member would have to show that he or she gave the defendant notice within a reasonable time").

### i. UCC Express Warranty Claims

Whirlpool argues that the express-warranty claims of Schechner, Barnes, and the Thomes fail for another reason: lack of privity. But since the UCC express-warranty claims of Barnes and the Thomes fail for lack of notice, the Court need only address the argument as to Schechner.

"The law of Florida is that to recover for the breach of a warranty, either express or implied, the plaintiff must be in privity of contract with the defendant." *T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995); *see also Weiss v. Johansen*, 898 So. 2d 1009, 1012 (Fla. Dist. Ct. App. 2005) ("[T]o recover for the breach of a warranty either express or implied, the plaintiff must be in privity of contract with the defendant."). Recent

cases applying Florida law, however, have found an exception to the principle. *See, e.g.*, *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1389 (S.D. Fla. 2014).

Under Florida law, "[w]hile privity is generally necessary for breach of express warranty claims, courts have relaxed this requirement where the express warranty was clearly intended to cover subsequent purchasers." *Karhu v. Vital Pharm., Inc.*, No. 13-60768-CIV, 2013 WL 4047016, at *6 (S.D. Fla. Aug. 9, 2013) (internal citation omitted). In *Karhu*, the court noted that "express warranties . . . were contained on the packaging and in the advertisements, both clearly directed toward the end-purchaser. Accordingly, based on the particular facts of this case, privity is not required to state a claim for breach of express warranty[.]" *Id.* Based on *Karhu* and *Garcia*, Plaintiffs conclude that Whirlpool's advertisements warranted that the AquaLift system would self-clean an oven in 50 minutes; Schechner relied on those advertisements; and therefore Florida's privity requirement does not apply to her express warranty claim.

But both *Karhu* and *Garcia* also explained a limitation to the privity exception: privity is still required—regardless of advertisements and warranties on the packaging—if the consumer "could reasonably rely on a learned intermediary . . . to give him relevant information regarding the product and its warranties." *Karhu*, 2013 WL 4047016, at *6; *accord Garcia*, 43 F. Supp. 3d at 1389  (holding that privity is required to state a claim for express warranty if "it could be assumed that the end-purchaser might expect the seller or 'middle man' to have relevant knowledge, or even expertise, regarding the manufacturer's product") (quoting *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1343 (S.D. Fla. 2009)). *Garcia* explained that when a consumer has sufficient access to a knowledgeable middle-man, then the consumer must allege privity of contract to bring an express warranty

10

claim against a remote manufacturer. 43 F. Supp. 3d at 1389. For instance, a consumer who purchased a product from "a doctor installing an implant or a computer salesman" would need to show privity to sue a remote manufacturer for breach of express warranty, while a consumer who purchased gum from a convenience-store cashier would not. *Id.* (quoting *Wrigley*, 663 F. Supp. at 1343).

Here, Schechner alleges that she bought her oven from the retailer Lowes. Am. Compl. ¶ 106, ECF No. 5. She states that "at the time of her purchase, the manager of the Lowe's store demonstrated the proper use and operation of AquaLift feature, which Ms. Schechner fully understood." *Id.* ¶ 107. Like a salesman selling a computer—and unlike a cashier selling gum—a store manager selling a major appliance has relevant knowledge and expertise to share with the consumer regarding the product. And Schechner alleges that the manager provided her with relevant information regarding the operation of the AquaLift system. *Id.* ¶ 107. As a result, the express warranty privity exception does not apply to Schechner's claim. She fails to plead facts to show privity, and Florida law precludes her claim for breach of UCC express warranty.

    ii. <u>UCC Implied Warranty Claims</u>

Whirlpool argues that the UCC implied-warranty claims of Schechner, Barnes, Limpede, Oliarny, and the Thomes fail for lack of privity. The Court need only address the motion as to Plaintiff Schechner and Limpede since the UCC implied warranty claims of Barnes, Oliarny, and  the Thomes fail for lack of notice.

Both Idaho and Florida law require privity between a buyer and a seller to prevail on an implied-warranty claim. *See, e.g.*, *Am. W. Enterprises, Inc. v. CNH, LLC*, 316 P.3d 662, 668 (Idaho 2013) ("Privity of contract is required in a contract action to recover economic

loss for breach of implied warranty."); *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005) ("Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity."). As noted above, Plaintiffs Schechner and Limpede have failed to allege facts that, taken as true, would establish privity of contract with Whirlpool. Therefore, their UCC implied warranty claims fail under Idaho and Florida law.

Plaintiffs contend, however, that Whirlpool's "direct advertising to end-users" establishes privity for the purposes of a breach of implied (and express) warranty claim. Resp. 24–28, ECF No. 23. Some courts have found that a plaintiff need not allege privity of contract as an element to a breach of warranty claim. *See Goldemberg v. Johnson & Johnson Consumer Companies*, Inc., 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014); *Bietsch v. Sergeant's Pet Care Prod., Inc.*, No. 15 C 5432, 2016 WL 1011512, at *6 (N.D. Ill. Mar. 15, 2016), *Naiser v. Unilever U.S., Inc.*, 975 F. Supp. 2d 727, 738 (W.D. Ky. 2013). The *Goldemberg*, *Bietsch*, and *Naiser* courts applied New York, Illinois, and Kentucky state law, respectively.

But here, Florida and Idaho state laws apply and leave no room for doubt: "Florida courts have required a plaintiff to be in privity with a defendant in order to recover for breach of express or implied warranty . . .  A plaintiff who purchases a product, but does not buy it directly from the defendant, is not considered to be in privity with that defendant." *Hill v. Hoover*, 899 F. Supp. 2d 1259, 1267 (N.D. Fla. 2012); *see also Am. W. Enterprises*, 316 P.3d at 668 (recognizing no privity of contract exists between a buyer and manufacturer who "did not deal directly with each other" because "there was no written contract between" the parties and the sole purpose of the manufacturer providing the goods

to the retailer "was to make a profit"). Accordingly, the Court will dismiss without prejudice the UCC implied warranty claims of Schechner and Limpede for lack of privity.

B. <u>MMWA Written Warranty Claim</u>

The MMWA creates a federal cause of action "for violation of the Act's terms, as well as for breaches of warranty arising from state substantive law." *Kuns v. Ford Motor Co.*, 543 F. App'x 572, 575 (6th Cir. 2013) (citing 15 U.S.C. § 2310(d)(1)). Under the MMWA, written warranties come in two forms: (1) a written promise to "refund, repair, replace, or take other remedial action;" or (2) a "written affirmation of fact." 15 U.S.C. § 2301(6). According to Whirlpool, Plaintiffs have failed to state a claim under either theory.

i. <u>Whirlpool's Limited One-Year Warranty</u>

Plaintiffs claim that Whirlpool violated the terms of its one-year limited warranty and is liable under the MMWA for breaching a written promise to "refund, repair, replace" or remediate the AquaLift system. Whirlpool contends that Plaintiffs only allege facts to show a design defect, and—as Plaintiffs concede—the one-year warranty expressly limits Whirlpool's repair and replace obligations to defects in "materials or workmanship." Mot. 18, ECF No. 11 (citing *Coba v. Ford Motor Co.*, No. 12-1622 (KM) (MAH), 2016 WL 5746361, at *9 (D.N.J. Sept. 30, 2016) (joining "the majority of cases, in holding that design defects are not covered by this express workmanship and materials warranty")). Whirlpool concludes that, by failing to allege a manufacturing defect, Plaintiffs fail to allege a breach of the warranty. Plaintiffs respond that the amended complaint contains sufficient allegations to support a manufacturing-defect claim, which is covered under the one-year warranty, and that the parties require discovery to determine the details of the defect.

13

A MMWA claim fails as a matter of law if it alleges a design defect, but is brought under "an express written warranty covering 'materials and workmanship[.]'" *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1181 (C.D. Cal. 2010); *see also Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 527 (7th Cir. 2003) (affirming dismissal of warranty claim alleging design defects under warranty that did not cover design defects). "[D]efects in material and workmanship refer to departures from a product's intended design while design defects refer to the inadequacy of the design itself." *Bruce Martin Const., Inc. v. CTB, Inc.*, 735 F.3d 750, 753 (8th Cir. 2013). For example, "[a] design defect . . . exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective." *In re Toyota*, 754 F. Supp. 2d at 1181. But if "sufficient facts are alleged to assert both" a design and a manufacturing defect, "then dismissal at the pleading stage is premature." *Alin v. Am. Honda Motor Co.*, No. CIV A 08-4825 KSH, 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010).

Here, Plaintiffs' amended complaint makes allegations that the AquaLift system suffered from a design defect. *See* Am. Compl. ¶ 5, ECF No. 5 (alleging that the "AquaLift feature was defectively designed"); *id.* ¶ 173(c) ("Whirlpool had a duty to disclose the design flaw in AquaLift"); *id.* at ¶ 185 (alleging Whirlpool failed to "fix the inherent defects of the AquaLift" system); *id.* at ¶ 13 (alleging that Whirlpool's "AquaLift technology is defective and incapable of performing" as promised). But in addition to the references to a design defect, Plaintiffs also refer to the oven's material at least three times. *Id.* ¶¶ 2, 77, 82. And the Plaintiffs' complaint is replete with more general allegations that Aqualift did not perform as advertised. *See, e.g., id.* ¶¶ 8, 15, 21, 26, 34, 46, 56, 63, 205, 107, 108, 122,

14

127, 129, 136, 140, 143, 150, 156, 164. Although the complaint does not specifically use the phrase "manufacturing defect," the complaint's general allegations of a defective product coupled with the references to the AquaLift's material provide sufficient facts to support either a design or a manufacturing-defect theory.

Whirlpool argues, however, that the written warranty claim still fails because Plaintiffs have not pled facts to show they sought warranty service within the warranty period. To state a claim for breach of a written warranty, a party must allege they provided "individual notice to Defendants of the alleged defect" and that they requested warranty service "within the [time] period set forth in the Limited Warranty." *In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Litig.*, No. MDL 1718, 2007 WL 2421480, at *6 (E.D. Mich. Aug. 24, 2007).

Here, Whirlpool's one-year limited warranty expired one year from the date of purchase. *See* Def. Exh. 2(c), ECF No. 11-3. Whirlpool concedes that Schechner and Oliarny pled sufficient facts to show that they asked Whirlpool to perform under the limited warranty within one year. Mot. 21, ECF No. 11. But Whirlpool challenges the remaining MMWA written warranty claims from Simmons, the Thomes, Barnes, Bliss, Miljenovic, and Limpede for failure to allege both notification to Whirlpool and a request for service within one year of purchasing the oven.

As an initial matter, Simmons and the Thomes do not allege they ever contacted Whirlpool about their ovens. *See* Am. Compl. ¶¶ 47–57, 53–57, 138–41, 160–66, ECF No. 5. Barnes alleges that she contacted Whirlpool three years after she bought her oven and therefore two years after the warranty expired. *Id.* ¶¶ 118, 123. Bliss and Miljenovic claim that they contacted Whirlpool to express their dissatisfaction with the AquaLift system. *Id.*

15

¶¶ 105, 137. But they do not claim that they requested warranty service. *Id.* Likewise, Plaintiff Limpede alleged she complained to a Maytag representative who told her to run the AquaLift feature "after each use of the oven" but fails to allege a request for warranty service. *Id.* ¶ 151.

Plaintiffs responded that they "each provided timely notice of the AquaLift Defect" under the warranty. Resp. 23, ECF No. 23. But Plaintiffs support the assertion with citations to the complaint which allege only that Plaintiff Schechner provided notice. *Id.* (citing ¶¶ 14–18, 106–117). Since Simmons, the Thomes, Barnes, Bliss, Miljenovic, and Limpede have failed to plead facts alleging breach of the one-year warranty, their claims fail as a matter of law. Accordingly, the Court will dismiss without prejudice the MMWA written warranty claims of Simmons, the Thomes, Barnes, Bliss, Miljenovic, and Limpede that allege a breach of Whirlpool's one-year limited warranty.

ii. Whirlpool's Advertisements

Plaintiffs contend that Whirlpool's advertisements created a written "affirmation-of-fact" warranty under the MMWA. Specifically, Plaintiffs point to Whirlpool's representations that AquaLift would self-clean an entire oven in one hour. *Id.* ¶¶ 69, 72, 81, 91–92.

Not every affirmation of fact made by a manufacturer creates a warranty. Rather, two requirements must be met: (1) the statement must "relate[] to the nature of the material or workmanship" and (2) the statement must "affirm[] or promise[] that such material or workmanship is defect free; or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6). Whirlpool argues that its advertisements fail to satisfy MMWA's statutory definition of warranty because they promised neither defect-free performance nor performance over a specified period of time.

16

"The word 'defect' is not defined within the MMWA, nor is there case law explicitly interpreting the term." *Larsen v. Trader Joe's Co.*, No. C 11-05188 SI, 2012 WL 5458396, at *3 (N.D. Cal. June 14, 2012). In *Trader Joe's*, the court relied on the Oxford English dictionary definition of defect: "the fact of being wanting or falling short; a blemish or flaw." *Id*. Plaintiffs note that the Oxford dictionary definition has since been updated to include "a shortcoming, imperfection, or lack." Resp. 19, ECF No. 23. Applying the dictionary definition used in *Trader Joe's*, Plaintiffs argue that Whirlpool's advertisements meet the MMWA written-warranty defect-free requirement because the ads set forth a written affirmation of fact that AquaLift would not "fall short" of the promise to clean the oven in under an hour. *Id.*; *see also* Am. Compl. ¶¶ 69, 72, 81, 91–92, ECF No. 5 (Whirlpool's alleged affirmations-of-fact).

The MMWA defines written  warranty narrowly and "[c]ourts have declined to extend the term . . . beyond its statutory definition." *In re ConAgra Foods*, 908 F. Supp. 2d 1090, 1102 (C.D. Cal. 2012). The unambiguous statutory definition of a written affirmation-of-fact warranty requires the warrantor to make an *affirmation or promise* of defect-free performance. 15 U.S.C. § 2301(6). For example, a mere "product description" may implicitly promise a product will meet expectations or not fall short, but it does not affirmatively promise defect-free performance and it therefore falls outside MMWA's definition. *See Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 378 (S.D.N.Y. 2014); *see also Forcellati v. Hyland's, Inc.*, No. CV121983GHKMRWX, 2015 WL 9685557, at *6 (C.D. Cal. Jan. 12, 2015) (finding that defendants had not "promised that the Class Products are 'defect free' because guaranteeing that something is effective or fast-acting is not a guarantee that it will not have flaws").

17

Whirlpool's advertisement—that the oven would self-clean in under an hour—makes no affirmative promise of defect-free performance. Rather, the advertisement is more fairly characterized as a description of anticipated product performance. Moreover, Whirlpool's advertisements repeatedly warned customers not to expect perfection: "[h]eavily soiled ovens may require a second cleaning cycle;" [a]dditional cleaning cycles may be run to help remove stubborn soils." Am. Compl. ¶ 85, ECF No. 5 (Oven Cleaning Quick Reference Guide). Accordingly, Plaintiffs do not plead sufficient facts to support their legal conclusion that Whirlpool promised defect-free performance.

Alternatively, to allege a cause-of action under the MMWA, Plaintiffs may plead that Whirlpool promised "a specified level of performance over a specified period of time." 15 U.S.C. § 2601(6). Plaintiffs contend that Whirlpool's representation that the oven would self-clean in 50 minutes satisfies the temporal element of the MMWA. *See* Resp. 20, ECF No. 23 (citing *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 234 (E.D.N.Y. 2015) (MMWA warranty created by defendant's representation that a product "would provide consumers with 'Rapid Weight Loss' and '456% More Weight Loss Than America's # 1 selling Ephedra–Based Diet Pill,' in 'a little over 6 weeks' of use")). Whirlpool argues, however, that "over a specified period of time" refers not to the anticipated product performance but to "the duration of the warranty." *See* Mot. 16–17, ECF No. 11 (citing *Kelley v. Microsoft Corp.*, No. C07-0475MJP, 2007 WL 2600841, at *5 (W.D. Wash. Sept. 10, 2007) ("Windows Vista Capable" is not an express warranty under MMWA because "the warrantor's guarantee must contain language that specifically identifies the duration of the warranty.")).

18

Some courts have found that any promise of performance over time satisfies the "specified period of time" requirement. *See, e.g.*, *Friedman v. Guthy-Renker LLC*, No. 2:14-CV-06009-ODW, 2015 WL 857800, at *7 (C.D. Cal. Feb. 27, 2015) (statement that product is fit for "everyday-use" satisfies MMWA temporal requirement). But other courts have required more specificity. *See, e.g.*, Hart *v. BHH, LLC*, No. 15CV4804, 2016 WL 2642228, at *4 (S.D.N.Y. May 5, 2016) (holding that the "temporal reference" that the Pest Repellers work "fast" "is hardly a representation that the Repellers will meet a specified level of performance over a specified period of time"). And some courts have found the temporal requirement to have been satisfied when an advertisement unambiguously promises performance over a given period of time. *See, e.g.*, *Reid v. GMC Skin Care USA Inc.*, No. 815CV277BKSCFH, 2016 WL 403497, at *14 (N.D.N.Y. Jan. 15, 2016) (denying defendant's motion to dismiss MMWA claim because "Plaintiffs have plausibly alleged a claim that Defendant issued a written warranty promising results within a 28-day time period, thus satisfying the MMWA's temporal element"). When an advertisement makes an "equivocal representation" about product performance over time, however, the temporal requirement is not met. *In re Scotts EZ Seed Litig.*, No. 12 CV 4727 VB, 2013 WL 2303727, at *4 (S.D.N.Y. May 22, 2013) (dismissing MMWA claim that "50% thicker with half the water in 32 days" because defendant also advised customer that "results may vary").

If Whirlpool had made a blanket assertion that e.g., AquaLift "will self-clean an oven in 50 minutes," the Court would face a more difficult legal question. But Whirlpool made no such assertion. Instead—like the defendant in *Scotts EZ Seed*—Whirlpool "expressly caution[ed] purchasers that they might *not* experience the promised result" in one hour. *Id.* at *5. Whirlpool informed customers—multiple times—that one cycle in one hour might not

get the job done. *See* Whirlpool's "Oven Cleaning Quick Reference Guide," Am. Compl. ¶ 85, ECF No. 5 (warning consumers that "[h]eavily soiled ovens may require a second cleaning cycle;" "[a]dditional cleaning cycles may be run to help remove stubborn soils;" and instructing customers to "use regularly to clean oven spills"). Thus, Whirlpool's "equivocal representations" fall short of the standard set by MMWA to create an affirmation-of-fact warranty. Plaintiffs' allegations fail to state a claim under the MMWA. Accordingly, the Court will dismiss with prejudice Plaintiffs' MMWA written warranty claims that Whirlpool's advertisements created an affirmation-of-fact warranty.

D.    MMWA Implied Warranty

The MMWA "creates a federal cause of action for violation of a warranty implied by state law[.]" *In re Anheuser-Busch Beer Labeling Mktg. & Sales Practices Litig.*, 644 F. App'x 515, 516 (6th Cir. 2016) (citing 15 U.S.C. § 2301). The Plaintiffs' MMWA implied warranty claims will succeed—or fail—for the same reasons as their state-law UCC implied warranty claims. *See id.* As noted above, the UCC implied warranty claims of Barnes, Simmons, Oliarny, and the Thomes fail for lack of notice. And Schechner and Limpede's UCC implied warranty claims fail for lack of privity. Accordingly, the Court will dismiss without prejudice the MMWA implied warranty claims of Barnes, Simmons, Oliarny, the Thomes, Schechner, and Limpede for the same reasons as their UCC implied warranty claims.

III.   State-law Claims

Whirlpool moves to dismiss Plaintiffs' state law causes-of-action for unjust enrichment and violations of Florida Deceptive and Unfair Trade Practices Act (FDUTPA), New

20

Jersey's Consumer Fraud Act (NJCFA), Arizona Consumer Fraud Act (ACFA), and the Idaho Consumer Fraud Act (ICFA).

    A.    Unjust Enrichment

Whirlpool argues that the Plaintiffs' unjust-enrichment claims fail as a matter of law. New Jersey, Michigan, and Idaho laws require Plaintiffs to allege that they conferred a direct benefit on Whirlpool. According to Whirlpool, Limpede, Bliss, Oliarny, and Miljenovic failed to allege that they purchased their ovens directly from Whirlpool and fail to meet the requirement. Plaintiffs concede the point as to the New Jersey and Idaho Plaintiffs, but dispute that Michigan law requires a direct benefit. Resp. 37, ECF No. 23. In support, Plaintiffs assert that "Michigan law does not require a benefit to be conferred directly by plaintiff to a defendant." *Id.* (quoting *In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2014 WL 2993753, at *31 (E.D. Mich. July 3, 2014) (citing *Kammer Asphalt Paving Co. v. E. China Twp. Sch.*, 504 N.W.2d 635, 641 (Mich. 1993))).

Whirlpool argues that the *Auto Parts* court reached an unjustifiable result based on *Kammer*, which is a factually distinguishable case. "Customarily, [Michigan] courts only employ the doctrine of unjust enrichment in cases where the defendant directly receives a benefit from the plaintiff." *Smith v. Glenmark Generics, Inc., USA*, No. 315898, 2014 WL 4087968, at *1 (Mich. Ct. App. Aug. 19, 2014); *see also Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 280 (Mich. App. 2003) (holding that a claim for unjust enrichment requires "the receipt of a benefit by defendant from plaintiff"); *Storey v. Attends Healthcare Prod., Inc.*, No. 15-CV-13577, 2016 WL 3125210, at *12 (E.D. Mich. June 3, 2016) ("Ordinarily, a plaintiff can establish the first element of the unjust enrichment claim only by proof that the plaintiff *directly* conferred a benefit on the defendant.").

21

*Auto Parts*'s reliance on *Kammer* was misplaced. In *Kammer*, the plaintiffs were subcontractors who performed substantial work on the defendant school district's buildings, and they were in privity of contract with the general contractor and not the school district. 504 N.W.2d at 641. Although the *Kammer* court noted that "plaintiff indirectly provided defendant a benefit," *id.*, "the defendant and the plaintiff were in direct contact with one another while the plaintiff performed work at facilities owned by the defendant and the facts clearly show that the defendant benefited directly from the plaintiff's work." *Smith*, 2014 WL 4087968, at *1. So "[a]lthough Michigan courts have permitted unjust enrichment claims to proceed when a subcontractor indirectly conferred a benefit by performing work projects on a defendant's building, the Michigan Supreme Court has limited this exception to when the defendant and plaintiff had some sort of direct interaction." *Storey*, 2016 WL 3125210, at *12. Thus, to state a claim for unjust enrichment, Michigan law requires a direct benefit or some sort of direct interaction between Plaintiffs and Whirlpool. *Id.* Plaintiffs allege neither. Accordingly, the Court will dismiss with prejudice the unjust enrichment claims of Limpede, Bliss, Oliarny, and Miljenovic.

Additionally, Whirlpool argues that the unjust enrichment claims of all Plaintiffs (except Schechner and Barnes) should be dismissed because Idaho, New Jersey, New Mexico, Arizona, and Michigan state law bars unjust enrichment claims when an adequate remedy at law exists. Plaintiffs counter that unjust enrichment claims may be pled in the alternative under Federal Rule of Civil Procedure 8(d). The Court need only address the motion as to Simmons and the Thomes because the unjust enrichment claims of Plaintiffs Limpede, Oliarny, Miljenovic, and Bliss fail to state claims on other grounds.

22

At the outset, the Court must resolve a conflict-of-law issue. Under Rule 8(d)(2), a "party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense in separate ones." Federal procedural rules "recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to 'set forth two or more statements of a claim or defense alternately or hypothetically,' and to 'state as many separate claims or defenses as the party has regardless of consistency.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805 (1999) (quoting Fed. Rule Civ. Proc. 8(e)(2)). But here, Whirlpool argues that Arizona and New Mexico substantive state law precludes an unjust enrichment claim when an adequate remedy at law exists. Thus, there is an apparent conflict between federal procedural rules, which allow alternative pleading generally, and the applicable state law that may bar a plaintiff from bringing an unjust enrichment claim when a legally adequate remedy is available.

"A federal rule . . . cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Shady Grove Orthopedic Assoc. P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 423 (2010) (Stevens, J., concurring.). And when a federal rule would "abridge, enlarge, or modify a substantive right," then "federal courts cannot apply the rule." *Id.* (citing 28 U.S.C. § 2072(b)). Here, state law regarding the availability of an unjust enrichment claim is so intertwined with a substantive right under state law that Rule 8's alternative pleading provision may not be enforced. Therefore, the Court may not allow Plaintiffs to plead unjust enrichment if the state-court would prohibit the same, despite the permissive nature of Rule 8.

23

Turning to Simmons's claim, under New Mexico law "[a]s a general rule, 'equity will not act if there is a complete and adequate remedy at law.'" *Steadfast Ins. Co. v. Legacy Safety & Consulting, LLC*, No. CV 15-00218 WJ/CG, 2015 WL 12803775, at *3 (D.N.M. June 25, 2015) (quoting *Sims v. Sims*, 930 P.2d 153, 159 (N.M. 1996)). In *Steadfast*, the Court dismissed an unjust enrichment claim because the plaintiff had a "complete and adequate remedy at law" through a breach of contract claim. *Id.; see also Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1117 (10th Cir. 2005) (affirming summary judgment on plaintiff's unjust enrichment claim because the parties were in privity of contract).

Plaintiffs argue, however, that New Mexico law "explicitly provides for alternative pleading of civil claims" including unjust enrichment. *Starko, Inc. v. Presbyterian Health Plan, Inc.*, 2012-NMCA-053, 276 P.3d 252, 278 (N.M. Ct. App. 2011), *rev'd sub nom. Starko, Inc. v. New Mexico Human Servs. Dep't*, 2014-NMSC-033, 333 P.3d 947 (N.M. 2014); *see also Auge v. Stryker Corp.*, No. 14-1089 KG/SMV, 2016 WL 3567047, at *8 (D.N.M. May 5, 2016) (permitting the plaintiff to plead unjust enrichment as an alternative to state-law claims).

Whirlpool's cited authorities are inapposite. In both *Steadfast* and *Elliot*, the courts' holdings relied on the fact that privity of contract existed between the plaintiff and defendant. The *Elliot* court noted that the parties were in privity of contract and that "the presence of a contract bars a claim for unjust enrichment." 407 F.3d at 1117. But here, no privity of contract exists between Simmons and Whirlpool. And the *Steadfas*t court noted that "statutory remedies are not typically interpreted as supplanting existing equitable remedies." 2015 WL 12803775, at *4. Neither the UCC nor the MMWA explicitly supplant

24

equitable remedies. Therefore, under New Mexico law, Plaintiff Simmons may plead unjust enrichment. Accordingly, the Court will deny Whirlpool's motion to dismiss Simmons's unjust enrichment claim.

Regarding the Thomes, Whirlpool relies on *Firetrace USA, LLC v. Jesclard*, 800 F. Supp. 2d 1042, 1052 (D. Ariz. 2010) to support an argument that Arizona law bars a claim for unjust enrichment when an adequate legal remedy exists. *See* Mot. 23, n.11, ECF No. 11. But *Firetrace* is inapposite. The *Firetrace* court held that when "there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Id.* (quotations omitted). The other authority cited by Whirlpool, *Gustafson v. Goodman Mfg. Co. LP*, mentions in dicta that "because interpretation of Goodman's Limited Warranty controls this matter, unjust enrichment is not an app licable [sic] legal theory." No. CV-13-08274-PCT-JAT, 2016 WL 1029333, at *4, n.9 (D. Ariz. Mar. 14, 2016).

In response, Plaintiffs quote *Lopez v. Musinorte Entm't Corp*, 434 F. App'x 696, 699 (9th Cir. 2011): "[u]nder Arizona law, a plaintiff can pursue an unjust enrichment claim as an alternative theory of recovery in conjunction with a breach of contract claim[.]" *See* Resp. 36, ECF No. 23. Here, unlike in *Firetrace*, no specific employment contract governs the relationship between Plaintiffs and Whirlpool and no privity of contract exists. And the Court is not bound by the dicta in *Gustafson*. As a result, the Court will deny Whirlpool's motion to dismiss the unjust enrichment claim of the Thomes.

B. Florida Deceptive and Unfair Trade Practices Act Claim

Whirlpool argues that Plaintiffs Schechner's and Barnes's state-law consumer-protection claims should be dismissed because they do not plead ascertainable losses with specificity. Mot. 27–28, ECF No. 11 *(citing In re Caterpillar, Inc., C13 & C15*

25

*Engine Prod. Liab. Litig.*, No. 1:14-CV-3722 JBS-JS, 2015 WL 4591236, at *39 (D.N.J. July 29, 2015)). In *Caterpillar*, a federal court dismissed a claim under the Florida Act because "[b]eyond conclusory allegations of diminished value, Plaintiffs have not identified this diminished value with any specificity, nor pleaded facts from which such value could be calculated." *Id.*

Plaintiffs respond that *Caterpillar* was wrongly decided. Resp. 9, ECF No. 23. *Caterpillar* and *Rollins* (the Florida Appeals Court decision upon which Caterpillar was based) do not "support the conclusion that a FDUTPA claim requires a plaintiff to plead the price of comparable products in order seek damages under the FDUTPA." *Hasemann v. Gerber Prod. Co.*, No. 15-CV-2995 (MKB), 2016 WL 5477595, at *22 (E.D.N.Y. Sept. 28, 2016).

Neither the statutory text—nor other relevant cases—support the ascertainable loss requirement set forth in *Caterpillar*. Rather, a plaintiff "only need to show that he or she paid a premium for [the product at issue] to be entitled to damages under the FDUTPA." Id. (quotations omitted). Schechner and Barnes met the Florida Act's pleading requirements. The Court will deny Whirlpool's motion to dismiss the Florida Act claims of Schechner and Barnes.

C. New Jersey Consumer Fraud Act (NJCFA) Claim

Whirlpool argues that under New Jersey law "Plaintiffs must plead specific price information or provide alternate means of quantifying their loss to allege ascertainable loss under New Jersey law.'" Mot. 27–28, ECF No. 11 (citing *In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 820 (N.D. Ill. 2016) (holding that allegations that plaintiffs "would not have purchased [the product] had they known about

the defect and that they suffered out of pocket loss as a result" are insufficient to state a claim). Plaintiffs claim that they have met New Jersey's heightened standard by pleading specific pricing information and by pleading that they received less value than the retail price they paid. Resp. 10, ECF No. 23 (citing Am. Compl. ¶¶ 82–84, 132–37 and Exh. 11–13).

Under the New Jersey Act, "[t]he precise amount of loss need not be known, it need only be measurable." *Hoffman v. Liquid Health Inc.*, No. CIV. 14-01838 SRC, 2014 WL 2999280, at *6 (D.N.J. July 2, 2014) (quotations omitted). "[I]mplicit in the concept of an ascertainable loss is that it is quantifiable or measurable. Moreover, it need not yet have been experienced as an out-of-pocket loss to the plaintiff." *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 793 (N.J. 2005). At the summary judgment stage, a party must "produce specific proofs to support or infer a quantifiable loss . . . [S]ubjective assertions without more are insufficient." *Id.* At the pleading stage, however, a "Plaintiff must merely allege that the loss is quantifiable." *Durso v. Samsung Electronics Am., Inc.*, No. 12-CV-5352, 2014 WL 4237590, at *6 (D.N.J. Aug. 26, 2014) ("By alleging that he paid $549.97 for a washer and that it did not wash a king-size comforter as promised, the Plaintiff has alleged that he received 'less than what was promised.'") (quoting *Thiedemann*, 872 A.2d 783)).

Here, Miljenovic alleges that the oven's AquaLift "did not work as advertised" and that she was "dissatisf[ied] with the product." Am. Compl. ¶¶ 136–37, ECF No. 5. The Amended Complaint also alleges that all Plaintiffs "did not receive any of the 'self-cleaning' benefits of the AquaLift Ovens." *Id.* ¶ 6. Plaintiffs seek compensation for "overpayment for a product advertised to include a self-cleaning function, but did not [and] a decrease in value of their

27

ovens due to the defect." *Id.* ¶ 8.Plaintiffs also include the retail cost of the oven in the amended complaint. *See* Am. Compl. Exh. 12–14, ECF No. 5. Thus, Miljenovic adequately pled that she "received something less than, and different from, what [she] reasonably expected in view of defendant's presentations. That is all that is required to establish 'ascertainable loss[.]'" *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 336 (D.N.J. 2014). Accordingly, the Court will deny Whirlpool's motion to dismiss Miljenovic's New Jersey Act claim.

D.   Idaho Consumer Fraud (ICFA) and Arizona Consumer Fraud (ACFA) Claims

Whirlpool argues that Plaintiffs' Idaho and Arizona Act claims are barred by a 2-year statute of limitations. Under the Idaho Act "[n]o private action may be brought . . . more than two (2) years after the cause of action accrues." Idaho Code § 48-619. "The cause of action accrues, and the statute of limitation begins to run, when a party may sue another." *Galbraith v. Vangas, Inc.*, 655 P.2d 119, 122 (Idaho Ct. App. 1982).

Plaintiff Limpede bought her oven in December 2012, attempted to use the AquaLift feature in the spring and summer of 2013 and discovered then that her "oven remained dirty." Am. Compl. ¶¶ 145, 147, ECF No. 5. She complained to a Maytag representative in summer of 2013. *Id.* ¶ 151. Thus, her cause of action accrued in the spring of 2013 and the two-year statute of limitations elapsed in spring of 2015. Yet she did not file suit until June of 2016.

Similarly, under Arizona law, "[a] consumer fraud claim must be filed within one year after the cause of action accrues." *Steinberger v. McVey ex rel. Cty. of Maricopa*, 318 P.3d 419, 436 (Ariz. Ct. App. 2014) (quotations omitted). "The limitations period begins to run when the consumer discovers or with reasonable diligence should have discovered both

28

the 'who' and the 'what' of her claim. This occurs when the consumer knows whose products were involved and that the products were not performing as expected." *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 826 (D. Ariz. 2016) (quotations and internal citation omitted). "For this reason, a plaintiff's allegations about the date of discovery must be accepted as true at the 12(b)(6) stage, and a claim should not be dismissed as untimely unless the running of the statute of limitations is apparent on the face of the complaint." *Id.* (quotations omitted).

The Thomes allege that they bought their oven in March of 2014, and unsuccessfully ran the AquaLift feature "in or around November 2014, May 2015, and April 2016. Am. Compl. ¶¶ 138, 140, ECF No. 5. Thus, the statute began to run in November 2014 when the Thomes discovered the AquaLift feature "did not work or perform as advertised." *Id.* ¶ 140. The statute of limitations elapsed one year later, in November 2015. The Thomes did not sue Whirlpool until June 2016.

Plaintiffs argue that "the date when discovery occurred is a question of fact." Resp. 17, ECF No. 23 (quoting *Cheatham*, 161 F. Supp. 3d at 826). Plaintiffs conclude that the parties should be allowed to engage in discovery to determine more facts regarding when the Plaintiffs first knew "that the products were not performing as expected." *Id.* Plaintiffs add that Whirlpool and its technicians "repeatedly misled Plaintiffs and the market regarding AquaLift's inability to perform as advertised" which delayed the Plaintiffs' discovery of the defect. *Id.*

Plaintiffs' "allegations about the date of discovery must be accepted as true at the 12(b)(6) stage." *Cheatham*, 161 F. Supp. 3d at 826. For Limpede, discovery occurred on the earliest date when she could first have sued, *Galbraith*, 655 P.2d at 122, in summer

29

2013 when AquaLift failed to clean her oven as advertised. Am. Compl. ¶ 147, ECF No. 5. And the Thomes knew that AquaLift was not "performing as expected," *Cheatham*, 161 F. Supp. 3d at 826, in  November, 2014. Am. Compl. ¶ 140, ECF No. 5. Both Limpede and the Thomes pled facts to show that they discovered a problem with their oven at a specific time. On the face of the complaint, therefore, and accepting the factual allegations as true, both claims are barred by the respective states' statutes of limitations. Accordingly, the Court will dismiss without prejudice Limpede's Idaho Act claim and the Thomes's Arizona Act claim.

## ORDER

**WHEREFORE** it is hereby **ORDERED** that Defendant Whirlpool's Motion to Dismiss [11] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that:

- Count I - The MMWA written warranty claims of Plaintiffs Simmons, the Thomes, Barnes, Bliss, Miljenovic, and Limpede arising under Whirlpool's one-year limited warranty are **DISMISSED** without prejudice. All Plaintiffs' MMWA written warranty claims alleging that Whirlpool's advertisements created an affirmation-of fact written warranty are **DISMISSED** with prejudice.

- Count II - The MMWA implied warranty claims of  Plaintiffs Barnes, Simmons, Oliarny, the Thomes, Schechner, and  Limpede  are **DISMISSED** without prejudice.

- Count III - All Plaintiffs' breach of contract claims are **DISMISSED** with prejudice.

- Count IV - The express UCC warranty claims of Plaintiffs Barnes, Simmons, Oliarny, the Thomes, and Schechner are **DISMISSED** without prejudice.

- Count V - The UCC implied warranty claims of Plaintiffs Barnes, Simmons, Oliarny, the Thomes, Schechner, and Limpede are **DISMISSED** without prejudice.

- Count VI - The unjust enrichment claims of Plaintiffs Limpede, Bliss, Oliarny, and Miljenovic are **DISMISSED** with prejudice. Whirlpool's motion to dismiss the unjust enrichment claims of Plaintiffs Simmons and the Thomes is **DENIED**.

- Count VIII - Whirlpool's motion to dismiss the Florida Deceptive and Unfair Trade Practices Act claims of Plaintiffs Schechner and Barnes is **DENIED**.

- Count IX - Whirlpool's motion to dismiss Plaintiff Miljenovic's New Jersey Consumer Fraud Act claim is **DENIED**.

- Count X - The Arizona Consumer Fraud Act claim of the Thomes Plaintiffs is **DISMISSED** without prejudice.

- Count XI - The Idaho Consumer Protection Act claim of Plaintiff Limpede is **DISMISSED** without prejudice.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: February 14, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 14, 2017, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager