UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOBY SCHECHNER, et al.,

              Plaintiffs,

v.

WHIRLPOOL CORPORATION,

              Defendant.

_____/

Case No. 2:16-cv-12409

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER
OVERRULING OBJECTIONS TO
DISCOVERY MASTER'S REPORT
AND RECOMMENDATION [149, 150], AND DENYING
MOTIONS TO STRIKE EXPERT OPINIONS [96, 110, 111, 112]**

On April 16, 2018, Plaintiffs filed a motion for class certification. ECF 71, 83 (under seal). In support of their motion, Plaintiffs offered the expert testimony of Mr. Colin Weir. *See* ECF 87-9 (declaration of Weir) (under seal). On May 31, 2018, Defendant filed its response to Plaintiffs' motion to certify class. ECF 91 (under seal). In support of its response, Defendant offered the expert testimony of Dr. Itamar Simonson, Dr. Keith Ugone, and Dr. Robert Rauschenberger. *See* ECF 91-22 (under seal) (Simonson Report); ECF 91-31–91-39 (under seal) (Ugone Report); ECF 91-11–91-12 (under seal) (Rauschenberger Report).

On June 8, 2018, Defendant filed a motion to strike Mr. Weir's opinions. ECF 96 (under seal). On July 27, 2018, Plaintiffs filed motions to strike the opinions of Dr. Simonson, ECF 110, Dr. Ugone, ECF 111, and Dr. Rauschenberger, ECF 112.

On August 28, 2018, the Court appointed Mr. Daniel Sharkey to issue a report and recommendation on the motions to strike. ECF 125. On October 30, 2018, Mr. Sharkey issued his report and recommendation ("Report"), recommending that the Court deny the motions to strike. ECF 142. On December 4, 2018, Plaintiffs filed their objections to the Report. ECF 149. On the same day, Defendant filed its objections to the Report. ECF 150.

## BACKGROUND

The litigation is a putative class action in which Plaintiffs allege that Whirlpool's marketing and advertising for its ovens with AquaLift self-cleaning technology ("AquaLift ovens") were false, deceptive, and misleading because the ovens did not clean as effectively as advertised. ECF 5, PgID 68.

I.  <u>Mr. Weir's Opinions</u>

Plaintiffs' expert, Mr. Weir, calculated price premiums that consumers allegedly paid on a class-wide basis related to Defendant's alleged misrepresentations about the self-cleaning mechanism. ECF 87-9 (under seal). His calculations used conjoint analysis and hedonic regression analysis. *Id.* at 10888 (under seal). Conjoint analysis uses survey data. Survey respondents rank their preferences of product attributes and prices or choose the most preferred attribute or combination of attributes. The choices are evaluated statistically to calculate the value of each attribute as compared to the others. *See* ECF 142, PgID 26217. "Hedonic regression is a statistical tool that attempts to explain" the relative importance of various

independent variables—such as product features—on the dependent variable, price. *See id.* at 26224.

Mr. Weir's conjoint analysis presented respondents with choices of ovens with various combinations of product attributes. *See* ECF 87-9, PgID 10895 (under seal). His hedonic regression analysis compared the prices consumers paid for ovens with and without the AquaLift feature. *See id.* at 10916, 10922 (under seal). Mr. Weir's calculations determined price premiums of 10.58% and 10.83% through conjoint and hedonic regression analyses, respectively. *Id.* at 10888, 10926 (under seal).

Mr. Weir opined that individualized inquiry was not required in order to calculate total class-wide damages—which would not be affected by variations in purchase price, individual interpretations of the claim that the ovens were self-cleaning, individual behavior or use of the ovens, or individual reasons for purchasing the ovens. *Id.* at 10926–27 (under seal).

## II. Dr. Simonson's Opinions

Defendant's expert Dr. Simonson criticized Mr. Weir's opinions,[1] ECF 91-22, PgID 11649–50 (under seal), and provided his own opinion. He conducted a survey intended to measure the impact of AquaLift on consumers' purchase intentions and perceptions of oven features and consumers' expectations about the pyrolytic self-cleaning feature. *Id.* at 11650 (under seal). He performed consumer research on ovens, self-cleaning options, and pyrolytic self-cleaning technology.

---

[1] Dr. Simonson also criticized the opinion of another one of Plaintiffs' experts, Dr. Kamins.

Dr. Simonson's survey used a mocked-up advertisement of a hypothetical Home Depot "AquaLift Self-Cleaning" oven. *Id.* at 11695 (under seal). The mocked-up advertisement was modified from a real Home Depot advertisement that did not say "AquaLift" before "Self-Cleaning." *Id.* at 11694 (under seal). The survey respondents were split among panelists who saw the advertisement that referred to AquaLift Self-Cleaning and a control group that saw an advertisement that did not mention AquaLift or self-cleaning. *Id.* at 11690, 11693 (under seal). Dr. Simonson asked several questions to assess the impact of the AquaLift value, including asking respondents about their likelihood of buying the presented oven. *Id.* at 11690–91 (under seal). After executing his survey, Dr. Simonson provided coders with the data to create groupings or categories for overlapping responses. *Id.* at 11703 (under seal).

Dr. Simonson concluded that there was no significant difference in purchase intentions between respondents shown the Whirlpool oven with "AquaLift Self-Cleaning" and those shown the oven without the feature. *Id.* at 11704 (under seal). He also noted that the respondents who used and valued the self-cleaning feature were likely to acquire information about it before purchase. *Id.* at 11715 (under seal). He concluded that overall ratings of the oven's features were not enhanced by the AquaLift feature and that respondents had unrealistic expectations of self-cleaning oven features. *Id.* (under seal).

III. <u>Dr. Ugone's Opinions</u>

Defendant presented Dr. Ugone's expert opinion to rebut Mr. Weir's opinions and to opine as to whether the claimed classwide damages in the case could be

reliably evaluated using a common proof—i.e., without individualized inquiry. ECF 91-31, PgID 12190 (under seal). Dr. Ugone criticized Mr. Weir's conjoint analysis and hedonic regression analysis and concluded that Mr. Weir's methodologies did not yield a reliable measure of classwide damages. *Id.* (under seal). He also concluded that individualized inquiry was required to reliably calculate the claimed damages. *Id.* at 12192 (under seal).

IV.  Dr. Rauschenberger's Opinions

Defendant's expert Dr. Rauschenberger, a cognitive psychologist, opined on human factors regarding consumers' use and experiences of the ovens. Dr. Rauschenberger reviewed case-specific materials and scientific literature about human decision-making and behavior, conducted in-home inspections of Plaintiffs' ovens, and evaluated oven cleaning methods (including AquaLift). ECF 91-11, PgID 11258 (under seal).

Dr. Rauschenberger made nine conclusions. First, appliance purchase decisions were complex mental transactions that were not dominated by a single factor. *Id.* at 11322 (under seal). Second, definitions of "clean" and acceptable levels of manual effort vary from individual to individual. *Id.* (under seal). Third, having compared AquaLift, standard, and pyrolytic ovens under controlled conditions, the AquaLift oven required less time and a similar amount of effort as a pyrolytic oven to clean. *Id.* (under seal). Fourth, some consumers had unrealistic expectations of the performance of an oven described as "self-cleaning." *Id.* (under seal). Fifth, consumers experienced diverse expectations about AquaLift technology—some of which were

inaccurate—due to varying levels of attention to AquaLift product information and past experiences with pyrolytic and standard ovens. *Id.* (under seal). Sixth, Plaintiffs' dissatisfaction was attributable at least in part to misuse of their AquaLift ovens. *Id.* at 11323 (under seal). Seventh, based upon a review of literature about pyrolytic ovens, pyrolytic ovens required substantial manual interaction. *Id.* (under seal). Eighth, the instructions that came with AquaLift ovens were easy to follow and well-designed. *Id.* (under seal). Ninth, purchasers of AquaLift ovens were not uniformly dissatisfied with the ovens. *Id.* (under seal).

## STANDARD OF REVIEW

The Court may "adopt or affirm, modify, [or] wholly or partly reject or reverse" the Sharkey Report. Fed. R. Civ. P. 53(f)(1). Because the parties have not stipulated otherwise, the Court "must decide de novo all objections to findings of fact made or recommended" in the Report. Fed. R. Civ. P. 53(f)(3). The Court also "must decide de novo all objections to conclusions of law made or recommended" in the Report. Fed. R. Civ. P. 53(f)(4).

The Federal Rules of Evidence address the admissibility of expert testimony. "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Civ. P. 702.

The Court must ensure that a proffered expert's testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). The Court's gatekeeping function reaches proffered expert testimony based on specialized knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148–50 (1999).

The Supreme Court has not decided whether a district court must undertake a *Daubert* analysis at the class-certification stage. *In re Carpenter Co.*, No. 14-0302, 2014 WL 12809636, at *3 (6th Cir. Sept. 29, 2014). The Sixth Circuit has held that a district court does not abuse its discretion in applying *Daubert* to critical expert witnesses. *Id.*

But "[t]he Seventh Circuit requires a district court to conclusively rule on any challenge to an expert's qualifications or submissions if his/her report or testimony is 'critical to class certification' *before* ruling on the merits of the motion to certify a class." *Id.* (citing *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815−16 (7th Cir. 2010)) (emphasis added). The Eleventh and Seventh Circuits require a district court to conduct a conclusive *Daubert* inquiry. *E.g.*, *Sher v. Raytheon Co.*, 419 F. App'x. 887, 890 (11th Cir. 2011); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 812–14 (7th Cir. 2012). The Eighth Circuit, by contrast, has affirmed a district court's more tailored analysis examining "the reliability of the expert opinions in light of the available evidence and the purpose for which they were offered." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 610, 614 (8th Cir. 2011). The Sixth Circuit

has not directly determined the extent to which a district court must apply *Daubert* during the class certification stage.

## DISCUSSION

I.   <u>Defendant's Motion to Strike Mr. Weir's Opinion</u>

Defendant moves to exclude three of Mr. Weir's opinions under Federal Rule of Evidence 702 and *Daubert*: (1) his conjoint analysis opinion, (2) his hedonic regression opinion, and (3) his fixed-percentage price premium opinion. ECF 96, PgID 14172 (under seal).

Mr. Sharkey recommended that the Court deny Defendant's motion to exclude Mr. Weir's opinions. ECF 142, PgID 26213. First, he concluded that Mr. Weir's conjoint analysis was sufficiently reliable to be admissible. *Id.* at 26217. Mr. Sharkey addressed Defendant's arguments that: consumers ascribe different meanings to the term "self-clean;" Mr. Weir exaggerated the "AquaLift clean" label over a hypothetical "AquaLift partial-clean" label; Mr. Weir's survey suffered from focalism bias; and that the survey fails to account for supply-side considerations to measure price premiums. *Id.* at 26219. Mr. Sharkey explained that "self-cleaning" was not such a confusing term as to render Mr. Weir's opinion unreliable—indeed, Defendant used the term in its own advertisements. *Id.* at 26220. He then noted that although Mr. Weir's "AquaLift partial-clean" label was hypothetical, it related sufficiently to the facts and allegations of the case. *Id.* at 26221. Mr. Sharkey also explained that the survey's alleged focalism bias—which might allow a survey respondent to discover the target of the survey—affected the weight of the survey but did not render it unreliable. *Id.*

at 26222. Finally, Mr. Sharkey reasoned that Mr. Weir sufficiently considered the supply-side factors in measuring the price premium because his analysis compared the self-cleaning ovens as Defendant allegedly marketed them and the partial self-cleaning ovens as Defendant allegedly actually provided them and the associated price premiums for both. *Id.* at 26223.

Next, Mr. Sharkey concluded that Mr. Weir's hedonic regression analysis was sufficiently reliable to be admissible. *Id.* at 26224. Mr. Sharkey addressed Defendant's arguments that: (1) Mr. Weir's hedonic regression analysis confounded the value of the "self-clean" feature with other, non-cleaning features; and (2) Mr. Weir relied upon an insufficient data set. *Id.* Mr. Sharkey explained that although both alleged infirmities affected the weight of the evidence, they did not render the evidence inadmissible. *Id.* at 26225, 26227.

Finally, Mr. Sharkey concluded that a fixed-price premium of recovery was sufficiently reliable given Plaintiffs' reliance on a benefit-of-the-bargain theory of recovery. *Id.* at 26227–28. He addressed Defendant's argument that Mr. Weir's fixed-price premium approach did not conduct individualized inquiries to determine the damages that each individual consumer incurred. *Id.* at 26228. Mr. Sharkey explained that Mr. Weir's fixed-price premium quantifies the reimbursement for consumers who purchased a self-cleaning oven that turned out to be non-self-cleaning, and, furthermore, Mr. Weir's approach calculates the average of what consumers experienced regarding the self-cleaning attribute. *Id.* at 26228–29.

Defendant objects to three of Mr. Sharkey's conclusions about Mr. Weir's opinions.[2] First, it objects to the conclusion that Mr. Weir's conjoint analysis sufficiently considered supply-side factors. ECF 150, PgID 26452. Second, Defendant objects to the conclusion that it is not the Court's role currently to evaluate whether Mr. Weir's hedonic regression analysis can isolate the premium associated with the ovens' cleaning performance. *Id.* Third, it objects to the conclusion that no individual damages inquiry is required because Plaintiffs pursue a benefit-of-the-bargain theory of recovery. *Id.*

### a. *Defendant's Objection Regarding Mr. Weir's Conjoint Analysis*

Defendant argues that Mr. Weir's conjoint analysis failed to take into account supply-side considerations such as the "effect that marketplace competition among manufacturers and retailers had on the price retailers might have charged for 'AquaLift partial-clean' ovens, regardless of what consumers might have been willing to pay for them." ECF 150, PgID 26458. Defendant argues that Mr. Weir's use of real world price points does not reflect the interplay of supply and demand "absent the alleged self-cleaning misrepresentation." *Id.* at 26459.

Prices are set by supply and demand. *See Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2014 WL 976898, at *11 (N.D. Cal. Mar. 6, 2014). To be reliable, then, Plaintiffs' analysis of prices must cover both supply-side and demand-side considerations.

---

[2] The Court addresses Defendant's objections in the order the Report covered the underlying portions of Mr. Weir's opinions.

Other courts have addressed the extent to which conjoint analyses must account for supply-side factors in order to be admissible.

> [C]onjoint analyses can adequately account for supply-side factors . . . when (1) the prices used in the surveys underlying the analyses reflect the actual market prices that prevailed during the class period; and (2) the quantities used (or assumed) in the statistical calculations reflect the actual quantities of products sold during the class period.

*Hadley v. Kellogg Sales Co.*, 324 F.Supp.3d 1084, 1105 (N.D. Cal. 2018). For example, courts have found that conjoint analyses sufficiently took into consideration supply-side considerations when the survey used actual market prices and took into account the fixed supply of the products. *See, e.g.*, *id.* at 1105–06; *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 605 (N.D. Cal. 2018); *In re Dial Complete Mktg. & Sales Practices Litig.*, 320 F.R.D. 326, 334–36 (D.N.H. 2017); *In re Lenovo Adware Litig.*, No. 15-md-02624-RMW, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016).

Here, Mr. Weir's conjoint analysis sufficiently considered supply-side considerations. He analyzed the prices for self-cleaning ovens and partially self-cleaning ovens and the price premiums between the two. Allegedly, Defendant supplied partially self-cleaning ovens instead of fully self-cleaning ovens. The price premium for partially self-cleaning ovens captured the differential for partially cleaning ovens as allegedly supplied. (And, as Mr. Sharkey correctly noted, a price premium for a partially cleaning oven is different from a price premium for a non-cleaning oven, which Defendant is not alleged to have supplied.) Consumers allegedly

demanded fully self-cleaning ovens. Mr. Weir's conjoint analysis thus acknowledged what was allegedly actually supplied and what was allegedly actually demanded.

And Mr. Weir's conjoint analysis assumed fixed supply. He used actual prices advertised and actual sales price data in selecting a market-based product price point. *See* ECF 87-9, PgID 10903 (under seal). The analysis applied to past sales: "[T]his price premium applies to the sale of every Whirlpool branded oven model with AquaLift that was purchased by each Class member." *Id.* at 10905 (under seal). Mr. Weir's analysis thus assumes the fixed supply of products. His conjoint analysis therefore sufficiently considered supply-side factors to be reliable.

Mr. Weir's exclusion of additional supply-side factors goes to the weight of his opinion, not its admissibility. The Court therefore overrules Defendant's objection regarding supply-side considerations in Mr. Weir's conjoint analysis.

   b.  *Defendant's Objection Regarding Mr. Weir's Hedonic Regression Analysis*

Defendant argues that Mr. Weir's hedonic regression analysis could not isolate the impact of only AquaLift ovens' disputed cleaning performance on customer preference. ECF 150, PgID 26456. Defendant points out that AquaLift ovens also include cleaning benefits and non-cleaning benefits, such as a larger window and cavity and improved cooktop performance. *Id.* Defendant therefore objects to Mr. Sharkey's statement that it is not the Court's role to determine facts related to which alleged features an AquaLift Oven may contain or which alleged features are important to consumers. *Id.* at 26457. Citing *Comcast Corp. v. Behrend*, 569 U.S. 27,

35 (2013), Defendant argues that the Court must determine whether the model aligns with Plaintiffs' theory of liability. *Id.* at 26457–58.

*Comcast* requires that a class-action damages model must be tied to the plaintiffs' theory of liability, or else "it cannot possibly establish that damages are susceptible of measurement across entire class for purposes of Rule 23(b)(3)." 569 U.S. at 35. Defendant's argument concerning *Comcast* therefore does not go to admissibility—it goes to class certification. "Admissibility turns on whether [the expert]'s methodology is sufficiently reliable; whether it satisfies *Comcast* and shows that a class should be certified is another question altogether[.]" *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 946 (C.D. Cal. 2015).[3] The *Comcast* standard therefore does not govern admissibility.

Rule 702 and *Daubert* govern admissibility. A preponderance of the evidence shows that Mr. Weir's hedonic regression analysis is verifiable and comports with established scientific principles. Defendant does not dispute that hedonic regression is a valid statistical tool. And the analysis is relevant to the issues in the case, as it attempts to identify a price premium associated with the self-cleaning label at issue.

---

[3] *ConAgra* involved allegations that ConAgra's "100% Natural" label on Wesson Oils caused putative class members to believe the products contained no genetically modified organisms or GMO ingredients. There, the expert's hedonic regression analysis focused only on the price premium attributable to the "100% Natural" label. 90 F. Supp. 3d at 1024. The District Court for the Central District of California found the expert's hedonic regression analysis admissible. *Id.* at 948. But the analysis did not satisfy *Comcast* because "it does not isolate the price premium attributable to consumers' belief that ConAgra's products did not contain GMOs." *Id.* at 1025.

The alleged deficiencies that Defendant identifies in Mr. Weir's hedonic regression analysis—namely, the failure to consider non-cleaning benefits of AquaLift Ovens—goes to the strength of his opinion, not its reliability. *See ConAgra*, 90 F. Supp. 3d at 946; *e.g.*, *Singleton v. Fifth Generation, Inc.*, 5:15-CV-474 (BKS/TWD), 2017 WL 5001444, at *7 (N.D.N.Y. Sept. 27, 2017) (finding expert's hedonic regression analysis admissible); *In re NJOY, Inc. Consumer Class Action Litig.*, CV 14–428–JFW (JEMx), 2016 WL 787415, at *4 (C.D. Cal. Feb. 2, 2016) (finding expert's hedonic regression analysis admissible).[4] The Court therefore overrules Defendant's objection regarding Mr. Weir's hedonic regression analysis.

### c. Defendant's Objection to Mr. Sharkey's Statement about Whether Mr. Weir's Fixed-Percentage Price Premium Approach Needed to Undertake Highly Individualized Inquiry

Defendant next objects to Mr. Sharkey's conclusion that an individual damages inquiry is not required at the admissibility stage because Plaintiffs pursue a benefit-of-the-bargain theory of recovery. ECF 150, PgID 26453. Defendant concedes that Mr. Sharkey's finding—that Mr. Weir's fixed-percentage price premium approach was relevant to prove Plaintiffs' benefit-of-the-bargain theory—was sufficient to deny Defendant's motion under Rule 702. *Id.* at 26454. Defendant instead takes issue with Mr. Sharkey's observation of Mr. Weir's statement that "no individual inquiry is necessary" under a benefit-of-the-bargain theory. *Id.* (citing ECF 142, PgID 26229).

---

[4] In each of those cases, parties attacked the expert's hedonic regression analysis for failing to take into account particular factors, but those arguments did not go to admissibility. The arguments were addressed later in the court's *Comcast* analysis for class certification.

Its reason for objection is that Mr. Sharkey's statement is "wrong as a matter of class certification law." *Id.* at 26455. Defendant argues that several individualized facts are necessary for the Court's Rule 23 analysis.[5] Defendant argues that the following factors are required for the Court's Rule 23 analysis: "whether the putative class members' purchase decisions were related to the AquaLift self-cleaning representation," "their expectations about AquaLift's cleaning performance," and "their level of satisfaction with AquaLift." *Id.* at 26455.

Defendant's objection takes Mr. Sharkey's statement out of context. As Defendant recognizes, the Court appointed Mr. Sharkey to address the admissibility of expert opinions. Mr. Sharkey was observing Plaintiffs' characterization of their damages theory for the purposes of determining whether Mr. Weir's analysis was relevant and reliable enough to be admissible. Class certification analysis is separate from admissibility analysis. *See, e.g.*, *ConAgra*, 90 F. Supp. 3d at 946. The lack of individualized inquiry speaks to the weight of Mr. Weir's opinion—which the Court will assess in its Rule 23 analysis—but not its admissibility. Mr. Weir's fixed-percentage price premium approach is sufficiently relevant and reliable to be admissible. The Court therefore overrules Defendant's objection regarding Mr. Sharkey's statement about individualized inquiry.

---

[5] Defendant also notes that by being tied to a benefit-of-the-bargain theory, Mr. Weir's model "fails to measure available damages for Plaintiffs' unjust enrichment claims, and Plaintiff Oliarny's and Plaintiff Simmons's claims under the Idaho Consumer Protection Act and New Mexico Unfair Practices Act, respectively." *Id.* at 26454.

## II.  Plaintiffs' Motion to Strike Dr. Simonson's Opinion

Plaintiffs move to exclude Dr. Simonson's testimony for eight reasons. First, they argue that Dr. Simonson is not qualified to render opinions about self-cleaning functionality or consumer expectations. ECF 110, PgID 21155. Second, they assert that Dr. Simonson's Home Depot advertisement does not replicate marketplace conditions because he altered the advertisement and failed to include in-store or point-of-purchase advertising, such as in-store placard or marketing material. *Id.* at 21157–60. Third, they maintain that the survey confused respondents as to which self-cleaning process—i.e., pyrolytic or otherwise—they needed to address. *Id.* at 21161. Fourth, they challenge Dr. Simonson's acceptance and reliance on Defendant's position that AquaLift could not be isolated from unrelated features, such as aesthetic and appearance characteristics. *Id.* at 21164. Fifth, they take issue with the survey responses' coding, which commingled and subsumed coding categories and created unrelated groupings. *Id.* at 21167. Sixth, Plaintiffs criticize the survey for not accounting for information known to Defendant, such as consumer expectations of how oven cycles work and perform. *Id.* at 21172–73. Seventh, they challenge Dr. Simonson's questions for being open-ended and leading to non-exhaustive responses. *Id.* at 21174. And eighth, they dispute Dr. Simonson's "What is pyrolytic?" question, demanding that it should really be "What is self-clean?" because he did not provide respondents with the meaning of "pyrolytic" or any context that associated "pyrolytic with self-clean." *Id.* at 21175–76.

Broadly, Plaintiffs' arguments fall into three categories: (1) arguing that Dr. Simonson is not properly qualified; (2) attacking the reliability of his consumer survey; and (3) criticizing the processing of the data from the survey. *See* ECF 142, PgID 26230.

Plaintiffs argue that Simonson is not properly qualified to provide his opinions about consumers' beliefs about ovens because he needs to have expertise in consumer behavior and consumer research and specialized knowledge in the technical operation of the ovens. ECF 110, PgID 21155–56. Mr. Sharkey explained that the argument was unpersuasive, because Dr. Simonson is a professor of marketing who has performed thousands of consumer surveys and is thus qualified to opine on consumer surveys and market research. ECF 142, PgID 26231–32. He further concluded that Dr. Simonson was qualified to analyze survey techniques. *Id.* at 26232. Finally, Mr. Sharkey observed that Defendant presented Dr. Simonson as a survey and marketing expert only, not an oven expert, so technical oven expertise was not necessary. *Id.*

Next, Plaintiffs argue that Dr. Simonson's survey data was unreliable because the mocked-up advertisement deviated from marketplace reality. Mr. Sharkey explained, however, that Simonson's survey sufficiently approximated marketplace reality and was therefore reliable. ECF 142, PgID 26234; *Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734, 766 (E.D. Mich. 2003). Mr. Sharkey noted that the rest of Plaintiffs' criticisms—concerning Dr. Simonson's survey questions and data—went to the weight and not the admissibility of Dr. Simonson's conclusions. ECF 142, PgID 26233.

Plaintiffs attack the processing of the survey data, which grouped or categorized overlapping responses. They argue that Dr. Simonson's results are unreliable because of the improper grouping of consumer responses. Mr. Sharkey explained that these arguments went to the weight of the opinions but not their admissibility. He emphasized that Defendant provided Plaintiffs with the individual survey responses,[6] so that Plaintiffs can test the coding to challenge Dr. Simonson's conclusions or to re-categorize the results. *Id.* at 26235. And Mr. Sharkey recommended that the Court deny Plaintiffs' motion to strike Dr. Simonson's opinions. *Id.*

Plaintiffs object to Mr. Sharkey's Report for several reasons. First, they argue that the Court should strike Dr. Simonson's conclusions about consumer expectations—i.e., whether consumer expectations about self-cleaning capabilities are realistic. ECF 149, PgID 26305. Second, they criticize the Report for not addressing Dr. Simonson's assumption that AquaLift's self-cleaning feature can be isolated for the price premium damages analysis. *Id.* at 26307. Third, they challenge the Report's conclusions about the mocked-up Home Depot advertisement and Dr. Simonson's testing of "pyrolytic self-clean" instead of "self-clean." *Id.* at 26308.

a. *Plaintiffs' Objection Regarding Dr. Simonson's Conclusions About Consumer Expectations*

Plaintiffs argue that Dr. Simonson was not qualified to conclude that consumers had unrealistic or inaccurate perceptions of self-cleaning effectiveness

---

[6] The verbatim responses are not located on the docket. *See* ECF 91-22 (not containing Exhibit J). Plaintiffs possess them, however, as evidenced by their sampling of the verbatim responses. *See* ECF 110-4.

because he does not have a technical background and did not conduct any technical tests about the ovens' self-cleaning ability. *Id.* at 26305. They criticize Dr. Simonson for relying on too few documents in determining that there was a discrepancy in consumer expectations of ovens' self-cleaning effectiveness.

Dr. Simonson has extensive expertise in consumer behavior and consumer research. *See* ECF 91-22, PgID 11644, 11647 (under seal). He is therefore qualified to measure and observe consumers' perceptions and expectations about the effectiveness of ovens' self-cleaning feature. Plaintiffs are therefore arguing that he cannot opine on any difference or discrepancy between consumer expectations and reality because he did not conduct technical tests on the ovens to determine a realistic baseline.

But, in forming his opinion, Dr. Simonson not only reviewed another manufacturer's manual for its pyrolytic self-cleaning oven but also studied Defendant's documents detailing the process of cleaning an AquaLift oven. *See* ECF 91-22, PgID 11713 ("Range Care" for AquaLift oven) (under seal); *id.* at 11714 ("Oven Cleaning Quick Reference Guide" for AquaLift oven) (under seal)[7]; *id.* at 11966–67 ("Care and Maintenance" for another manufacturer's oven) (under seal). Dr.

_____

[7] The AquaLift "Range Care" sheet instructs the user to "Remove the residual water and loosened soils with a sponge or cloth immediately after the Clean cycle is complete." ECF 91-22, PgID 11713 (under seal). It provides further manual instructions "if any soils remain," and recommends running "an additional Clean cycle for stubborn soils." *Id.* (under seal). Similarly, the "Oven Cleaning Quick Reference Guide" recommended removing soils with a sponge or soft dry cloth after the cycle is complete and removing remaining soils with a "non-scratch scrubbing sponge or plastic scraper." *Id.* at 11714 (under seal).

Simonson remarked that the documents indicated that significant user involvement is required to run a self-cleaning cycle effectively. *Id.* at 11710 (under seal). According to his survey, however, many consumers instead believed that the ovens required no or minimal involvement. *Id.* (under seal). Dr. Simonson thus based his opinions upon sufficient facts and data—his survey results and Defendant's product user guides and instructions. The documents are sufficiently reliable and relevant to his opinions about consumer expectations. His opinions about a discrepancy in consumer expectations of ovens' self-cleaning effectiveness are therefore admissible. The Court will overrule Plaintiffs' objection.

### b. *Plaintiffs' Objection Regarding Dr. Simonson's Assumption that AquaLift Self-Clean is Not a Standalone Product Feature*

Plaintiffs argue that Dr. Simonson failed to consider evidence that AquaLift self-clean is an isolated product feature. ECF 149, PgID 26307. They criticize him for relying on the deposition of Defendant's general manager and a small subset of documents. *Id.* at 26308.

Dr. Simonson challenged Mr. Weir for treating AquaLift self-clean as an isolated product feature. Dr. Simonson noted,

> [T]he AquaLift feature was offered on specific models that tended to have a higher-end feature set and which also were associated with distinctive aesthetic/appearance characteristics . . . (e.g., a larger window in the oven door and a larger cooking cavity compared to other models with a pyrolytic self-cleaning feature that were sold before and during the time when the subject ovens were introduced).

ECF 91-22, PgID 11686–87 (under seal). Dr. Simonson based this statement on deposition testimony and pertinent product-related documents. *See id.* at 11687,

11731–11737 (under seal). Dr. Simonson's assumption, then, is rooted in sufficient facts and data to be reliable. *See* Fed. R. Evid. 702(b). Admissibility of Dr. Simonson's opinion does not turn on whether the AquaLift self-clean feature is actually isolatable as an economic matter. The Court will overrule Plaintiffs' objection.

### c. *Plaintiffs' Objection Regarding Dr. Simonson's Use of a Modified Home Depot Advertisement and Dr. Simonson's Survey of "Pyrolytic Self-Clean Technology" Instead of "Self-Clean"*

Plaintiffs renew their arguments that Dr. Simonson's opinions are unreliable because his survey used a modified Home Depot advertisement and because it asked respondents the meaning of "pyrolytic self-clean" instead of "self-clean" technology.

First, Plaintiffs argue that the modification of the advertisement—which added "AquaLift" before "self-clean"—changed the prominence of the terms in the advertisement. ECF 149, PgID 26309. They aver that the modifications misled respondents to believe they were viewing a real advertisement—because it was represented as a real advertisement—and confused respondents as to the meaning of "self-clean." *Id.* at 26310.

Dr. Simonson's modification of the advertisement was minor and was not so removed from reality as to render his opinions unreliable. Dr. Simonson left most of the advertisement unchanged. *See* ECF 122, PgID 22946. For example, Dr. Simonson's mocked-up advertisement included actual price information, oven dimensions, oven pictures, and several bulleted oven features—of which AquaLift was only one. *See id.* at 22944–45. Plaintiffs can plausibly attack Dr. Simonson's survey design for not utilizing an original advertisement in addition to the mocked-up and control advertisements. But the criticisms Plaintiffs raise go to the weight of

his opinion and not its admissibility. Dr. Simonson's modifications are not so removed from marketplace reality as to render his opinions from the survey inadmissible. *See Wells Fargo*, 293 F. Supp. 2d at 766.[8]

Second, Plaintiffs argue that Dr. Simonson's testing of the meaning of "pyrolytic self-cleaning" did not capture consumers' understanding of "self-cleaning," because testing the meaning of "pyrolytic self-cleaning" (1) was irrelevant to the case or Plaintiffs' allegations and (2) confused respondents. ECF 149, PgID 26312. They argue that he should have provided context for the association between "pyrolytic" and "self-cleaning." ECF 110, PgID 21176.

Testing the meaning of "pyrolytic self-cleaning" is not irrelevant to the case or Plaintiffs' allegations. Pyrolytic self-cleaning is a more traditional form of self-cleaning that is not present in AquaLift ovens.[9] *See* ECF 91-22, PgID 11649 (under seal). Dr. Simonson stated that he tested for "pyrolytic self-cleaning" as a control. *Id.* (under seal). He explained, "[I]f there is evidence that ovens that offer a traditional self-cleaning feature—'pyrolytic self-cleaning'—are similarly misunderstood, then we can attribute these misperceptions to consumers' limited understanding or

---

[8] Furthermore, the Court is not convinced by Plaintiffs' concern "with the fact that the survey specifically referred to the advertising shown to respondents as real or as it appears on the retailer web site." ECF 149, PgID 26310; *see also* ECF 110, PgID 21157. The control advertisement would have represented the same thing. But the control advertisement was modified, too—as it necessarily needed to be in order to serve as a control. Plaintiffs do not explain how a survey could have used a real advertisement while also providing a control advertisement.

[9] The term "pyrolytic self-cleaning" therefore necessarily excludes AquaLift self-cleaning, whereas the term "self-cleaning" can encompass both pyrolytic and AquaLift self-cleaning.

misperception of what the term 'self-cleaning' entails." *Id.* at 11655 (under seal). Dr. Simonson found that consumers had unrealistic expectations of self-cleaning features. *Id.* at 11715 (under seal). Testing whether consumers misunderstood "pyrolytic self-cleaning" was therefore relevant to whether consumers misperceived the AquaLift self-cleaning feature specifically or self-cleaning features generally.

And to the extent that Plaintiffs argue that respondents do not know what "pyrolytic" meant or were confused by it, the confusion could equally be shared by actual consumers. Thus, the lack of definition of "pyrolytic" does not render Dr. Simonson's survey conclusions unreliable. Plaintiffs can plausibly criticize Dr. Simonson, for example, for not presenting one group of respondents with the simple "self-cleaning" term instead of "pyrolytic self-cleaning," but these methodological arguments go to the weight of his opinion and not its admissibility.

The Court therefore overrules Plaintiffs' objections to Mr. Sharkey's conclusions regarding Dr. Simonson's opinions. It will deny Plaintiffs' motion to strike the opinions of Dr. Simonson.

III.    Plaintiffs' Motion to Strike Dr. Ugone's Opinions

Plaintiffs move to strike Dr. Ugone's opinions on six grounds under Federal Rule of Evidence 702 and *Daubert*. First, they maintain that Dr. Ugone is predisposed against classwide damages or a common proof approach. ECF 111, PgID 21688. Second, they argue that Dr. Ugone failed to conduct his own conjoint survey and is not qualified to do so. *Id.* at 21690–91. Third, they point to Dr. Ugone's unfamiliarity with Sawtooth Software, which Mr. Weir employed. *Id.* at 21693. Fourth, they

challenge Dr. Ugone's testimony that the AquaLift self-cleaning product feature was not isolatable from other enhancements. *Id.* at 21695. Fifth, they criticize Dr. Ugone for not performing independent conjoint or hedonic regression analyses. *Id.* at 21700. And sixth, they ask the Court to exclude as a legal conclusion Dr. Ugone's testimony that there is no common evidence to support class certification. *Id.* at 21702.

Mr. Sharkey categorized Plaintiffs' arguments into two groups: (1) those attacking Dr. Ugone for his biases, and (2) those challenging Dr. Ugone's qualifications to provide a rebuttal opinion to a conjoint analysis or hedonic regression damages calculation. ECF 142, PgID 26236. Mr. Sharkey recommended denying Plaintiffs' motion. He explained that any predisposition against classwide damages goes only to the weight, and not the admissibility, of the expert's opinion. *Id.* at 26236–37. He also noted that Dr. Ugone's education and experience in economics and his critical analysis of Mr. Weir's report demonstrated the requisite amount of specialized knowledge. *Id.* at 26237. Finally, Mr. Sharkey recommended that Dr. Ugone did not need to conduct his own conjoint analysis or hedonic regression for his criticism of Mr. Weir's analysis to be admissible. *Id.*

Plaintiffs raise four objections to Mr. Sharkey's recommendations regarding Dr. Ugone's testimony. First, they contest Dr. Ugone's assumption that the AquaLift feature cannot be isolated from other oven enhancements. ECF 149, PgID 26297. Second, they renew their request for the Court to strike as legal conclusions Dr. Ugone's position that individualized inquiry was necessary. *Id.* at 26299. Third, they challenge Dr. Ugone's "unrivaled bias against classwide damages," which they aver

the Report understated. *Id.* at 26300. And fourth, they criticize Dr. Ugone's ability or qualifications to perform or critique a conjoint analysis. *Id.* at 26303.

a. *Plaintiffs' Objection Regarding Dr. Ugone's Opinion on the Isolatability of the AquaLift Feature*

Plaintiffs object that the Report did not address their arguments regarding Dr. Ugone's conclusion that the AquaLift feature was not isolatable. ECF 149, PgID 26297.

The Court is not persuaded by Plaintiffs' arguments that attack Dr. Ugone for ignoring Defendant's advertisements which suggest that AquaLift was a standalone feature. *See* ECF 111, PgID 21696–98 (excerpts of Defendant's product information pages). Dr. Ugone did not opine that AquaLift and other benefits were never marketed together; instead, he opined that they were positively correlated and had a positive impact on oven prices. *See* ECF 121, PgID 22385–86; ECF 91-32, PgID 12247–49 (under seal). Dr. Ugone concluded that Mr. Weir's "coefficient on AquaLift captured the additional value attributable to the cleaning features and the additional value attributable to the non-cleaning features (for which Named Plaintiffs are not claiming damages)." ECF 91-32, PgID 12249 (under seal). The existence of webpages marketing AquaLift and other benefits together does not render Dr. Ugone's conclusion unreliable.

To the extent Plaintiffs argue that Dr. Ugone relied on too narrow a set of documents in assuming that the AquaLift feature was not isolatable, the argument is unconvincing. Dr. Ugone observed that AquaLift ovens had features outside of self-cleaning, such as larger capacities, a smooth door interior, larger windows, a better

cooktop burner layout, and the ability to use the stovetop during the cleaning cycle. *Id.* at 12247 (under seal). In making the observations about the coexistence of AquaLift and other benefits, Dr. Ugone relied upon deposition testimony of Defendant's employees and documentary evidence. *Id.* at 12246–48 (under seal). He also relied upon consumer insight and survey documents identifying key purchase drivers or factors influencing price. *Id.* at 12247–48; ECF 91-34, PgID 12304–08 (under seal). Dr. Ugone relied upon sufficient facts and data in concluding that Mr. Weir failed to isolate AquaLift from other benefits. His opinion is therefore admissible.

   *b. Plaintiffs' Objection Regarding Dr. Ugone's Conclusion that Individual Inquiry is Necessary*

Plaintiffs object that the Report did not explicitly analyze their argument that Dr. Ugone's conclusion that individualized inquiry was needed should be stricken as a legal conclusion. ECF 149, PgID 26299. They take issue with Dr. Ugone's conclusion that the individual inquiries—such as consumer expectations, purchase drivers, and consumers' satisfaction with AquaLift's cleaning ability—are needed to quantify the consumers' injuries. ECF 111, PgID 21703.

"[A] witness may not testify to a legal conclusion." *Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 322 (6th Cir. 2014) (citation omitted). But "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). An expert testifying about factual issues may state opinions "that suggest the answer to the ultimate issue[.]" *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994).

Dr. Ugone made an economic conclusion, not a legal conclusion, about whether individualized inquiry was necessary. Mr. Weir had calculated an average price premium across the putative class. Dr. Ugone criticized Mr. Weir for assuming that all individuals in the group experienced the effect captured by the average. He opined that Mr. Weir's calculated average did not account for real economic variations among individual consumers. ECF 91-32, PgID 12225 (under seal). Dr. Ugone's position on whether individualized inquiry was necessary thus spoke to "the quantum of [the] injury" and the "economic nexus" between the claimed harm and the alleged misrepresentation. ECF 91-34, PgID 12304–05 (under seal). Dr. Ugone's expert opinion was economic in nature and did not reach the ultimate legal conclusion. The Court still must determine, as part of its Rule 23 analysis, whether individual inquiries are necessary for class certification as a legal matter. The Court will not strike Dr. Ugone's opinion that individualized inquiry is needed.

### c. *Plaintiffs' Objection Regarding Dr. Ugone's Bias*

Plaintiffs object to Mr. Sharkey's conclusion that Dr. Ugone's alleged bias was not disqualifying, arguing that the Report understated Dr. Ugone's bias. ECF 149, PgID 26300.

Whether Dr. Ugone is unlikely to embrace classwide damages does not render his testimony inadmissible. Allegations of an expert's bias go to credibility, not admissibility. *See Adams v. Lab. Corp. of Am.*, 760 F.3d 1322, 1332 (11th Cir. 2014) (citing *United States v. Abonce-Barrera*, 257 F.3d 959, 965 (9th Cir. 2001)); *DiCarlo v. Keller Ladders, Inc.*, 211 F.3d 465, 468 (8th Cir. 2000)); *Cmtys. for Equity v. Mich.*

*High Sch. Athletic Ass'n*, No. 1:98-cv-479, 2007 WL 5830967, at *3 (W.D. Mich. May 2, 2007). Dr. Ugone did not unquestioningly oppose classwide damages. Instead, Dr. Ugone's response to Mr. Weir's testimony applied his educated understanding of economic principles to the facts and theory of the case. Dr. Ugone has an extensive background in economics, so he has sufficient specialized knowledge to assist the finders of fact in deciding the issues of the case. *Kumho Tire*, 526 U.S. at 148–49. Plaintiffs' attacks on Dr. Ugone for his predisposition against classwide damages go to the weight of his opinions. The Court will overrule their objection.

### d. Plaintiffs' Objections Regarding Absence of Conjoint Analysis by Dr. Ugone

Plaintiffs object that Dr. Ugone could not testify as to his expertise in survey-taking and market simulation and therefore could not opine pertaining to conjoint analysis. ECF 149, PgID 26303.

But Dr. Ugone's response to Mr. Weir's price premium calculation presented essentially economic criticisms. Dr. Ugone is qualified to testify about economics, so his economic critiques of Mr. Weir's opinions are admissible. For example, Dr. Ugone criticized Mr. Weir's methodology for failing to account fully for supply-side factors, such as including competitors' products, and to predict market prices. ECF 91-34, PgID 12293, 12298 (under seal).

To the extent Dr. Ugone attacked the design or administration of Mr. Weir's conjoint survey, he did not do so from a consumer survey design perspective. Instead, he questioned the economic validity of Mr. Weir's survey. For example, Dr. Ugone argued that Mr. Weir's survey omitted attributes that were relevant to consumers

purchasing ovens and predictive of the prices consumers were willing to pay. ECF 91-33, PgID 12272–75 (under seal). Dr. Ugone also argued that the survey's choice sets—including prices—did not represent realistic product choices on the market. *Id.* at 12279 (under seal). Those criticisms are of economic matters.

And although Dr. Ugone may not be an expert in using Sawtooth, he raised centrally economic concerns with Mr. Weir's use of it. For example, Dr. Ugone noted that Sawtooth's market simulation "assumes an 'objective of maintaining' a constant market share in a competitive market setting" and criticized it for not yielding values representing "profit-maximizing prices and output levels." ECF 91-34, PgID at 12295–96. Dr. Ugone relied upon the software documentation to conclude that Mr. Weir measured willingness-to-pay and not price premium and that Mr. Weir interpreted his market simulation as market equilibrium. *Id.* at 12300–03. Dr. Ugone thus provided fundamentally economic observations about Mr. Weir's conclusions and methodology. Dr. Ugone's lack of direct experience in conducting consumer surveys or utilizing Sawtooth software goes to the weight of his opinions and not their admissibility. The Court will overrule Plaintiffs' objection and deny their motion to strike Dr. Ugone's opinions.

IV.    <u>Plaintiffs' Motion to Strike Dr. Rauschenberger's Opinions</u>

Plaintiffs move to strike eight of Dr. Rauschenberger's nine conclusions—all except for his eighth conclusion that Defendant's user instructions were well-designed and easy to follow. *See* ECF 112, PgID 21964. Plaintiffs' motion also criticized human-factors evidence as being highly subjective. *Id.* at 21949. But they

conceded in their reply brief that they did not intend to attack the entire human-factors field. ECF 137, PgID 26041–42 (under seal).

Plaintiffs argue that Dr. Rauschenberger's first conclusion—regarding the complexity of the appliance purchase decisions—is not relevant to the allegations of their complaint or their motion for class certification. ECF 112, PgID 21951. They challenge his second conclusion—about individual expectations of "clean"—for being a legal conclusion, for not responding to Plaintiffs' allegations, and for ignoring documentary evidence. *Id.* at 21952–93. Plaintiffs argue that Dr. Rauschenberger is not qualified to issue his third conclusion comparing cleaning performance among AquaLift, standard, and pyrolytic ovens. *Id.* at 21954. They criticize his fourth conclusion—regarding consumers' unrealistic expectations of self-cleaning oven performance—for not assisting the trier of fact, for ignoring evidence (such as Defendant's advertising and marketing), and for Dr. Rauschenberger's lack of expertise in survey design. *Id.* at 21956–57. Plaintiffs argue that his fifth conclusion—that consumers had various expectations about AquaLift technology—is irrelevant, outside of his expertise, and contrary to evidence (such as Plaintiffs' testimony). *Id.* at 21958–59. They challenge his sixth conclusion—observing the tidiness of Plaintiffs' homes and attributing Plaintiffs' dissatisfaction with their ovens to misuse—for irrelevance, failing to reach actual conclusions, lack of objectiveness, and lack of recognized methodology. *Id.* at 21959–63. They argue that his seventh conclusion—that historical oven models require manual interaction—was not relevant to Plaintiffs' allegations or testimony. *Id.* at 21963. And they criticize his

ninth conclusion—asserting that buyers of AquaLift ovens are not uniformly dissatisfied with the ovens—for relying only on Defendant-provided documents and for being unreliable, as Dr. Rauschenberger had not independently tested consumers' satisfaction levels. *Id.* at 21964–65.

Mr. Sharkey recommended that the Court deny Plaintiffs' motion to strike Dr. Rauschenberger's opinions. ECF 142, PgID 26244.

He determined that Dr. Rauschenberger's first and second conclusions were sufficiently relevant. The diversity of factors that drive appliance purchases and consumer thinking could be relevant to Plaintiffs' consumer-protection and warranty claims, their benefit-of-the-bargain element of their warranty claims, and state-of-mind element of their unjust-enrichment claims, and classwide damages. *Id.* at 26239–40.

Mr. Sharkey found that Dr. Rauschenberger was sufficiently qualified to issue his third conclusion about cleaning times for comparable ovens, because his testing and the conclusion were relevant to his training and experience in the human-factors field of psychology. *Id.* at 26241–42. As Plaintiffs recognize, Dr. Rauschenberger testified that he performed his side-by-side comparison test to determine what a consumer would do with different ovens under "naturalistic circumstances." ECF 112, PgID 21954 (citing ECF 112-2, PgID 21975–76 (Dr. Rauschenberger's deposition testimony)).

Mr. Sharkey concluded that Dr. Rauschenberger's fourth and fifth conclusions were reliable and relevant. ECF 142, PgID 26240. In opining that consumers had

differing expectations of self-cleaning ovens and AquaLift technology, Dr. Rauschenberger had reviewed publicly available product literature, peer-reviewed scientific publications, Defendant's internal consumer research, Plaintiffs' deposition testimony, and product rankings. *Id.*; *see also* 91-11, PgID 11295–303 (under seal). Dr. Rauschenberger applied his background in psychology to these materials to form his conclusions about human behavior and expectations. ECF 142, PgID 26240–41.

Mr. Sharkey reported that the sixth conclusion—that Plaintiffs' misuse of their ovens led to their dissatisfaction—was reliable in principles and methodology. *Id.* at 26243. Dr. Rauschenberger followed an inspection protocol for Plaintiffs' ovens, cited specific facts from his inspections, and reviewed literature, Plaintiffs' deposition testimony, and Defendant's instructions on how to use AquaLift. *Id.*

Mr. Sharkey also found that Dr. Rauschenberger's seventh conclusion—that historical "self-cleaning" ovens required manual cleaning—was relevant, because the conclusion could speak to Plaintiffs' damages theory. *Id.* at 26241.

Finally, Mr. Sharkey concluded that Dr. Rauschenberger's ninth conclusion— that AquaLift oven purchasers were not uniformly dissatisfied with their ovens—was sufficiently reliable. *Id.* at 26244. Dr. Rauschenberger had reviewed call-center data. *Id.* Furthermore, reliance by an expert on documents provided by their clients does not render the opinions unreliable. *Id.*

Plaintiffs object to the Report by asking the Court to strike Dr. Rauschenberger's opinions arising from his side-by-side testing of the ovens— namely, his third conclusion. ECF 149, PgID 26314. Plaintiffs criticize Dr.

Rauschenberger's methodology for using Defendant's preferred testing method—the "stripe test"—instead of a more "objective" and "impartial" testing method—such as the *Consumer Reports* "monster mash" test. *Id.* at 26314–15. They also challenge Dr. Rauschenberger for not having experience running self-cleaning cycles and for not seeking expertise and background knowledge on consumers' typical cleaning methods. *Id.* at 26315–16. Plaintiffs argue that the Report did not analyze whether Dr. Rauschenberger's methodology was biased. *Id.* at 26316.

  *a. Plaintiffs' Objection Regarding Dr. Rauschenberger's Methodology*

  Plaintiffs' arguments about Dr. Rauschenberger's use of the stripe test go to the weight, not the admissibility, of his conclusion. The stripe test is sufficiently scientifically reliable. It is a "standardized" and "reproducible" method of measuring the cleaning performance of ovens and "simulate[s] reasonable levels of soiling with different foodstuffs that the average consumer may . . . encounter when cleaning his or her oven." ECF 91-11, PgID 11262–63 (under seal). Dr. Rauschenberger used a technique that is testable and scientifically valid. *See Glaser v. Thompson Med. Co.*, 32 F.3d 969, 972 (6th Cir. 1994) (citation omitted).

  Plaintiffs' concern about the test being Defendant's recommended testing protocol goes to weight, not admissibility.[10] Dr. Rauschenberger even explained why he did not use the *Consumer Reports* method. The *Consumer Reports* method involved what he considered "extreme test conditions"—"coating the entire oven cavity with

---

[10] Similarly, Plaintiffs' argument that Dr. Rauschenberger's use of Defendant's testing protocol is biased goes to the weight of his opinion. *See* ECF 112, PgID 21955; ECF 149, PgID 26316.

an extreme load" of soils. ECF 91-11, PgID 11306 (under seal); *see also* ECF 112-2, PgID 21976 (Dr. Rauschenberger's deposition testimony). Even though he did not use the *Consumer Reports* method, he did utilize "monster mash" soil material in his stripe test. ECF 91-11, PgID 11263 (under seal). In any event, Dr. Rauschenberger is not required to use every available testing method for his conclusions to be admissible. The Court will overrule Plaintiffs' objection on this ground.

b. *Plaintiffs' Objection Regarding Dr. Rauschenberger's Expertise*

Plaintiffs' argument that Dr. Rauschenberger lacks sufficient expertise to render his third conclusion is not convincing. Plaintiffs have already acknowledged that Dr. Rauschenberger's comparison test was meant to determine what a consumer would do with different ovens under "naturalistic circumstances." ECF 112, PgID 21954 (citing ECF 112-2, PgID 21975–76 (Dr. Rauschenberger's deposition testimony)). Furthermore, Dr. Rauschenberger explained how he followed each machine's documentation on recommended cleaning practices. ECF 91-11, PgID 11260 (under seal). Recommended cleaning practices presumably would inform consumers cleaning an oven under "naturalistic circumstances." The test—and Dr. Rauschenberger's third conclusion—is therefore tied to his expertise in human-factors psychology and is relevant to Dr. Rauschenberger's other conclusions interpreting Defendant's materials about AquaLift technology.

Dr. Rauschenberger has valid psychological expertise and his testimony can assist the trier of fact. *See* Fed. R. Evid. 702. The value of his human-factors expertise—and asserted lack of cleaning experience—in a cleaning experiment goes

to the weight, not the admissibility, of his opinion. The Court will overrule Plaintiffs'

objection and deny Plaintiffs' motion to strike Dr. Rauschenberger's opinions.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Plaintiffs' objections [149] and

Defendant's objections [150] to the discovery master's report and recommendation are

**OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant's motion to strike the opinions

of Colin Weir [96] and Plaintiffs' motions to strike the opinions of Itamar Simonson

[110], Keith Ugone [111], and Robert Rauschenberger [112] are **DENIED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: February 28, 2019

I hereby certify that a copy of the foregoing document was served upon the parties
and/or counsel of record on February 28, 2019, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager