UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOBY SCHECHNER, et al.,

    Plaintiffs,

v.

WHIRLPOOL CORPORATION,

    Defendant.
_____/

Case No. 2:16-cv-12409

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING
PLAINTIFFS' MOTION TO CERTIFY THE CLASS [71, 83]**

On April 16, 2018, Plaintiffs filed a motion to certify the class. ECF 71, 83 (under seal). In support of their motion, Plaintiffs offered expert testimony. *See* ECF 87-9. On May 31, 2018, Defendant Whirlpool Corporation filed its response. ECF 91 (under seal). On July 9, 2018, Plaintiffs filed their sealed reply. ECF 107 (under seal). The Court has reviewed the briefs and finds that a hearing is unnecessary. E.D. Mich. LR 7.1(f). For the reasons below, the Court will deny Plaintiffs' motion.

**BACKGROUND**

I.   Procedural History

On August 19, 2016, Plaintiffs Toby Schechner, Barbara Barnes, Laura Bliss, Kathryn Limpede, Louise Miljenovic, Candace Oliarny, Beverly Simmons, and Richard and Mary Ellen Thome[1] filed their amended putative class-action complaint against Defendant. ECF 5. Plaintiffs allege that Defendant's marketing and

---

[1] Kathleen Jordan voluntarily dismissed her case without prejudice. *See* ECF 25.

1

advertising for its ovens with AquaLift self-cleaning technology ("AquaLift ovens") were false, deceptive, and misleading because the ovens did not clean "as advertised." *Id.* at 68.

On October 18, 2016, Defendant filed a motion to partially dismiss Plaintiffs' complaint. ECF 11. The parties briefed the motion and the Court held a hearing. ECF 23, 24, 26. On February 14, 2017, the Court granted in part and denied in part Defendant's motion. ECF 27. The Court detailed which claims survived the motion to dismiss: Simmons's New Mexico and Thomes' Arizona unjust enrichment claims; Schechner and Barnes' Florida Deceptive and Unfair Trade Practices claims; and Miljenovic's New Jersey Consumer Fraud Act claim. *See id.* at 881–82. Additionally, several claims not addressed by the motion to dismiss remained: Bliss and Miljenovic's Magnuson-Moss Warranty Act claims; Limpede, Bliss, and Miljenovic's UCC Breach of Express Warranty Claims; Bliss and Miljenovic's UCC Breach of Implied Warranty of Merchantability Claims; Bliss's Michigan Consumer Protection Act claim; and Schechner and Barnes's Unjust Enrichment Claims. *Compare* ECF 11, PgID 288 (Defendant's partial motion to dismiss) *with* ECF 5, PgID 115–29 (Plaintiffs' complaint).

On April 16, 2018, Plaintiffs filed a motion to certify the class. ECF 71–82, 83–87 (under seal). In support of their motion, Plaintiffs offered expert testimony. *See* ECF 87-9. On May 31, 2018, Defendant filed its response. ECF 91 (under seal). Defendant offered testimony of its own experts. *See* ECF 168, PgID 26789 (describing Defendant's experts). The parties then filed motions to strike the testimonies of each

2

other's experts. ECF 96 (under seal), 110–12. The Court then appointed a special master to review the motions to strike. ECF 125. On February 28, 2019, the Court resolved the parties' objections to the special master's report and resolved their motions to strike certain experts' opinions. ECF 168.

II.  Factual Background

Plaintiffs' claims "will rise or fall with the answer to one question: Do Whirlpool's ovens equipped with 'Aqualift Self-Clean Technology' ('AquaLift') work as advertised?" ECF 83, PgID 9230 (under seal). Plaintiffs allege that Defendant's marketing convinced "consumers that AquaLift Ovens would clean oven cavities without manual labor in a way that was equal to or better than traditional self-cleaning ovens." *Id.* at 9231 (under seal).[2] Defendant believes that "Plaintiffs argue that consumers left commonsense at home and thought they were buying an oven that magically cleaned itself." ECF 91, PgID 11027 (under seal).

Defendant created AquaLift self-cleaning technology as an alternative to pyrolytic ovens. *Id.* at 11023–24 (under seal). AquaLift uses water, a lower temperature, a shorter cleaning cycle, and special enamel coating to facilitate the alternative cleaning process. *Id.* at 11024 (under seal). AquaLift also permitted Defendant to create ovens with "larger cooking cavities and larger door windows." *Id.* at 11025 (under seal).

---

[2] "Traditional self-cleaning ovens" are "pyrolytic ovens" that used "high heat or 'pyrolysis'" to automatically loosen and remove dirt or soil from the interior of an oven. ECF 83, PgID 9231–32 (under seal).

3

During product development, Defendant conducted tests "to show that after the AquaLift cycle was complete, it would take consumers 20 minutes to manually clean the oven." ECF 83, PgID 9234 (under seal) (emphasis omitted). Initial consumer feedback revealed negative experiences with AquaLift's self-cleaning capabilities. *See id.* at 9234–36 (under seal); ECF 91, PgID 11026 (under seal). Thus, Defendant revised the AquaLift system and the literature provided to consumers. ECF 91, PgID 11026 (under seal).

Defendant understood that its AquaLift ovens required manual cleaning—as do traditional self-cleaning ovens—but still emphasized the feature in its marketing campaign. ECF 83, PgID 9236–38 (under seal); ECF 91, PgID 11028 (under seal) (noting that "[e]*very oven requires some manual work to clean it*"); *id.* (under seal) (explaining that Defendant advertised the AquaLift ovens as an alternative to traditional self-cleaning ovens). Once Defendant brought AquaLift ovens to market, it directed the advertising campaign and relied on digital and in-store advertisements and sales representatives' pitches to promote the product. ECF 83, PgID 9239–42 (under seal).

Plaintiffs allege that after AquaLift was on the market, Defendant struggled to secure positive reviews from trade publications and to chart a path forward. *Id.* at 9243–47 (under seal). They further allege that consumers and Whirlpool employees expressed discontent with the AquaLift feature. *Id.* at 9247–49 (under seal). But Plaintiffs did not review the negative trade reviews, and several explained that it would not have impacted their purchase of the AquaLift oven. ECF 91, PgID 11033

4

(under seal). Defendant maintains that most AquaLift oven owners "showed high product satisfaction" and that its call center received minimal complaints. *Id.* at 11035. And Defendant sought to remedy complaining consumers' concerns. ECF 83, PgID 9250–51 (under seal); ECF 91, PgID 11036 (under seal).

Plaintiffs allege uniform harm because "they would not have purchased an AquaLift Oven had they known it was not self-cleaning and/or would have had the power to decide whether to accept the purported trade-offs that Whirlpool claims are associated with its new oven cleaning . . . technology." ECF 83, PgID 9252 (under seal). "Each Plaintiff . . . would not have purchased an AquaLift Oven had they known about the 'elbow grease' required to use the cleaning feature." *Id.* at 9253 (under seal). The damage is either "the purchase price of" an AquaLift Oven or "the cost of the nonexistent or absent self-cleaning attribute." *Id.* at 9252 (under seal). Moreover, Plaintiffs allege that the AquaLift ovens demand "more manual labor than was represented in the products' advertising." *Id.* (under seal).

## LEGAL STANDARD

Civil Rule 23 governs class action lawsuits. A matter may proceed as a class action in the name of the representative parties if

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). A class must meet the above prerequisites and also meet one of the

5

requirements identified by Rule 23(b). *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)). Class actions are an exception to the norm, and a plaintiff bears the burden to show that class certification is appropriate. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012) (citations omitted).

Federal courts possess "broad discretion in deciding whether to certify a class," but must do so "within the framework of Rule 23." *Am. Med. Sys.*, 75 F.3d at 1079 (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). Courts must conduct a rigorous analysis into whether the party seeking certification meets Rule 23's prerequisites. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

The rigorous analysis may require the Court "to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). It would be "clearly wrong" for the Court to conduct "a 'limited factual inquiry' assuming [Plaintiffs'] allegations to be true." *Gooch v. Life Invs. Ins. of Am.*, 672 F.3d 402, 417 (6th Cir. 2012) (citing *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 560 (6th Cir. 2007)). "[O]rdinarily the determination should be predicated on more information than the pleadings will provide." *Am. Med. Sys.*, 75 F.3d at 1079 (quoting *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974)). The Court, therefore, must explore the nature of the alleged harms and the evidence supporting them. *Cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (recognizing that vetting a proposed class necessarily entails "some overlap with the merits" because it

"generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action") (internal quotations omitted).

## DISCUSSION

Plaintiffs propose a nationwide class of "[a]ll persons who purchased a Whirlpool, Maytag, KitchenAid, or Jenn-Air oven equipped with AquaLift in the United States" and state-based classes for purchases made in six states. ECF 5, PgID 110–11. "Plaintiffs seek certification of five [sic] state Classes under the laws of their respective states of Michigan, Florida, New Jersey, Arizona, Idaho, and New Mexico." ECF 83, PgID 9254 (under seal) (Plaintiffs list six states, not five).

I. Rule 23(a) Analysis

Plaintiffs fail to meet the requirements of Rule 23(a) because they fail the commonality and typicality requirements. Rule 23(a)'s "commonality and typicality requirements . . . tend to merge." *Dukes*, 564 U.S. at 349 n.5 (quoting *Falcon*, 457 U.S. at 157–58 n.13) (addressing the commonality requirement and declining to address typicality because the class lacked commonality).

A. *Numerosity.*

Neither party suggests that the numerosity requirement is not met. *See generally* ECF 83 (under seal), ECF 91 (under seal). The proposed classes include all purchasers of Whirlpool, Maytag, KitchenAid, or Jenn-Air ovens with AquaLift during an indeterminate period. More than 720 consumers have contacted Plaintiffs' counsel regarding Defendant's AquaLift ovens. ECF 174, PgID 26862. With the

7

proposed definition in mind and the parties' implicit concession of numerosity, the Court may safely assume that the first element is satisfied.

    B.    *Commonality.*

Rule 23(a)(2) provides that class action certification is appropriate only if there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality looks to the questions of law or fact "among the class members generally," 1 Newberg on Class Actions § 3:26 (5th ed. 2018) and seeks "to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)) (emphasis omitted). A common question of law or fact exists when it can be shown that all class members suffered the same injury. *Dukes*, 563 U.S. at 349–50. Class claims must depend upon a common contention "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

Plaintiffs argue that three questions of law and fact demonstrate commonality: (1) whether Defendant represented AquaLift Ovens to be "self-cleaning," (2) whether the "self-clean" representation was misleading, and (3) whether the misrepresentation caused damages. ECF 71, PgID 6214. That is, they argue that Defendant advertised the Ovens in a way that is common to all putative class members.

Defendant counters that Plaintiffs cannot prove commonality because: "(1) there is no industry-accepted or regulatory definition of 'self-cleaning oven'; (2)

8

consumers have vastly different understandings of the phrases 'AquaLift® Self-Cleaning Technology' and 'self-cleaning oven'; and (3) whether Aqualift technology works 'as advertised' depends on whether the Oven owner follows Whirlpool's user instructions." ECF 91, PgID 11022 (under seal). Defendant further argues that—even if commonality existed—putative class members purchased their AquaLift ovens for reasons other than its self-cleaning feature, paid little attention to the self-cleaning technology, or lacked a common understanding of AquaLift's self-cleaning capabilities. *Id.* (under seal).

False advertising cases ask whether companies sold products using advertising that misleads the reasonable consumer; "[w]hether consumers were satisfied with the product is irrelevant." *Rikos v. Proctor & Gamble Co.*, 799 F.3d 497, 507 (6th Cir. 2015) (citations omitted).

Plaintiffs' theory of liability of how Defendant's representation is misleading is that Defendant's AquaLift ovens actually have little to no self-cleaning ability. ECF 82-11, PgID 8907 (declaration of Plaintiff's expert Mr. Colin Weir). Allegedly, manual labor is needed to "clean the oven cavity, (particularly the sides, back, and the door)" and the manual labor requirement was "not disclosed to consumers." *Id.* Under this theory, Defendant's advertising of the AquaLift ovens' self-cleaning feature is misleading because it does not clean as advertised even after following the directions. An oven that requires no manual labor to clean does not exist in the real world. ECF

9

91-22, PgID 11657 (under seal) (Dr. Simonson's report).[3] The liability inquiry necessarily implicates whether each consumer precisely followed the instructions for the self-clean feature, raising several individualized questions. *E.g., In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405 n.3 (S.D.N.Y. 2015).[4] Plaintiffs therefore do not meet the commonality requirement.

Alternatively, Plaintiffs could be arguing that Defendant's AquaLift ovens cannot be labelled "self-cleaning" ovens. But Plaintiffs do not show that the evidence can be resolved in one stroke. There is no regulatory- or industry-accepted definition of "self-cleaning oven." ECF 91, PgID 11037 (under seal). Plaintiffs' expert Dr. Kamins conducted a survey and found that respondents defined the term "self-cleaning" in the following ways:

---

[3] Pyrolytic ovens require substantial manual labor. ECF 91-11, PgID 11281, 11323 (under seal) (Dr. Rauschenberger's report).

[4] Plaintiffs in *Scotts EZ Seed* presented three theories of liability: (1) the seed did not grow grass at all; (2) the labeling statement "50% thicker with half the water" was false and misleading; and (3) the seed does not grow grass at half-water levels even if used according to directions on the package. "Defendants correctly contend this [third] theory of liability is replete with individualized questions, including whether the consumer watered at half-water rates or followed the instructions exactly." *Scotts EZ Seed*, 304 F.R.D. 403 n.3. Plaintiffs' theory here most closely matches the third theory in *Scotts EZ Seed*.

10

| Category of Definitions | Percentage of Respondents |
|---|---|
| "Cleans Itself, no need to do anything, just press button" | 48% |
| "Makes it easy to clean/minimal effort/just need to wipe" | 20% |
| "Burns off grease/grime/food splatter/dirt or turns food to ashes" | 19% |
| "Other" | 16% |
| "Cleans with high heat" | 8% |
| "No chemicals needed" | 6% |
| "High quality/high tech/good/smart oven" | 3% |
| "Brand name or retail store mentioned" | 3% |
| "Don't know" | 2% |

ECF 82-10, PgID 8875. Plaintiffs' expert shows varying definitions and expectations for the term "self-cleaning."[5] And some of the definitions—such as "Cleans with High Heat" or "Burns off Grease"—are inherently incompatible with AquaLift because they describe only traditional, pyrolytic self-cleaning. *Id.* at 8876. Similarly, respondents' expectations of the manual labor needed after running a "self-cleaning" cycle varied:

| Category of Responses | Percentage of Respondents |
|---|---|
| "Wipe interior (cloth, paper towel, rag) and/ or sweep ashes" | 54% |
| "Use product/cleaner (no clarification of effort needed)" | 18% |
| "Other" | 16% |
| "Remove/clean residue (no mention of effort)" | 7% |
| "Scrub/scrape interior (no mention of product)" | 2% |
| "scrub/scrape interior" | 2% |
| "Don't Know" | 1% |

---

[5] Plaintiffs' supplemental evidence does not counter the conclusion, since it reflects some circular definitions of "self cleaning." ECF 174-1. For example, one person said, "I purchased a self cleaning oven because I wanted a self cleaning oven." *Id.* at 174-1, PgID 26875. Meanwhile, other people acknowledged that they expected to use some manual labor. *Id.* at 26874.

11

*Id.* at PgID 8876–77. Without a commonly accepted or realistic understanding of "self-cleaning," Plaintiffs' claims that AquaLift self-cleaning ovens did not clean "as advertised" are not susceptible to resolution in one stroke.

    C.    *Typicality.*

Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a).

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct . . . . A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members.

*Sprague*, 133 F.3d at 399 (citation omitted). The test for typicality is not demanding; the interests and claims of the plaintiffs do not need to be identical. *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1988). A claim is not typical "when a plaintiff can prove his own claim but not necessarily have [proven anybody] else's claim." *Beattie*, 511 F.3d at 561.

Plaintiffs argue that typicality is satisfied because the Plaintiffs and putative class members were all injured in the same way: "they purchased a purportedly 'self-cleaning' oven that requires 'intensive' manual labor." ECF 83, PgID 9257 (under seal) (emphasis omitted).

Plaintiffs do not demonstrate typicality. In the absence of an industry-wide or commonly accepted definition of "self-cleaning," each of the Plaintiffs could have

12

different understandings of "self-clean" or "self-cleaning" as stated in Defendant's label.[6] As explained above, respondents to Dr. Kamins's survey had varying understandings of the term. ECF 82-10, PgID 8875.

And Plaintiff's theory of liability—that AquaLift ovens do not clean as advertised even after following the directions (*i.e.*, it "requires intensive manual labor," ECF 83, PgID 9257)—raises typicality concerns similar to the outlined commonality concerns. It implicates whether the consumers precisely followed the instructions for the self-clean feature and raises individualized questions.

Plaintiff's citation to *Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006), is inapposite. There, the "same defect," ECF 83, PgID 9257, across the class was a defective throttle body that caused the accelerator to stick. A mechanical defect causing a mechanical dysfunction is not the same as Plaintiffs' alleged defect, an oven that requires some manual labor to clean despite being labeled as "self-cleaning." The latter involves human factors much more than the former. Dr. Rauschenberger detailed the cleaning steps and instructions for three ovens. ECF 91-11, PgID 11260–81 (under seal). Dr. Rauschenberger opined that, from a human factors standpoint, Defendant's AquaLift user instructions were "clear and easy to follow," *id.* at 11282 (under seal), but there was variation in compliance with the instructions across the putative class, *see id.* at 11299–303 (describing variation in compliance among named

---

[6] There is also some variation in the customers' pre-purchase research, their exposure to Defendant's messaging, and their use of the AquaLift feature. *See, e.g.*, ECF 77-2, PgID 7400–03 (historical sampling of retailer messaging for AquaLift ovens).

13

Plaintiffs). Typicality thus does not exist here, as contrasted with cases involving a mechanical defect.

### D. Adequacy of Representation

Because the Court finds that the putative class does not meet commonality and typicality, it will not address adequacy.

## II. Rule 23(b)

To be certified, a class must meet all the requirements of Rule 23(a) and have at least one feature listed in Rule 23(b). Plaintiffs argue that their case meets the requirements of Rule 23(b)(3), or alternatively, 23(b)(2). ECF 71, PgID 6250, 6254. As discussed earlier, however, Plaintiffs do not meet the requirements of Rule 23(a). But even if they did, Plaintiffs also fail to meet any provision of Rule 23(b).

### A. Rule 23(b)(3)

A class action satisfies the requirements of Rule 23(b)(3) if common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3)'s predominance requirement is satisfied only if the plaintiffs can show that "damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

Plaintiffs argue that predominance is satisfied because they allege a common method of misrepresentation and the same legal claim. ECF 83, PgID 9259 (under seal). They assert that Defendant's advertising message was so uniform and

14

ubiquitous as to render all the state law claims proven with common evidence and not individualized evidence. *Id.* at 9260 (under seal).

But unlike the cases Plaintiffs cite, whether Defendant misrepresented its "self-cleaning" feature here depends on how the feature actually performed. And the actual performance of the self-cleaning feature requires an individualized inquiry as to whether each consumer followed the instructions exactly and the initial level of grime.

Furthermore, the Plaintiffs do not show predominance because their "damages models are flawed and fail to satisfy Rule 23(b)(3) and *Comcast*." ECF 91, PgID 11022 (under seal). Plaintiffs' expert, Colin Weir, calculated a price premium of 10.5% through conjoint analysis and 10.8% through hedonic regression of the total purchase price. ECF 83, PgID 9262 (under seal). Weir's analyses fail to satisfy *Comcast*.

    1.    Weir's Conjoint Analysis.

Conjoint analysis should use "real-world retail pricing and sales data" to calculate the price premium associated with allegedly false marketing. *Singleton v. Fifth Generation, Inc.*, 5:15-CV-474 (BKS/TWD), 2017 WL 5001444, at *22 (N.D.N.Y. Sept. 27, 2017). But "courts have also found that conjoint analyses can adequately account for supply-side factors—and can therefore be utilized to estimate price premia without running afoul of *Comcast*—when (1) the prices used in the surveys underlying the analyses reflect the actual market prices that prevailed during the class period; and (2) the quantities used (or assumed) in the statistical calculations

15

reflect the actual quantities of products sold during the class period." *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1105 (N.D. Cal. 2018).

Weir's conjoint analysis presented respondents with choices of ovens with various combinations of product attributes ("choice sets"). *See* ECF 87-9, PgID 10895 (under seal). Weir presented respondents with the following labels: "pyrolitic [sic] self-clean," "AquaLift self-clean," a hypothetical "AquaLift partial-clean," and "Manual clean (no self-clean)". *Id.* at 10897 (under seal). He analyzed the prices for "AquaLift self-clean" ovens and "AquaLift partial-clean" ovens and the price premium between the two. *Id.* at 10904–05 (under seal).

The Court previously held that Weir's conjoint analysis sufficiently accounted for supply-side factors for the purposes of admissibility. *See* ECF 168, PgID 26799–800. But his conjoint analysis does not satisfy *Comcast*.

Weir failed to incorporate supply-side considerations into his calculated price of the "Partial-Clean" ovens. Prices are set by supply and demand. *See Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2014 WL 976898, at *11 (N.D. Cal. Mar. 6, 2014). Weir's price calculations needed to account for both supply-side and demand-side factors. In the hypothetical world where "AquaLift Partial-Clean" exists, market competition among manufacturers and retailers would affect the prices that retailers would have charged for "Partial-Clean" ovens.[7] Dr. Ugone noted that Weir fashioned

---

[7] Weir stated that the actual retail sales and market data upon which he relied "occurred at prices that *already* reflect the supply side factors then extant in the marketplace." ECF 87-9, PgID 10906 (under seal). But the addition of a "Partial-Clean" label is not an extant factor in the marketplace.

16

the "Partial-Clean" label himself and said that using the "Partial-Clean" label "runs contrary to the incentives Whirlpool would face if it used a different claim other than 'self-clean.'" ECF 91-33, PgID 12271 (under seal). To determine the equilibrium price *absent the alleged wrongful conduct* (*i.e.*, if Defendant had labeled its AquaLift ovens "Partial-Clean" instead of "Self-Clean"), supply-side factors would include "information on the reactions of Whirlpool's competitors (and how those reactions in turn affect Whirlpool's incentives)." *Id.* at 12298 (under seal). Weir did not adequately address these supply-side considerations. He unconvincingly recited suppliers' statements about the competitive importance of prices and relied upon historical retail sales and market data as his supply-side considerations. ECF 87-9, PgID 10906–11 (under seal). But that was insufficient for his conjoint analysis exercise to be tailored to Plaintiffs' damages theory. As Dr. Ugone explained, historical transactions reflect only historical supply-side factors, not what the "prevailing market conditions would have been absent the alleged wrongful conduct." ECF 91-33, PgID 12299 (under seal). Weir needed to estimate both historical prices and the prices absent the alleged conduct, but he failed to do the latter appropriately.

Additionally, Weir's choice sets were unrealistic and did not represent realistic product choices available on the market. ECF 91-33, PgID 12279, 12282–85 (under seal). As Dr. Ugone pointed out, Weir's choice sets reflected arbitrary price points. ECF 96-3, PgID 14333 (under seal).

Because Weir failed to account sufficiently for the market conditions in which a "Partial-Clean" oven would be sold, his conjoint analysis also fails the requirements

17

of *Comcast*. *See, e.g.*, *Zakaria v. Gerber Products Co.*, LA CV15-00200 JAK (Ex), 2017 WL 9512587 at *20 (C.D. Cal. Aug. 9, 2017) ("Plaintiff failed to show that the [conjoint analysis] sufficiently accounted for the actual price [of the product] or the market conditions in which that product was sold.").

        2.      Weir's Hedonic Regression Analysis.

Weir's hedonic regression analysis compared the prices consumers paid for ovens with and without the AquaLift feature. ECF 87-9, PgID 10916, 10922 (under seal). Like his conjoint analysis, Weir's hedonic regression does not satisfy *Comcast*.

To satisfy *Comcast*, hedonic regression must take into account certain relevant or confounding factors to satisfy *Comcast*. *See, e.g.*, *Singleton v. Fifth Generation, Inc.*, 5:15-CV-474 (BKS/TWD), 2017 WL 5001444, at *22 (N.D.N.Y. Sept. 27, 2017) (holding that plaintiff's hedonic regression—which considered factors such as the amount of vodka, ingredients, flavoring, and creation process, but not product quality—failed to satisfy *Comcast*). Hedonic regression should model firm behavior, including supplier entry and exit decisions, product offerings, and pricing. *In re NJOY, Inc. Consumer Class Action Litig.*, CV 14-428-JFW (JEMx), 2016 WL 787415, at *8 (C.D. Cal. Feb. 2, 2016). Hedonic regression must isolate the damages attributable to the defendant's alleged wrongdoing. *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1025 (C.D. Cal. 2015). The model cannot conflate brand and labeling. *See, e.g.*, *Werdebaugh v. Blue Diamond Growers*, Case No. 12–CV–02724–LHK, 2014 WL 7148923, at *11 (N.D. Cal. Dec. 15, 2014). The model must also account for confounding factors, such as the possibility that products make multiple labeling claims. *See, e.g.*, *Hughes v. The Ester*

18

*C Co.*, 317 F.R.D. 333, 355–56 (E.D.N.Y. 2016); *Brazil v. Dole Packaged Foods, LLC*, 12-cv-01831-LHK, 2014 WL 5794873, at *11–12 (N.D. Cal. Nov. 6, 2014).

Here, Defendant's experts—including Dr. Simonson and Dr. Ugone—have testified that the AquaLift feature could not be isolated economically from non-cleaning features, such as aesthetic and appearance characteristics. AquaLift was offered on higher-end models that had distinctive aesthetic characteristics, such as "a larger window on the oven door" and "a larger cooking cavity[.]" ECF 91-22, PgID 11686–87 (under seal) (Dr. Simonson's report); *see also* ECF 91-32, PgID 12247–49 (under seal) (Dr. Ugone's report). In addition to including damages on non-cleaning benefits, Weir's approach included damages based on non-challenged cleaning benefits— namely, that AquaLift saves time, has no odor, and uses less heat during its cleaning cycle. ECF 91-32, PgID 12245–46 (under seal) (Dr. Ugone's report).

Finally, Mr. Weir's conjoint analysis and hedonic regression cannot be combined to satisfy *Comcast*. *Cf. Conagra*, 90 F. Supp. 3d at 1025 (combining one expert's conjoint analysis with another expert's hedonic regression). Mr. Weir proposes two separate price premia from the two methods. For the above reasons, Plaintiffs fail to offer a damages calculation that tracks their theory of liability.

B. *Rule 23(b)(2)*

A class action meets the requirements of Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

19

Plaintiffs argue that the putative class meets the requirements of Rule 23(b)(2) because Defendant's advertising practices are generally applicable to the putative class and they wish to enjoin the practices. ECF 83, PgID 9264 (under seal). Plaintiffs' argument is unavailing because they lack standing. Plaintiffs have not alleged that they would purchase the products in the future. *See, e.g.*, *Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412 (S.D.N.Y. 2015); *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 459 (S.D. Cal. 2014).

For the above reasons, even if Plaintiffs satisfied Rule 23(a)'s commonality and typicality requirements, they would fail to meet any of the provisions of Rule 23(b). The Court will deny their motion for class certification.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Plaintiffs' motion for class certification [71, 83] is **DENIED**.

**SO ORDERED**.

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: August 13, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 13, 2019, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager